## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

DAVID ALLEN HALL
THOMAS BURRELL
INTERNATIONAL TRUSTEE GROUP, LLC.
TYRONE GRAYER
WALTER JACKSON and
MONIQUE JACKSON, his Wife

**PLAINTIFFS**

V.                    CAUSE NO.: _____

STINE SEED COMPANY
KEVIN COOPER
MYRON STINE
KEVIN RYAN
GREG CRIGLER
CONCEPT AG.
B&B, INC.
AGRISELECT, LLC.
UNKNOWN STINE SEED BREEDERS
UNKNOWN FARMERS AND PLANTERS

**DEFENDANTS**

## COMPLAINT

### (A JURY TRIAL IS DEMANDED)

**COME NOW** Plaintiffs, DAVID ALLEN HALL, THOMAS BURRELL, TYRONE GRAYER, INTERNATIONAL TRUSTEE GROUP, LLC, hereinafter, ("ITG"), WALTER JACKSON and MONIQUE JACKSON, his Wife and bring this action against the captioned Defendant(s). Unless otherwise stated, "Defendant" or "Defendants" shall also refer to all Defendants named collectively and together unless otherwise stated. The term "Plaintiff" or "Plaintiffs" shall refer to all Plaintiffs collectively and together unless otherwise stated. The

actionable conduct of Defendants constitutes violations of 7 U.S. Chapter 37§§ 1562, 1571, 1575, 1594, 1597 and 1611, 15 U.S. C. § 1691 et seq., 18 U.S.C. §§ 1961 et seq., 1962 (a) (b) (c) (d),   42 U.S.C. §§ 1981, 1982and generally Tennessee State Law.   In support hereof, Plaintiff states as follows.

## JURISDICTION AND VENUE

1.       Defendants fall under the jurisdiction of Tennessee State and Federal laws as set forth specifically below, providing a basis for this action in this Court. All damages are to be recovered according to provisions addressing recoverable damages set forth in the above-mentioned laws.  Plaintiffs incorporate, in their prayer for relief below, all provisions of the above-mentioned laws defining and describing the types and categories of damages they may recover. They specifically claim each Plaintiff is separately entitled to recover all damages recoverable under all laws referred to in this Complaint, (or otherwise implicated by the facts or causes of action) all of which are sought pursuant to this Complaint whether or not specifically stated below.

2.       This Honorable Court has jurisdiction of this matter (due to one or more federal questions according to 28 U.S.C § 1331) and venue is proper according to 28 U.S.C § 1391 given substantial actionable conduct occurred in this district.  This Honorable Court also has jurisdiction over state law claims according to 42 U.S.C. § 1367.    Plaintiff, David Allen Hall is domiciled in Tennessee as more fully described below.  Plaintiff Thomas Burrell is domiciled in Tennessee as more fully described below.  Plaintiff, ITG has its principle place of business in Tennessee as more fully described below.  Plaintiffs, TYRONE GRAYER, WALTER JACKSON and MONIQUE JACKSON are domiciled in the state of Mississippi as more fully set forth below.  Jurisdiction is otherwise proper.  The amounts in controversy well exceed seventy-five thousand dollars therefore implicating diversity jurisdiction as well according to 42 U.S.C. § 1332.

3.      All Counts, claims, causes of action, allegations, statements, and theories of recovery are alleged in the alternative to each other, and also in addition to each other. The matters below are set forth while reserving the opportunity to provide additional details in discovery. Nothing herein shall be deemed as waiving requirements of notice pleading. Unless otherwise stated in the heading of the Count or within the Count, all Counts, and claims within them, are meant to be applicable to all Defendants named or to be named. Wherever referred to in this Complaint, the term "actionable conduct" shall include all facts, occurrences, actions, inactions, representations, omissions, and other things providing the basis for legal action which Plaintiff alleges in fact occurred.

## PARTIES

4.      Plaintiff, Thomas Burrell is a member of the African American race and is domiciled in Tennessee currently and at the time of all actionable conduct referred to in this Complaint. He is therefore domiciled at 175 Capital Way, Atoka Tennessee 38004. Plaintiff, David Allen Hall is a member of the African American race and is domiciled in Tennessee currently and at the time of all actions conducted referred to in Complaint. He is therefore domicile at 1972 Peabody Avenue, Memphis, Tennessee 38104. Plaintiff, Tyrone Grayer is a member of the African American race and is domiciled in Mississippi currently and at the time of all actionable conduct referred to in this Complaint. He is domiciled at 409 West Street, Tutwiler, Mississippi 38963. Plaintiff, WALTER and MONIQUE JACKSON are members of the African American race and are domiciled 987 Squirrel Lake Road, Darling, Mississippi 38623 and at the time of all actionable conduct referred to in this Complaint. Moreover, Plaintiffs THOMAS BURRELL, TYRONE GRAYER and WALTER and MONIQUE JACKSON are believed to be considered by the United States Congress as qualifying as LIMITED RESOURCE and SOCIALLY DISADVANTAGED FARMERS AND/OR

RANCHERS.[1] Plaintiff, ITG is a limited liability Company and has it principle place of business at 287 Madison Avenue, Memphis, Tennessee 38103 presently and at the time of all actionable conduct.

5.      Defendant STINE SEED COMPANY has a principle place of business at 2255 Laredo Trail, Adel, Iowa 50003. Defendant, KEVIN COOPER resides 3520 Spring Lake Boulevard, Olive Branch, Mississippi 38654.   Plaintiff maintains that the individual Defendant, KEVIN COOPER acted on behalf of STINE SEED COMPANY in carrying out the actionable conduct. STINE SEED COMPANY AND KEVIN COOPER are individually and together liable for each other's actionable conduct when considering that KEVIN COOPER individually acted under the name of STINE SEED COMPANY (District Sale Manager).  Defendant, GREG CRIGLER acted on behalf of CONCEPT AG of Charleston, Missouri as well.  Plaintiff reserves the right to amend this Complaint to assure that the proper party names and Registered Agents may be served.  This shall also serve as Plaintiff's Motion to Amend, to the extent such Motion is necessary, so that the proper parties may be otherwise before this Court when considering the corresponding names and locations for service of process, as well as proper legal names are not readily able to be determined as per filing.

6.      Plaintiff reserves their right to substitution with regard to all Defendants named or to be named.  Likewise, Defendant, AGRISELECT, LLC. AND B&B, INC., entities operated by KEVIN COOPER and GREG CRIGLER in furtherance of their actionable conduct. On information and belief Plaintiffs allege that DEFENDANTS, KEVIN COOPER and GREG CRIGLER operated CONCEPT AG AND B & B, INC who's principle place of business in a

---

[1] A "socially disadvantaged farmer or rancher" is, for this section, a farmer or rancher who is a member of a socially disadvantaged group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities. See also, 7 U.S. Code § 2279 and 7 CFR 760.107.

warehouse, herein after, ("Warehouse Operation") Sledge, Mississippi the exact location for service of process and exact organizational structure of Defendants AGRISELECT, LLC, CONCEPT AG and B&B AG., is unknown prior to filing, and Plaintiff reserves the right to amend this Complaint so as to include full information.  Plaintiff, likewise reserve the right to seek appropriate relief from this Honorable Court so as to assure that any persons or entities operating under the name of AGRISELECT AND B&B, AG is properly before the Court.

## STATEMENT OF FACTS

7.      That on March 3, 2017, Plaintiffs, WALTER JACKSON and TYRONE GRAYER, along with other African American farmers did travel to Memphis, Tennessee to attend the 67th Annual Mid-South Farm and Gin Show which was held March 3 – 4, 2017at the Memphis Cook Convention Center in downtown Memphis. All Plaintiffs, based on information and belief, aver that advertisements in magazines, newspapers, radio and television to farmers in Tennessee, Arkansas, Missouri, Kentucky, Louisiana, and Mississippi was employed by and/or for the benefit of all exhibitors to include Defendant, STINE SEED COMPANY. In fact, these states represent both the area where soybeans are grown and the area represents one of the highest concentrations of African American farmers in the Mid-South.  See, Exhibit "A" (soybean producing states).

8.      Plaintiffs WALTER JACKSON and TYRONE GRAYER (while at the Gin Show) did visit a display booth belonging to a STINE SEED COMPANY and talked to Defendant, KEVIN COOPER who acknowledged that he was a "District Sales Manager" for STINE SEED COMPANY.   Defendant, KEVIN COOPER stated, among other things, that STINE Seed Company had certain soybean varieties (Liberty Link) suitable for the growing conditions in the State of Mississippi with good yield potential (STINE HAS YIELD) and excellent control of weeds (pigweeds) and that he would like to sell STINE seeds to Plaintiffs for the current 2017

growing season. *See Exhibit "B" ("WALTER JACKSON Affidavit, with Sub-Exhibits A-E"). See Exhibit "C" ("TYRONE GRAYER Affidavit, with Sub-Exhibits A-D").*

9.     Plaintiffs THOMAS BURRELL, DAVID ALLEN HALL AND TYRONE GRAYER were associated in part because Plaintiff Burrell is also a farmer, and Plaintiffs Hall and Grayer are all partners — with Burrell — in a farming operation (2,200 acres in Sunflower County (Rome), Mississippi) as well as approximately 1,000 acres in the state of Louisiana (a state where both African American farmers also attended the Mid-South Farm and Gin Show and where BFAA members live). Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and TYRON GRAYER did visit the referenced show on Saturday, March, 4, 2107. [2]

10.     Plaintiff, WALTER and MONIQUE JACKSON have a separate farming operation in Quitman County (Darling), Mississippi and that all Plaintiffs are members of the Black Farmers and Agriculturalists Association, Inc. (BFAA) of Memphis, Tennessee of which Plaintiff, Thomas Burrell is president. Through advocacy, Plaintiff Burrell assisted African-American farmers, their heirs and representatives to achieve what is reasonably believed to be one of the largest, if not the largest, civil rights settlement in history, when the Secretary of Agriculture Dan Glickman admitted USDA's conduct affecting black farmers and agreed to compensate them for decades of discrimination.  All of the Plaintiffs' claims exist regardless of the above, which is provided as background information supporting the relationship between Mr. Burrell, Mr. Hall and Mr. Grayer and the reasons for their new farming operation to assist African-American farmers, as well as supporting the below claims.

11.     Moreover, based on information and belief, Plaintiffs' assert the state of Tennessee, Arkansas, Missouri, Louisiana and Mississippi (the area covered by the advertisement used by

---

[2] Plaintiffs Burrell and Hall did not see and/or talk to Defendant Cooper on March 4, 2017 as did Jackson and Grayer on Friday, March 3, 2107.

Defendant regarding the farm and gin show in Memphis) has one of the highest concentrations of African American farming communities (Mid-South) in the entire United States.

12.     On or about March 10, 2017 Plaintiff WALTER JACKSON placed a telephone call to Plaintiff, THOMAS BURRELL indicating the fact that Defendant, COOPER was interested in selling  STINE seeds to them (Burrell, Hall and Grayer).  Plaintiff, THOMAS BURRELL did immediately share this information with Plaintiff, DAVID ALLEN HALL and TYRONE GRAYER and that Plaintiffs, THOMAS BURRELL and DAVID ALLEN HALL did agree to talk to Defendant, KEVIN COOPER. *See, Exhibit "D" (JOINT AFFIDAVIT OF Thomas Burrell and David Allen Hall, with Sub-Exhibits A-J).*

13.     Plaintiffs, THOMAS BURRELL and DAVID ALLEN HALL did on or about April 1, 2017 receive a call at the office of the Black farmers (BFAA) in Memphis, Tennessee from Defendant, KEVIN COOPER and subsequently receive, via the Internet, an application form for credit (from STINE's credit agency) and a license and growers agreement (authorizing the use of STINE certified seeds) for the 2017 crop year. Plaintiff, DAVID ALLEN HALL did apply and received financing and credit from Defendant, STINE SEED COMPANY for the purchasing of "certified seeds" for the benefit of himself and Plaintiffs, Burrell and Grayer.

14.     Both Plaintiffs, WALTER JACKSON and DAVID ALLEN HALL did fill out (separately) and subsequently received credit from STINE SEED COMPANY for "certified seed" for the growing season of 2017 for their respective soybean operations in Rome and Darling, Mississippi.

15.     Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL, TYRONE GRAYER and WALTER JACKSON aver and covenant that they possessed the necessary farming skills and equipment to adequately plant, cultivate and harvest all of the varieties of certified STINE seeds contracted for and delivered to them to include, but not limited to **49LD02, 50LD02** and **51LI32** all

7

of which were represented to be suitable for planting in the general area of Mississippi to include Quitman and Sunflower Counties. Likewise, Plaintiffs maintain that these varieties were planted on soils (and received an above average amount of rainfall) that had the necessary fertility to produce an adequate and/or above yield (65 bushels per acre) for 2017. *See, Exhibit "E" (Mississippi Soybean Trials for 2017, Table 14).*

16.     Plaintiff, WALTER JACKSON avers that for the past several years he has planted a certified soybean seed variety provided by a company in Tunica, Mississippi named Buck Island Seeds and more specifically a variety (non-treated) offered by Buck Island known as **Delta Grow 4970** and that this variety (4970) has produced an average yield of approximately 48 bushels per acre for his operation.

17.     Plaintiff, WALTER JACKSON avers that on or about April 15, 2017 he placed an order with Defendant, KEVIN COOPER for approximately 115 bushels (**49LD02**) to be planted on approximately 115 acres of the total 425 soybean acre operation (Darling, Mississippi).  In fact, the requested seeds were delivered and placed into an old farm equipment shed ("Warehouse Operation") [3] in Sledge, Mississippi belonging to Defendant, GREG CRIGLER and CONCEPT AG of Charleston, Missouri. *See, collective Exhibit "F" (photos of warehouse in Sledge, Mississippi).*  Moreover, Defendant, KEVIN COOPER wanted Plaintiff, WALTER JACKSON to allow him (KEVIN COOPER) to treat the requested seeds with inoculants. Plaintiff JACKSON declined the offer.  Again on or about April 25, 2017, Defendant, KEVIN COOPER asked Plaintiff if he would allow him to treat the seed. Again, Plaintiff declined the offer. Moreover, Defendant, KEVIN COOPER would ask if he could treat the seeds on at least two more occasions. Here to again, Plaintiff, JACKSON declined the offers.

---

[3]Immediately adjacent to the warehouse Defendant, GREG CRIGLER, based on information and belief, stored several pieces of equipment to include, hopper button grain trailers, grain drills,  farm tractors and farming implements all of which are capable of planting and harvesting soybeans.

18.     On or about April 15, 2017, Defendant, KEVEN COOPER, did arrange to meet and subsequently met Plaintiff, Burrell at the Rome, Mississippi operation to do, as he stated, make determination as to the best variety of STINE seeds to be planted on the land. Defendant, KEVIN COOPER recommended that Plaintiff's should start with a variety known as **49LD02**.

19.     Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and TYRONE GRAYER aver that on or about May 1, 2017, an initial order for approximately 500 bushels of STINE's **49LD02** certified seeds were placed with Defendant, KEVIN COOPER. Plaintiffs further aver that this order was communicated to a STINE SEED breeder in Northwestern Arkansas and/or Missouri and was subsequently delivered to ("Warehouse Operation") in Sledge, Mississippi. Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and TYRONE GRAYER aver that Defendant, KEVIN COOPER did insist that the STINE seeds be "treated" before being delivered to Rome, Mississippi farmland.

20.     Plaintiffs, THOMAS BURRELL, TYRONE GRAYER AND DAVID ALLEN HALL did consent to allowing Defendant, KEVIN COOPER to treat the STINE seeds. Plaintiffs acknowledge that Defendant, KEVIN COOPER during this same communication made known to Plaintiffs that he (KEVIN COOPER) had just formed a company (B&B AG) to perform the treating" of the seeds.   Plaintiffs, aver that the seed treatment chemicals were supplied by Defendant, CCONCEPT AG. Within these discussions, and subsequent discussions forming the basis for the subsequent delivery of STINE certified seeds, Defendant, KEVIN COOPER was fully aware that Plaintiffs, Burrell, Hall and Grayer were farming the referenced 2,200 acres of land as partners and that he could contact either of them separately regarding the ordering, treating and or delivery of both certified seeds from Defendant, STINE SEED COMPANY and or chemicals from Defendants, CONCEPT AG, AGRISELECT and B&B AG.

21.     At all times relevant and material Defendant, KEVIN COOPER knew that Plaintiffs, Burrell, Hall and Grayer would expend time, energy, assets, and incur losses and other obligations as a result of reasonable reliance upon the authority of him (as represented by him) to purchase seeds and chemicals from Defendants, STINE SEEDS, CONCEPT AG, B&B AG and AGRISELECT, LLC for the crop year of 2017.

22.     Following May 11, 2017 Plaintiff, Burrell did place a call to Defendant, KEVIN COOPER  to deliver approximately 12,000 pounds (SIX jumbo bags) of STINE certified variety **49LD02** for immediate planting (May 13, 2017). *See, Collective Exhibit "G" (photo of STINE jumbo bags).*

23.     Again, Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and TRYRONE GRAYER based on information and belief, aver that the fraudulent scheme and fraudulent intent manifested itself, when, among other things, an [order] was placed to Defendant, KEVIN COOPER for certified STINE seeds (jumbo bag) and that equal amount (jumbo bag) of non-certified seeds were then sent and or already at the ("Warehouse Operation") to be treated and subsequently "replaced" into emptied STINE jumbo bags.   Plaintiffs, further aver that the purchased certified STINE seeds were grown by a STINE "seed breeder" in Northwest Arkansas and/or Missouri and then placed into "bulk" (jumbo bags, 2,200 lbs.) and otherwise containing labels of certification regarding, among other things, seed varieties, seed germination (90%), vigor and seed purity as set forth by United States Department of Agriculture regulations. Said labels were placed inside of a clear plastic (zip lock(right hand side of bag)) bags and which were stapled and/or sewed onto said jumbo bags and also contained a tag — bearing the word "Cooper"— inside of same. *See, Exhibits "H" (photos of STINE jumbo bags and close-up of plastic zip lock bag.* Plaintiffs aver that the zip lock bags allowed for any Defendant and/or person(s) to "freely" remove or replace any document into the bag at any time during transportation and/or storage.  In fact, the STINE

certified seeds were then sold to other farmers. Exhibit H of a STINE label attached to a STINE bag bearing the name of Cooper.

24.     Likewise, based on information and belief, the inferior seeds came from Defendants' GREG CRIGLER's stock pile of soybean from his farming operation in Sledge and/or the Charleston, Missouri area.   Plaintiffs, aver that these **"other"** farmers had access to seed trailers (seed tenders and/or seed trailers) and therefore did not require the delivery of soybeans to their farms via the STINE jumbo bags. These now "emptied" STINE jumbo bags — still bearing the label of **49LD02** — were then, here again, filled with coated and treated non-certified soybean seeds of inferior quality (provided by Defendant, GREG CRIGLER) and tied into knots and delivered to Plaintiffs. *See, Collective Exhibit "I" (photo of emptied bags tied into knot).* The tying of the bag reveals the fact that the certified seeds were not removed from the bag by the proper means (there is a rip cord at the base of the bag when properly released will dump the contents of the bag into a seed tender) but rather reopening the top of the bag that had otherwise been mechanically sown and filled with treated and non-certified seeds. Opening the bags from the top and the failure to use the rip cord reveals the intent to reuse the bag for refilling of coated non certified seeds and subsequent transport of non-certified seeds to Plaintiff (ex. I).

25.     Moreover, Plaintiff, DAVID ALLEN HALL did send collectively ($3,000 and $5,000 checks respectively) **EIGHT THOUSAND DOLLARS** to defendant, KEVIN COOPER in July and August of 2017 for payment to B&B AG for seed treatment. It is believed that these funds were reinvested in the enterprise for the benefit of all defendants. *See collective Exhibits "J" (photo of check receipt and handwritten note from Plaintiff Hall to B&B AG).*

26.     Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and TYRONE GRAYER aver that the STINE seeds were originally transported from the state of Arkansas and/or Missouri by Defendant, KEVIN COOPER and delivered to a ("Warehouse Operation") where

Plaintiff, TYRONE GRAYER then picked up approximately 12,000 pounds (SIX bags) of STINE'
**49LD02** (which had been treated by COOPER in the ("Warehouse Operation") for, here again,
immediately planting.

27.      Plaintiff, TYRON GRAYER, aver that on or about Saturday, May 13, 2017 he did
travel to the ("Warehouse Operation") to pick up the first order of STINE seeds to be planted at
the Rome Operation. Plaintiff maintains that approximately SIX "STINE jumbo" bags (2,200 lbs.
each) of "treated" STINE, Liberty Link soybean (**49LD02** variety) seeds were placed and otherwise
emptied into Plaintiff's seed tender and delivered to the Rome Operation for planting.

28.      Plaintiff GRAYER avers that he meet with an individual, based on information and
belief, named Greg Crigler who then assisted Plaintiff with placing seeds from approximately SIX
jumbo bags into Plaintiff's seed tender.  Moreover, Plaintiff did walk through the warehouse facility
and observed approximately 15 to 20 additional jumbo bags being stored.  In fact, Plaintiff did not,
while walking through the warehouse see or otherwise observe any mechanical device or object that
would have been capable of coating and/or treating seeds.

29.      Plaintiff, THOMAS BURRELL and TYRONE GRAYER aver that a significant
amount of these seeds were planted — on 38 inch bedded rows — on the evening of May 13, 2017
on Farm No. 1977. Additionally, Plaintiffs aver that the rainfall on the same evening delayed the
additional planting until Tuesday, May 16th.  That the same treated seeds were also planted (the 16th)
on Farm No. 4357 and Farm No. 1030 on Sunday, May 21, 2017.

30.      Plaintiffs, THOMAS BURRELL and TYRONE GRAYER aver that all of the land
for which these STINE seeds were planted had been adequately tilled and prepared for planting.
Moreover, Plaintiffs maintains that all of the equipment for tilling, bedding and planting of the
STINE seeds was relatively new and in excellent working condition. In fact, there was ample rainfall
(moisture) available to the newly planted soybean seeds and that the fertility for soybean

development on the referenced tracts was optimal (see, Joint Affidavit of Burrell/Hall at Ex. "D"). All Plaintiffs, aver that the 'time of planting" the STINE varieties (Group IV) was consistent and otherwise optimal with the Quitman and Sunflower Counties (Mississippi Delta) region.

31.    On or about June 3, 2017 Charlie Jones (an employee of Plaintiffs, Burrell, Hall and Grayer) drove a Ford F-350 truck and trailer (belonging to Plaintiffs) to Defendant's ("Warehouse Operation") to pick up additional seeds which had been ordered from Defendants and while being "directed and guided" (backing up the Ford F-350 truck and trailer) by Defendants KEVIN COOPER and GREG CRIGLER he (Jones) inadvertently collided with a Ford F-250 truck, based on information and belief, belonging to Defendants GREG CRIGLER and CONCEPT AG of Charleston, Missouri.

32.    In fact, shortly thereafter on the same afternoon, Plaintiff THOMAS BURRELL received a telephone call from Defendant, KEVIN COOPER informing him (Burrell) of the accident and wanted Plaintiff, Burrell to assure him that the owner of the truck, as he state it Greg Crigler, would be compensated for the damages after an assessment by an auto repair shop was completed. Plaintiff Burrell informed Defendant, KEVIN COOPER that Plaintiffs would indeed repay Mr. Crigler for the damages to the vehicle when those damaged were calculated. *See, Exhibit "K" (Hey Mr. Burrell letter).*

33.    Plaintiffs, THOMAS BURRELL and TYRONE GRAYER aver that they did have several discussions regarding, among other things, the slowness of the germination of the STINE seeds and that the STINE seeds did not germinate (sprout) until four to five days after planting and came out of the ground "skippy" (non-uniform stand).

34.    Plaintiffs, THOMAS BURRELL and TYRONE GRAYER aver that Defendant, KEVIN COOPER did make several visits to the Rome Operation within weeks of the planting

the STINE seeds varieties and expressed a concern that "you all" might suffer some yield losses from, what he introduced to be, "dicamba drift."

35.     Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and TYRONE GRAYER aver that on or about June 10, 2017, Defendant, KEVIN COOPER did inform them that the payment for the STINE seeds bills were due and payable by June 30, 2017 and that if payments were not made by then penalties and interest would accrue and that a "delinquency report" would be generated by Defendant, STINE SEEDS.

36.     In fact, Defendant, KEVIN COOPER insisted that payments to both B & B Ag and CONCEPT AG were due in full.  As a result, Plaintiff, THOMAS BURRELL did make deposits into the bank account of Plaintiff, DAVID ALLEN HALL to forward approximately EIGHT THOUSDAND DOLLARS ($8,000.00) to Defendant, KEVIN COOPER.

37.     Plaintiffs, THOMAS BURRELL and TYRONE GRAYER aver that they became further concerned in August and September that the STINE varieties' "pod development" were not fully developing (flat pods) and that the leaves of the STINE varieties were disintegrating before maturity, notwithstanding the amount of rainfall during the summer growing season on these soybeans was above average.

38.     Plaintiffs, BURRELL, HALL and GRAYER aver that during the entire months of July, August, September and October, Defendant, KEVIN COOPER made several requests regarding payments for the benefit of Defendants, STINE SEEDS, AGRISELECT, B&B AG and CONCEPT AG.  Moreover, KEVIN COOPER made demand for payment of $4,800 for damages and repair of Greg Crigler's truck due to damages caused by Charlie Jones (plaintiff's employee) during a pickup of seed at the Sledge facility *(Ex. K)*.

39.    Plaintiffs, WALTER JACKSON aver that he became concerned when he noticed — upon opening the bags (**STINE 49LD02**) for planting — that the seeds from STINE seed company had a slightly different color and purity (plumpness/fullness/smoothness) from the Delta Grow variety and or any other varieties for which Plaintiff has planted in the last eight years and that the STINE seeds were not producing a consistent "stand" as the Delta Grow varieties.

40.    Plaintiff, WALTER JACKSON avers that on or about July 11, 2017 (after the emergence of the young plants) he place a call to Defendant, KEVIN COOPER expressing a concern regarding the STINE variety's "bubbling" of leaf development as never observed from any other soybean varieties so planted by Plaintiff or the Delta Grow varieties as planted around the same time as the STINE varieties (Jackson Affidavit (Ex. B at Ex. B) MSU)). Defendants' COOPER'S response was evasive and speculated that the situation could be the result of "over spraying."

41.    Also in July Plaintiff, WALTER JACKSON had a discussion with his wife, MONIQUE regarding, among other things, the fact that the STINE seeds "pod quality development" was not being achieved at the same rate that the Delta Grow varieties were developing and that the height of the STINE plants were approximately 40% shorter than the Delta Grow varieties (Jackson Affidavit B at D *(photo of Plaintiff hold soybean plant)*. Moreover, Plaintiff, Jackson avers that on or about July 15th, Defendant, KEVIN COOPER called him (Jackson) and stated that (a) he (Cooper) needed to pick up any STINE seeds and STINE labels that were left over from the planting operation and (b) take them to a local grain elevator and sell them.  Plaintiff, Jackson acknowledges that he had never experienced or heard of any sales representative asking for any leftover seeds and or seed labels and taking unused seeds to a grainer for disposal.

42.    In fact, on or about August 30, 2017, Plaintiff, DAVID ALLEN HALL did receive a letter from Defendant, STINE SEEDS stating among other things, an opportunity for certain

STINE seed growers to provide seed stock for the upcoming 2018 crop year. Plaintiff, THOMAS BURRELL immediately placed a call to STINE SEED representative CHUCK HANSEN and was told that STINE could otherwise verify "any" of its seeds so harvested and stored by analyzing and or testing the referenced seed (stored) varieties for STINE purity and traits. *See, Exhibit "L" (letter from Chuck Hansen of STINE SEEDS).*

43.     Plaintiff, Burrell immediately called Defendant, KEVIN COOPER and shared what he believed to be exciting news for Mr. COOPER and found him instead indifferent and non-excited and that Defendant's ultimate response was, "I will get back with you" but never did regarding the matter of storing STINE seeds for the 2018 crop year.

44.     Moreover, on or about October 9, 2017, Plaintiff, WALTER JACKSONs wife (Monique) called while he (WALTER) was cutting the STINE soybeans and asked, "How are they cutting." Plaintiff answered; "something aint right!"

45.     That on or about October 16, 2017, while still harvesting the STINE varieties Defendant, KEVIN COOPER did indeed call (WALTER) and asked; "how are the beans cutting?" Plaintiff responded. "Not worth a damn!" COOPER responded, "I am sorry, when can you send a check."

46.     Plaintiff, WALTER JACKSON avers that his soybean fields which were planted with the Delta Grow — under similarly planting and growing conditions — yielded approximately 48 bushels per acres: that the STINE Seeds yields were approximately 24-25 bushel per acre (less than half of the Delta Grow varieties).

47.     Plaintiffs, THOMAS BURELL and TYRONE GRAYER harbored similar concern (as did Jackson) and also became very disappointed with the yield results when the May 13th through 21st planted soybeans were being harvested in October. The yields for this section of planting were producing yields of 35 bushels and less per acre. In fact, one section of Farm No. 1977 (120 acres)

was planted with STINE late maturing varieties (Group V) that yielded less than 5 bushels per acre with a germination rate of ZERO percent (Joint Affidavit of Burrell/Hall at "D").

48.     Plaintiffs, THOMAS BURRELL, DAVID HALL and TRYONE GRAYER are now, bases on reasonable information, convinced that all Defendants and certain UNKNOWN SEEDS BREEDERS did not deliver the certified seeds that were represented to be STINE certified seeds and that the treating and coating of the STINE seeds were deliberate and intentional acts (pretext) employed to cover up the fact that the seeds delivered in the JUMBO bags were not certified STINE seeds.  Plaintiffs, Burrell, Hall and Grayer aver that the ("Warehouse Operation") in Sledge, Mississippi functioned as a re-bagging and/or switching station for un-certified seeds to be repackaged and labeled as certified seeds by Defendants.

49.     On or about October 15, 2017, Plaintiff, THOMAS BURRELL  placed a telephone call to Defendants, STINE SEED COMPANY (Myron Stine) notifying it of the low performance of all of the STINE seeds that were purchased from STINE Seeds through Defendant, KEVIN COOPER.   Moreover, Plaintiffs have sent soil samples and seed samples to the Mississippi State University at Starkville, Mississippi and elsewhere for testing.[4]  *See, Collective Exhibit M (photo of seed sample sent to MSU, germination test and Waypoint Analytical, soil test).*

50.     Defendant, STINE SEED COMPANY did send its regional agronomist, KEVIN RYAN, to Plaintiffs' THOMAS BURRELL, DAVID ALLEN HALL and TYRON GRAYER's Rome, Mississippi soybean operation. On or about November 1, 2017, Defendant, STINE SEED representatives KEVIN COOPER and KEVIN RYAN meet Plaintiffs, THOMAS BURRELL and DAVID ALLEN HALL in Rome, Mississippi on a county road where fields of soybeans were planted with STINE seeds and where Defendant, KEVIN RYAN stated, among other things, "**you have a yield problem**." Defendant, KEVIN RAYN when on to say, among other things, that

---

[4] Mr. James Smith with MSU's seed testing has indicated to your Affiants that he expects the germination of the samples sent to him will be less that 10 percent germination when the testing is completed.

"STINE had the capability of tracing all of its soybeans by determining where 'every lot number' came from and where that particular lot of soybeans was shipped from and to whom."

51.      Plaintiffs, THOMAS BURRELL and TYRONE GRAYER did arrange and did indeed send a representative sample of harvested STINE soybean seeds to the Mississippi State University (MSU) in Starkville, Mississippi where a Mr. James Smith (Director) did receive and promised to test the said sample for germination.

52.      Plaintiff, THOMAS BURREL did receive the referenced test result from MSU on or about December 22, 2017 showing, among other things, the germination result of ZERO per cent.

53.      In fact, neither Defendant, STINE SEED COMPANY nor its agronomist, KEVIN RAYAN made any effort to contact and/or agreed to have any of the suspect soybeans otherwise harvested by Plaintiffs tested or caused to be tested by any agency whatsoever.   Their capacity and promises to Plaintiffs to do so, notwithstanding.  But, Defendant KEVIN RYAN did take it upon himself to send a statement for the purpose of collecting (unlawful) debt from Plaintiff, DAVID ALLEN HALL.

54.      Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and TRYRON GRAYER based on information and belief, aver that the fraudulent scheme and fraudulent intent manifested itself, when, among other things, an [order] was placed to Defendant, KEVIN COOPER for certified STINE seeds (2,000 lbs.) and that an equal amount of none certified seeds (2,000 lbs.) were then sent and/or already at the Sledge ("Warehouse Operation") and ready to be treated and subsequently "replaced" into emptied STINE jumbo bags. This is to say; the certified seeds purchased by Plaintiffs were sold to **other** farmers and the jumbo bags that were now emptied — as a result of the sale to these **other** farmers — were then refilled with "treated" inferior seeds and subsequently delivered or caused to be delivered to Plaintiffs.

55.     Based on information and belief the inferior seeds came from Defendants' GREG CRIGLER's stock pile of soybean from the Charleston, Missouri (or his farming operation in Sledge) area and were otherwise tolerant to the "Liberty Link" herbicides to include herbicides sold by AGRISELECT, LLC. and CONCEPT AG. Plaintiffs, aver that these **other** farmers had access to seed trailers (seed tenders and/or seed trailers) and therefore did not require the delivery of soybeans to their farms via the STINE jumbo bags. These now "emptied" STINE jumbo bags—still bearing the label of **49LD02**— were then, here again, filled with coated and treated non-certified soybean seeds of inferior quality (provided by Defendant, GREIG CRIGLER) and tied into knots and delivered to Plaintiffs. *See, Exhibit "N" (flowchart of routing of non-certified seeds to Plaintiffs)*.

56.     All Plaintiffs aver that the request from Defendant, KEVIN COOPER of Plaintiff, WALTER JACKSON to pick up any remaining STINE seeds and labels to be sent to a grain elevator was to dispose of any untreated seeds that could be tested for germination and purity otherwise proving the inferiority of the fake certified soybean seeds. And, why Defendant, KEVIN COOPER expressed no jubilation or enthusiasm when learning that STINE seeds could possibly be repurchased from Plaintiffs, Hall as per the August 21st letter from Mr. Hansen of STINE seeds.

57.     All Plaintiffs, aver that all Defendants, were able to charge approximately **FIFTY DOLLARS** per bushel for treated STINE certified seed where in fact the inferior non-certified seed would have been worth approximately **TEN DOLLARS** per bushel on the open market. In fact, the selling of chemicals and other inputs by Defendants, B&B Ag, AGRISELECT, LLC. and CONCEPT AG was done in furtherance of the unlawful scheme by all Defendants to defraud a class of minority farmers of their property causing severe harm to them. In fact, Plaintiffs, BURRELL, HALL and GRAYER experienced over **ONE MILLION DOLLARS** on their 2,200

acre farming operation in Rome, Mississippi as a direct result of the poor performance of non-certified seeds furnished by all Defendants.

58.     That at all time relevant and material Defendant, STINE SEED COMPANY, AGRISELECT and CONCEPT AG knew or should have known that defendants, KEVIN COOPER and GREG CRIGLER use of a ("Warehouse Operation") in Sledge, Mississippi where company products were housed and stored was suspect.  Defendant STINE SEED COMPANY did not make reasonable efforts to assure Plaintiffs' right of receiving certified seeds was not jeopardized by their actions and omissions.

59.     Plaintiffs, DAVID ALLEN HALL and WALTER JACKSON have been subject and caused to be subjected to constant hounding and harassment by Defendants' collection agencies attempting to collect unlawful debt.  Defendant Kevin Ryan in the same manner as Defendant Kevin Cooper sent communications through electronic mail attempting to collect unlawful debt on behalf of STINE SEED and other defendants.

60.     Plaintiffs suffer and will continue to suffer damages from those actions and omissions by them. These damages are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race. *See also, Collective Exhibit "O" (letter of demand of payment from Defendant, KEVIN RYAN and collection letter from Altus GTS Inc.). See also, Exhibit "P," letter, Jan.18, 2018 to Plaintiff WALTER JACKSON ("...you are liable for collection cost, which will approximate 40% of outstanding balance.").*

## CAUSE OF ACTION

### COUNT I:
### VIOLATION OF 7 U.S. CHAPTER 37 et seq.

61.     Plaintiffs re-allege and incorporate all provisions above and below as if fully incorporated. The claims in this Count are alleged in the alternative, and in addition, to each other. They are alleged in the alternative, and in addition, to the claims in the other Counts.

62.     All Defendants were substantially aware of their responsibility for the certification requirement as set forth by the United Stated Department of Agriculture regarding, among other things, packaging, labeling, transportation of certified seed as set forth under 7 U.S. chapter 37 and it pertinent part: Section 1562 (False representations as certified seed; required provisions) as follows:

> Any labeling, advertisement or other representation subject to this chapter which represents that any seed is certified seed or any class thereof shall be deemed to be false in this respect unless (a) it has been determined by a seed certifying agency that such seed conformed to standards of genetic purity and identity as to kind or variety, and is in compliance with the rules and regulations of such agency pertaining to such seed; and (b) the seed bears an official label issued for such seed by a seed certifying agency certifying that the seed is of a specified class and a specified kind or variety. Seed of a variety for which a certificate of plant variety protection under the Plant Variety Protection Act [7 U.S.C. 2321 et seq.] specifies sale only as a class of certified seed shall be certified only when: **(1)** the basic seed from which the variety was produced furnished by authority of the owner of the variety if the certification is made during the term of protection, and **(2)** it conforms to the number of generations designated by the certificate, if the certificate contains such a designation.

63.     All Defendants were substantially aware of the responsibility for the certification requirement as set forth by the United Stated Department of Agriculture regarding, among other things, packaging, labeling, transportation of certified seed as set forth under 7 U.S. Chapter 37 and it pertinent part: Section 1571(a)(9) (Prohibitions relating to interstate commerce in certain seeds as follows:

Name and address of (A) the person who transports, or delivers for transportation, said seed in interstate commerce, or (B) the person to whom the seed is sold or shipped for resale, together with a code designation approved by the Secretary of Agriculture under rules and regulations prescribed under section 1592 of this title, indicating the person who transports or delivers for transportation said seed in interstate commerce.

64.     Likewise, all Defendants were substantially aware of the prohibition against alteration of seeds as set forth by the United States Department of Agriculture regulations as set forth under 7 U.S.C. § 1594 and its pertinent part as follows:

No person shall detach, alter, deface, or destroy any label provided for in this chapter or the rules and regulations made and promulgated thereunder by the Secretary of Agriculture, or alter or substitute seed in a manner that may defeat the purpose of this chapter.

65.     And further, all Defendants were substantially aware of agent's acts as binding upon principles as set forth by the United States Department of Agriculture regulation regarding agents acts as set forth under 7 U.S.C. §1597 and it pertinent part as follows:

When construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any person, partnership, corporation, company, society, or association, shall in every case be also deemed to be the act, omission, or failure of such person, partnership, corporation, company, society, or association, as well as that of the person employed.

66.     In fact, all Defendants were substantially aware of the prohibition of to sell or offer for sale or advertise seed not certified by an official seed certifying agency as set forth by the United States Department of Agriculture under 7 U.S.C. § 1611 as follows:

It shall be unlawful in the United States or in interstate or foreign commerce to sell or offer for sale or advertise, by variety name, seed not certified by an official seed certifying agency, when it is a variety for which a certificate of plant variety protection under the Plant Variety Protection Act [7 U.S.C. 2321 et seq.] specifies sale only as a class of certified seed: Provided, That seed from a certified lot may be labeled as to variety name when used in a mixture by, or with the approval of, the owners of the variety.

22

67.     And, all Defendants were substantially aware of the prohibition to falsely advertise the sale of certified seeds as set forth by the United States Department of Agriculture under 7 U.S. Code § 1575 as follows:

> It shall be unlawful for any person to disseminate, or cause to be disseminated, any false advertisement concerning seed, by the United States mails, or in interstate or foreign commerce, in any manner or by any means, including radio broadcasts: Provided, however, That no person, advertising agency, or medium for the dissemination of advertising, except the person who transported, delivered for transportation, sold, or offered for sale seed to which the false advertisement relates, shall be liable under this section by reason of disseminating or causing to be disseminated any false advertisement, unless he or it has refused, on the request of the Secretary of Agriculture, to furnish the Secretary the name and post-office address of the person, or advertising agency, residing in the United States, who caused, directly or indirectly, the dissemination of such advertisement.

68.     Defendants are responsible for the blatant abrogation and total disregard for the standards of care and omissions owed to Plaintiffs as it related to the transportation, labeling and representation of certified seeds promulgated by the United States Department of Agriculture and failed to ensure that Plaintiffs' rights were protected pursuant to those promulgations, standard of care and omissions.

69.     As a direct and proximate result of Defendants' conduct towards Plaintiffs, they sustained losses and damages. The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint. These damages are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

## COUNT II:
## <u>BREACHES OF CONTRACT</u>

70.    Plaintiffs re-allege and incorporate all provisions above and below as if fully incorporated. The claims in this Count are alleged in the alternative, and in addition, to each other. They are alleged in the alternative, and in addition, to the claims in the other Counts.

71.    All Defendants were substantially responsible for the actionable conduct related to the formation of the alleged credit approval and growers agreements. All Plaintiffs and Defendants had capacity to properly enter into contractual agreements in the form of credit and growers agreements even though Plaintiff disagrees that Defendant acted properly in any way. Defendant offered to sell certified soybean seeds upon certain terms. Those terms were met by all Plaintiffs. The parties mutually assented to terms as reasonably understood and/or as should have been reasonably understood. Mutual promises were exchanged wherein Plaintiff would be required to make payment starting June 30, 2017 or, alternatively pursuant to reschedule terns with interest.

72.    Consideration was extended insofar as there were mutual promises of performance in exchange for Plaintiff's promise to pay at the appropriate time.

73.    There was an offer, acceptance and therefore contractual formation.

74.    Defendants are both responsible for the breaches of the agreement when considering their mutual conduct providing the basis for the promise of certified seeds, and damages that were incurred as a result.

75.    Plaintiff maintains all breach of contract claims against Defendants, STINE SEED COMPANY, KEVIN COOPER, GREG CRIGLER, B&B AG and CONCEPT AG regardless of whether Plaintiff is entitled to recover against all Defendants pursuant to this Count. Plaintiff maintains that they should recover when considering all actionable conduct by all Defendants.

76.     As a direct and proximate of both Defendants' conduct towards Plaintiff, they sustained losses which were fully described in other parts of this Complaint.  The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.  Theses damage are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

## COUNT III:

## TORTIOUS BREACH OF CONTRACT

77.     Plaintiffs re-allege and incorporate all provisions above and below as if fully incorporated.  The claims in this Count are alleged in the alternative, and in addition, to each other.  They are alleged in the alternative, and in addition, to the claims in the other Counts.

78.     Defendants' breaches referred to in the prior Count were willful, intentional, wanton, reckless, tortious, and operated to cause Plaintiffs losses and damages under circumstances Defendant knew of and/or should have known and/or which occurred as a result of intentional conduct.  Defendants knew of and should have known that Plaintiffs would suffer the damages as a result of the wrongful and tortious breaches.

79.     Defendant, STINE SEEDS COMPANY had a public duty to give accurate information for the guidance of others in their pecuniary interest in business transaction and failed to exercise reasonable care or competence in obtaining and communicating to Plaintiffs.  Defendant, supplied faulty information meant to guide Plaintiffs in their business transactions.  In fact, all Plaintiffs justifiably relied upon the information that was given by Defendants and suffered losses as a result.

80.     Defendants otherwise acted in such a manner that constituted a tortious breach of contract.  While Plaintiffs maintains that the conduct related to the breaches support a tortious

breach of contract claim, Plaintiffs also maintains that a tortious breach of contract claim is appropriate when considering all other torts alleged. In fact, STINE SEEDS failed to exercise care in the course of its business and supplies faulty information meant to guide others in their business transactions and further failed to exercise reasonable care in obtaining or communicating the information and all Plaintiffs justifiably relied upon the information.

81.    As a direct and proximate of both Defendants' conduct towards Plaintiffs, they sustained losses which were fully described in other parts of this Complaint. The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint. These damages are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

## COUNT IV:

## INTENTIONAL MISREPRESENTATION (FRAUD)

82.    Plaintiffs re-allege and incorporate all provisions above and below as if fully incorporated. The claims in this Count are alleged in the alternative, and in addition, to each other. They are alleged in the alternative, and in addition, to the claims in the other Counts.

83.    Plaintiffs maintain that Defendants are equally responsible for material false and/or misleading material misrepresentations and/or omissions. Notwithstanding, Plaintiffs alleges fraud against Defendants in the alternative and in addition to each other.

84.    All Defendants knew of or should have known that Plaintiffs were relying upon their material misrepresentations and/or omissions indicating and reasonably intending to indicate that Plaintiff's purchase of certified seed would have the germination and purity to produce adequate yields commensurate to that of similarly situated white farmers under similar growing conditions and

that the germination would not be of ZERO quality when considering a reasonable interpretation of the agreements and all representations made by the parties.

85.    Defendants made material misrepresentations and/or omissions when the agreements were entered into and/or the agreements were allowed to be entered into under the reasonable expectations noted above.

86.    All Defendants are responsible for all representations and/or omissions which resulted in Plaintiffs receiving altered inferior seeds wherein Defendants knew and/or should have known that Plaintiffs would incur losses and investment as a result of reasonable reliance.  All Defendants knew of or should have known that Defendants, STINE SEED COMPANY, KEVIN COOPER, GREG CRIGLER, B&B AG and CONCEPT did not intend to honor the contract terms as reasonably understood by the parties and therefore Defendants are responsible for fraud in the inducement.

87.    Defendants made material misrepresentations and/or omissions that the Plaintiffs relied upon, and which Plaintiffs was reasonable to rely upon, therefore resulting in losses.

88.    Plaintiffs' claim that regardless of their inability to recover against any particular Defendant pursuant to this Count, Plaintiffs shall nevertheless maintain the right to recover against any other Defendant.

89.    As a direct and proximate of all Defendants' conduct towards Plaintiffs, they sustained losses which were fully described in other parts of this Complaint.  The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.  These damages are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

## COUNT V:

## PROMISSORY ESTOPPEL, EQUITABLE ESTOPPEL, AND DETRIMENTAL RELIANCE (AGAINST ALL DEFENDANTS)

90.     Plaintiffs re-allege and incorporate all provisions above and below as if fully incorporated. The claims in this Count are alleged in the alternative, and in addition, to each other. They are alleged in the alternative, and in addition, to the claims in the other Counts.

91.     Defendants were materially responsible for misrepresentations and/or omissions made at the time of the credit and grower's agreements, prior, and following.

92.     Plaintiffs at all times relevant and material relied on these misrepresentations and omissions, and it was reasonable for Plaintiffs to rely upon them. Plaintiffs materially changed their position, incurred costs, expenses, efforts, and other losses and reasonable, detrimental reliance upon promises made by one or more Defendants, as well as misrepresentations, and/or omissions by them.

93.     Plaintiffs' claim that regardless of their inability to recover against any particular Defendant pursuant to this Count, Plaintiffs shall nevertheless maintain the right to recover against any other Defendant.

94.     Defendants should be equitably estopped from denying responsibility for all losses and damages as a result of Plaintiff's reasonable, detrimental reliance upon promises made by one or more Defendants, Defendants' material omissions and/or misrepresentations.

95.     As a direct and proximate cause of all Defendants' conduct towards Plaintiffs, they sustained losses which were fully described in other parts of this Complaint. The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any

28

laws implicated by the facts and allegations of this Complaint.  These damages are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

## COUNT VI:

## CIVIL CONSPIRACY

96.     Plaintiffs re-allege and incorporate all provisions above and below as if fully incorporated.  The claims in this Count alleged in the alternative, and in addition, to each other. They are alleged in the alternative, and in addition, to the claims in the other Counts.

97.     All Defendants are reasonably believed to have worked together to accomplish the unlawful purpose of depriving Plaintiffs' of contractual rights, and/or committing torts, and/or otherwise causing Plaintiffs' losses as more fully described in the other parts of this Complaint.

98.     In the alternative and in addition, Defendants may claim a lawful purpose, yet collaborated and worked together to unlawfully carry out any alleged lawful purpose.  Defendants conspired so as to cause Plaintiffs' losses and damages when considering all factors including but not limited to their misrepresentations and/or omissions.

99.     As a direct and proximate of all Defendants' conduct towards Plaintiffs, they sustained losses which were fully described in other parts of this Complaint.  The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.  These damages are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

## COUNT VII.

## VIOLATION OF RACKATEER INFLUENCED CORRUPT OPRGANIZATION (RICO) 18 U.S.C. §§1961and 1962(a)(b)(c)(d)

100.    Plaintiffs re-allege and incorporate all above and below as if fully incorporated herein. The claims in this Count are alleged in the alternative, and in addition, to each other. They are alleged in the alternative, and in addition, to the claims in the other Counts.

101.    This is a civil action brought by the Plaintiffs pursuant to the provisions of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961 and 1962 concerning racketeering activity perpetrated by all Defendants and Co-Conspirators   (the "Conspirators"). These Defendants have entered into and furthered an enterprise to entrap, defraud, and wrongfully while committing such predicate acts so as to deprive Plaintiffs of the use of certified seeds and delivering an altered and inferior (fake) seed instead.

102.    These acts of racketeering, occurring within ten years of one another, constitute a pattern of racketeering activity within the meaning of 18 U.S.C.A. 1961(5). The function of the enterprise was to fraudulently induce Plaintiffs into executing a contract for certified seed (FIFTY DOLLAR per bushel) and delivering — instead — an altered and inferior seed (approximately TEN DOLLARS per bushel) to Plaintiffs.  Creating a profit of approximately **FORTY DOLLARS** per bushel for reach every bushel sold to Plaintiffs.  Plaintiffs purchased approximately 2,000 bushels of purported STINE certified seed and in addiction other corresponding Liberty Link herbicides from other Defendants as a direct result of the criminal activities herein complained of.

## 18 U. S. C. § 1961

103.    Defendant, KEVIN COOPER's representation at the 67th Annual Mid-South Farm and Gin Show in Memphis, Tennessee that STINE SEEDS, via his business card, **STINE HAS YIELD** was for the purpose of executing a scheme and artifice to defraud and obtaining money by means of false and fraudulent pretenses, representations and promises.  Defendants, STINE SEED COMPANY and KEVIN COOPER committed wire fraud by convincing Plaintiffs — in furtherance of the scheme — to apply for credit and licenses agreements, via the Internet, to purchase STINE "certified seeds" when in fact Defendants **never** intended to (nor did they) deliver any such certified seeds from STINE seed breeders to Plaintiffs.

104.    All Defendants knew that the sale of inferior seeds and corresponding herbicides (Liberty Link) could not have succeeded and/or continued without the use of extensive advertisement through wire, internet, and exhibitions (farm and gin show (cards, brochures and pamphlets)) in interstate commerce for the purpose of transmitting misleading and fraudulent information otherwise targeted at prospective customers such as Plaintiffs.  Consequently, the advertisement constituted a necessary component of the alleged fraud for which Plaintiffs reasonably relied upon and suffered grievous losses as a result.

105.    Defendant, STINE SEED COMPANY and KEVIN COOPER knew that Plaintiffs would reasonably rely upon their representations at the farm and gin show in Memphis.  Defendant's sole purpose of advertising and presentations of its products would cause farmers to stop by its exhibit booth at the gin show. Defendants knew that the majority of the farmers attending the show were using other competitor's certified seeds as were Plaintiffs.

106.    The common purpose of the Defendants was to make a profit of approximately **FORTY DOLLARS** or more per bushel (the difference between a certified bushel costing approximately FIFTY DOLLARS and an average cost of approximately TEN DOLLARS a bushel

for non-certified soybean seeds).   In addition, Defendants would then be poised to sell Liberty Link *herbicides* (AGRISELECT etc.) to protect those soybeans from weeds.  Plaintiffs are therefore worse off in that they are now paying for seeds and herbicides with little potential of yields necessary the service the debt associated with the otherwise high cost of using STINE certified seeds and Liberty Link herbicides.  Analogously, submitting payments for jockey and entrance fees to an unwitting owner of an otherwise terminally ill race horse.  All Defendants had a quid pro quo relationship with one another.  Defendants, KEVIN COOPER and GREG CRIGLER represented all other Defendants and sold or steered Plaintiffs to do business with the circle of Defendants' who were an association-in-fact enterprise.

## 18 U.S.C. §1962 et seq.

107.     In fact, RICO prohibits a person "employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce" from conducting "such enterprise's affairs through a pattern of racketeering activity."

108.     All Plaintiffs, aver that they have provided a factual foundation (pursuant to F.R. Civ. Proc. 9) , through this Complaint and any corresponding affidavits (Joint Affidavit of Thomas Burrell and David Allen Hall (Ex. "D"), Tyrone Grayer (Ex. "C") and Walter Jackson (Ex. "B")) herein attached, showing, among other things, the existence of an enterprise as sets forth under specific prohibitions aimed at different ways in which a pattern of racketeering activity may be used to infiltrate, control, or operate "a[n] enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

109.     Moreover, Defendants actions are in contravention of 7 U.S. Chapter 37 et seq. as herein above references and set forth in it pertinent parts under section 1571 (**Prohibitions relating to interstate commerce in certain seeds**).  Plaintiffs aver that Defendants conspired to deliver or

caused to be delivered seeds to Plaintiffs in containers that, among other things, did not list the name of the purchaser of said seeds as is required by federal law (Ex. "G").

110.     Plaintiffs have and will show Defendants invested income derived from a pattern of racketeering activity in an enterprise and acquired or maintain an interest in the enterprise through a pattern of racketeering activity. Moreover, that persons employed by or associated with the enterprise conducted the enterprise's affairs through a pattern of racketeering activity and further conspired to violate the other three prohibitions.

111.     Defendants, STINE SEED COMPANY , KEVIN COOPER, GREG CRIGLER, B&B AG, AGRISELECT, LLC   and   CONCEPT AG are members of a RICO Enterprise (association-in-fact) composed of  members who at all times herein relevant and material, were and still are, agents for one another, and acting under the course and scope thereof, with knowledge and consent of each other in furtherance of a RICO enterprise to defraud Plaintiffs and deprive Plaintiffs of property through racketeered activities of their leasehold interest in land and preparation and development of the crop (soybeans)  on certain farm land *(Hey Mr. Burrell letter)* by, here again,  committing Plaintiffs to paying for products (certified seeds) that in fact were inferior (Ex. K).

112.     In fact, all Plaintiffs had the lawful right to plant seeds from a STINE competitor (Monsanto/Pioneer etc.) by purchasing those seeds from local farm supply dealers (Sanders Seeds, Crop Production Services and or Dulaney Seeds, etc.), otherwise located in Quitman and Sunflower Counties, Mississippi without filling out credit applications). Moreover, these competitors seeds performed equally well in test conducted by the Mississippi State Trails for 2017 (Jackson Affidavit (Ex. "B" at B (MSU, Delta Grow)). And, based on information and belief, are used and planted by more farmers and growers in the Mid-South area than STINE SEEDS. In fact, all Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and WALTER

JACKSON were using other seed suppliers before meeting Defendant, KEVIN COOPER at the gin show or elsewhere.

113.    Plaintiffs were induced to planting STINE certified seeds only after Defendant KEVIN COOPER convinced them that their yields and weed control (Ex. "L," ("…superior genetics and peace of mind weed control)) would be enhanced by using certified STINE seeds and Liberty Link herbicides.  Moreover, if Plaintiffs had continued to purchase certified seeds from a STINE competitor (Monsanto/Pioneer) the sale of Liberty Link herbicides would not have been appropriate from Defendants, AGRISELECT and CONCEPT AG.  These herbicides (Monsanto and Liberty Link) are not compatible but mutually exclusive of one another.[5]  That is to say, selling STINE seeds created the occasion to sell AGRESELECT and other herbicides unique to STINE's Liberty Link traits.

114.    Hereto, Plaintiffs, THOMAS BURRELL, DAVID HALL and TRYONE GRAYER are now convinced that all Defendants and certain UNKNOWN SEEDS BREEDERS did not deliver the certified seeds that were represented to be STINE certified seeds and that the treating and coating of the STINE seeds were deliberate and intentional acts (pretext) employed to cover up the fact that the seeds delivered in the JUMBO bags were not certified STINE seeds.  Plaintiffs, Burrell, Hall and Grayer aver that the ("Warehouse Operation") in Sledge, Mississippi functioned as a re-bagging and/or switching station for un-certified seeds to be repackaged and labeled as certified seeds by Defendants.

115.    Plaintiffs, aver that Defendants KEVIN COOPER, KEVIN RYANS and GREG CRIGLER relationship to themselves and other Defendants provide lucidity to Plaintiff's argument that a formal and ongoing organization existed with the capability and threat of

---

[5] The application and spraying of Monsanto's (Round Up Ready) herbicides would be lethal to any STINE's (Liberty Link) soybeans and vice versa.

continuing activity and that the organization was separate from the pattern of racketeering activity in which it engaged. Moreover, all Plaintiffs, based on information and belief, aver that other Black farmers were victimized by Defendants in the crop year of 2016 who otherwise farmed in the states of Tennessee, Arkansas and Mississippi. And, that the advertisement campaigns regarding the Mid-South Farm and Gin shows provides an opportunity for theses unlawful scheme, herein complained about, to be repeated into the future.

116.    Plaintiffs aver that the predicate acts and or offenses are part of Defendants ongoing 'entities' regular way of doing business and, consequently capable of repetition. Plaintiffs aver that Defendant KEVIN COOPER's role of acting as the collection person for all Defendants clearly shows that all Defendants were dependent upon him (COOPER) for the dissemination and broadcasting of payment collections *(Ex. "K" (Hey Mr. Burrell Letter))*.

117.    Defendants, KEVIN COOPER and GREG CRIGLER were stooped an resolute on criminal activity and seized control of a previously legitimate firms (STINE SEED, CONCEPT AG and AGRISELECT) and use the firms' resources to perpetrate more extensive, and less discernable, criminal acts than they could do on their own.  Defendants, KEVIN COOPER and GREG CRIGLER **common purpose** for defrauding Plaintiffs was to make a profit of over **FORTH DOLLARS** or more by selling Plaintiffs seeds (non-certified) otherwise valued at approximately TEN DOLLARS per bushel for STINE certified seeds valued at approximately FIFTY DOLLARS per bushel.

118.    Defendant, COOPER's position (District Sales Manager) at STINE SEEDS and GREG CRIGLER's warehouse facilities provides a perfect opportunity for their unlawful activities to be repeated into the future.  Defendant STINE SEEDS' lack of oversight on how seeds were labeled and transported in interstate commerce (¶ 24) provided the means and opportunity to further this criminal enterprise's way of doing business.

119.     Defendants, KEVEN COOPER and GREG CRIGLER were able to get limited resource Black farmers to agree to purchase certified seeds (and chemicals) from a major corporations and subsequently transport (across state lines) and divert those certified seeds to a location ("Warehouse Operation") where upon they sold the certified seeds to "**other**" farmers and subsequently used the emptied bag (STINE SEEDS) and re-filled them with inferior seeds from a previous crop of un-certified quality. These inferior seeds now having the imprimatur of belonging to a class with certified germination and traits (herbicides) equal to the otherwise certified seeds.

120.     All Plaintiffs aver that the request from Defendant, KEVIN COOPER of Plaintiff, WALTER JACKSON to pick up any remaining STINE seeds and labels to be sent to a grain elevator was to dispose of any untreated seeds that could be tested for germination and purity otherwise proving the inferiority of the fake certified soybean seeds. And, why Defendant, KEVIN COOPER expressed no jubilation or enthusiasm when learning that STINE seeds could possibly be repurchased from Plaintiffs, Hall as per the August 21st letter from Mr. Hansen of STINE seeds. Likewise, KEVIN COOPER's request to visit Plaintiffs fields in April and May to — make a determination of best varieties (49LD02) for a particular field — was a scheme to further all Plaintiffs' reliance on the representation of receiving certified seeds from STINE SEED Company.

121.     Moreover, Plaintiffs aver that Defendant KEVIN COOPER's raising the "dicamba drift" concerns shortly after the soybeans started to emerge was simply to prepare Plaintiffs for what he "knew" would be a "**yield problem**" (**¶ 31**) once the soybean fields were harvested. Defendants, KEVIN COOPER and KEVIN RYAN both had ample time, opportunity and means to determine whether any soybeans fields had been affected with diacamba drift. But, Defendants choose not to test for diacamba because, Plaintiffs aver, any testing would also reveal the fact that the soybeans were not of a certified STINE variety.

36

122.     Likewise, all Plaintiffs, aver that all Defendants, were able to charge approximately **FIFTY DOLLARS** per bushel for treated STINE certified seeds where in fact the inferior non-certified seed would have been worth approximately **TEN DOLLARS** per bushel on the open market.   In fact, the selling of chemicals (seed treatment and herbicides) and other inputs by Defendants, B&B Ag, AGRISELECT, LLC. and CONCEPT AG was done in furtherance of the unlawful scheme by all Defendants to defraud a class of minority farmers (Plaintiffs) of their property causing severe harm to them.   In fact, Plaintiffs, BURRELL, HALL and GRAYER (farming partners) experienced over **ONE MILLION DOLLARS** loss to their 2,200 acre farming operation in Rome, Mississippi as a direct result of the poor performance of inferior non-certified seeds furnished by all Defendants.

123.     Again, Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and TRYRONE GRAYER based on information and belief, aver that the fraudulent scheme and fraudulent intent manifested itself, when, among other things, an [order] was placed to Defendant, KEVIN COOPER for certified STINE seeds (jumbo bag) and that equal amount (jumbo bag) of non-certified seeds were then sent and or already at the ("Warehouse Operation") to be treated (with chemicals supplied by CONCEPT AG) and subsequently "replaced" into emptied STINE jumbo bags (Ex. "N," flow chart). And, the STINE certified seeds would then be sold to **other** farmers.

124.     Likewise, based on information and belief, the inferior seeds came from Defendants' GREG CRIGLER's stock pile of soybean from his farming operation in Sledge and/or the Charleston, Missouri area.   Plaintiffs, aver that these "**other**" farmers had access to seed trailers (seed tenders and/or seed trailers) and therefore did not require the delivery of soybeans to their farms via the STINE jumbo bags. These now "emptied" STINE jumbo bags — still bearing the label of **49LD02** — were then, here again, filled with coated and treated non-certified soybean seeds

of inferior quality (provided by Defendant, GREG CRIGLER) and tied into knots and delivered to Plaintiffs (*Ex. "I", photo of emptied bags tied into knot*).

125.    In fact, Plaintiff, DAVID ALLEN HALL did send collectively ($3,000 and $5,000 checks respectively) **EIGHT THOUSAND DOLLARS** to defendant, KEVIN COOPER in July and August of 2017 for payment to B&B AG for seed treatment.  It is believed that these funds were reinvested in the enterprise for the benefit of all defendants (ex. *J, checks to B&B AG*)

126.    Moreover, Plaintiffs are now subject to having collection agencies demanding payments (Exh. P) and using tactics that could very well last for several years and thereby constituting longevity and continuity. In fact, Plaintiffs have suffered a loss to their property interest in 2,200 acres of land and equipment.

127.    Plaintiffs allege they were the direct target and recipient of fraudulent seeds and chemical bills and related seeds purchases submitted by Defendants in connection with unnecessary application of chemicals and seed treatment by Defendants throughout [the] course of a fraudulent scheme and that they have been injured in their business and property as a result of these fraudulent schemes.  All Defendants relied upon, Defendant, KEVIN COOPER to distribute information regarding the enterprise which established the link for purposes of enterprise and RICO liability.

128.    Plaintiffs have adequately alleged an association-in-fact enterprise and have described the "interrelationships between each set of defendants and their respective roles in the scheme," and also demonstrated how the enterprise functioned with "sufficient longevity to permit its members to pursue the illicit purpose of the enterprise through a pattern of racketeering activity. Each Defendant conspired and knowingly carried out his part of the activities (conspiracy) of the alleged scheme to defraud all Plaintiffs. Defendant, KEVIN COOPER request of having Plaintiff, WALTER JACKSO to surrender any leftover seeds and labels is clear evidence that he planned to eliminate any trace of seeds that could be tested for purity and germination. In fact, neither

Defendant, STINE SEED COMPANY nor its agronomist, KEVIN RAYAN made any effort to contact and/or agreed to have any of the suspect soybeans otherwise harvested by Plaintiffs tested or caused to be tested by any agency whatsoever.   Their capacity and promises to Plaintiffs do so, notwithstanding.  But, Defendant RYAN has sent demands for payments to Plaintiff, HALL.

129.   Plaintiffs have suffered harm as the result of the actions of all Defendants, STINE SEED COMPANY, KEVIN COOPER, GREG CRIGLER, B&B AG, AGRISELECT and CONCEPT AG and Co-Conspirators who acted in concert and in collusion to harm Plaintiffs through deprivation of their leasehold interest in 2,200 acres of farmland and other property.

130.   As a direct and proximate cause of all Defendants' conduct towards Plaintiff they have sustained losses which were fully described in other parts of this Complaint.  The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.  These damages are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

**COUNT VIII:**

**CLAIMS OF RACE DISCRIMINATION PURSUANT TO**
**42 U.S.C. § 1981 and 42 U.S.C. 1982**

131.   Plaintiffs re-allege and incorporate all provisions above and below as if fully incorporated.  The claims alleged in the alternative, and in addition, to each other.  They are alleged in the alternative, and in addition, to the claims in the other Counts.

132.   Defendants, STINE SEED COMPANY, KEVIN COOPER, GREG CRIGLER, B&B AG, AGRISELECT, LLC and CONCEPTAG knew of or should have known that Plaintiffs are members of the African-American race, and were as conducting operations in part as a result of attempting to assist one or more black farmers.   STINE SEEDS and its representatives and

39

contractors as a protector and guardian of the USDA (SEED LAW) had a public duty to protect the interest of its customers — Black farmers — whom it knew would reasonably rely upon, at all times relevant and material, the labeling, information, representation and statements regarding STINE's products.

133. At the time of contractual formation, and at other relevant times, Defendants, STINE SEED COMPANY, KEVIN COOPER, GREG CRIGLER, B&B AG and CONCEPTAG indicated racial animus by and through their statements during the course of the matters referred to in the facts section above.

134. Defendants, STINE SEED COMPANY, KEVIN COOPER, GREG CRIGLER, B&B AG and CONCEPT AG operated to discriminate against Plaintiff as a result of Plaintiff's race when it ultimately, tortuously and willfully coated, treated and switched certified seeds with seeds of inferior genetics, purity and germination causing Plaintiff losses and damages.

135. All Defendants' actions are in direct contravention to 42 U.S.C. § 1981 and it pertinent part as follow:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

136. Moreover, Defendant, STINE SEED COMPANY had a duty and obligation to examine and otherwise initiate and inquiry into the allegations and expressed concerns resulting from the telephone call from Plaintiffs, THOMAS BURRELL and DAVID ALLEN HALL to STINE SEED representatives, Marion Stine and Kevin Ryan in October of 2017 as is required under 7 U.S. Chapter 37, § 1594 (Alteration). Defendants' categorical and absolute dismissal of the pleas and cries (call to Myron Stine and visit by Kevin Ryan) from Plaintiffs regarding the problems

with STINE seeds was a direct, blatant and intentional disregard for the safety and welfare of Black farmers and constitute a badge of incidences of slavery.

137.    In fact, Defendant, KEVIN RYAN, acknowledge emphatically, *"**you have a yield problem**,"* when he meet with Plaintiffs, THOMAS BURRELL and DAVID ALLEN HALL, in a road next to Plaintiff's soybean fields in Rome, Mississippi in October of 2017.    Moreover, Defendant KEVIN RYAN assured Plaintiffs that he would look into this matter further and determine what happened regarding the very problem for which he identified — **"you have a yield problem."**  Defendant, KEVIN RYAN never contacted any Plaintiff regarding the yield problem, whatsoever. He never called or spoke to either Plaintiff regarding this matter. But, Defendant KEVINRYAN did indeed take time to send Plaintiff, DAVIN ALLEN HALL a letter demanding payment for STINE seeds *(Ex. "M")*.

138.    Plaintiffs maintain that Defendant, KEVIN RYAN did conspire to withhold material and relevant information regarding the alteration of STINE seed for the benefit of other co-conspirators (Greg Crigler) and Defendants (seed breeder) regarding the transportation and selling of inferior seed to all Plaintiffs.

139.    All Plaintiffs aver that the unlawful, intentional and blatant actions of all Defendants, have caused all Plaintiffs to suffer loses and have impeded their right in the leasehold interest in the land upon which inferior seeds and the application of other chemical to maintain those inferior seeds were planted.

140.    Defendants, unlawful and intentional racial animus toward all Plaintiffs have caused serious damages — resulting from low yields — to them and have had a negative impact on their ability to make rental payments to their landlord and credit standing in their communities.

141.    Likewise, all Defendants actions are in violation of 42 U.S.C. § 1982 and its pertinent parts as follows:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

The contempt and disdain levied at Plaintiffs by all Defendants constitutes a badge of incidents and slavery.

142.    As a direct and proximate cause of all Defendants' conduct towards Plaintiff they sustained losses which were fully described in other parts of this Complaint. The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint. These damages are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race in the making and enforcing of the contracts between the parties.

## COUNT IX.

## <u>VIOLATION OF 15 U.S.C § 1691 (ECOA)</u>

143.    Plaintiffs re-allege and incorporate all provisions above and below as if fully incorporated. The claims in this Count are alleged in the alternative, and in addition, to each other. They are alleged in the alternative, and in addition, to the claims in the other Counts.

144.    Defendant, STINE SEED COMPANY and KEVIN COOPER conspired to have Plaintiffs, DAVID ALLEN HALL and WALTER JACKSON to effectively bind them to debt and other obligations associated with the payment and penalties (usurious interest (40%)) of inferior seeds and other chemicals and was done to further the unlawful scheme to deprive Plaintiffs of their property because of Plaintiff's race. *See, Exhibit "Q" (penalty for late payment letter).*

145.    Defendants actions are in contravention to 15 U.S.C. §1691 and its pertinent parts as follows:

42

RESPECTFULLY SUBMITTED, this the ___18th___ day of   April, 2018.

FOR THE PLAINTIFFS,

> THOMAS BURRELL, DAVID ALLEN HALL,
> YRONE    GRAYER,    WALTER    JACKSON,
> MONIQUE  JACKSON  and  INTERNATIONAL
> TRUSTEE GROUP, LLC.

BY: _____

PAUL A. ROBINSON JR., ESQ.

Paul A. Robinson Jr., Esq., (014464))
THE LAW OFFICES OF PAUL ROBINSON, PLLC
3749 Marty Street
Memphis, Tennessee 38109
Tel: (901) 649-4053
Fax: (901) 649-4053
Email: problaw937@hotmail.com

46

## ACKNOWLEDGEMENT

I, DAVID ALLEN HALL, hereby acknowledge the statements contained in the foregoing document are true to the best of my knowledge, information and belief.

David Allen Hall

Sworn to and subscribed before me this _____ day of April 2018

Notary Public

My Commission expires: _____

## ACKNOWLEDGEMENT

I, THOMAS BURRELL, hereby acknowledge the statements contained in the foregoing document are true to the best of my knowledge, information and belief.

_____
Thomas Burrell

Sworn to and subscribed before me this __18ᵗʰ__ day of April 2018

_____
Notary Public

My Commission expires: __Aug't 10, 2021__

PAUL A. ROBINSON JR.
STATE
OF
TENNESSEE
NOTARY
PUBLIC
COUNTY OF SHELBY
My Comm. Expires Aug. 10, 2021

48

## ACKNOWLEDGEMENT

I, TYRONE GRAYER, hereby acknowledge the statements contained in the foregoing document are true to the best of my knowledge, information and belief.

Tyrone Grayer

Sworn to and subscribed before me this ___16th___ day of April 2018

Notary Public

My Commission expires: _August 10, 2021_

49

## ACKNOWLEDGEMENT

I, WALTER JACKSON, hereby acknowledge the statements contained in the foregoing document
are true to the best of my knowledge, information and belief.

Walter Jackson

Sworn to and subscribed before me this _16th_ day of April 2018

Notary Public

My Commission expires: _August 10, 2021_

## ACKNOWLEDGEMENT

I, MONIQUE JACKSON, hereby acknowledge the statements contained in the foregoing document are true to the best of my knowledge, information and belief.

_____
Monique S. Jackson

Sworn to and subscribed before me this _____ day of April 2018

_____
Notary Public

My Commission expires: _August 10, 2021_

## ACKNOWLEDGEMENT

I, INTERNATIONAL TRUSTEE GROUP, LLC, hereby acknowledge the statements contained in the foregoing document are true to the best of my knowledge, information and belief.

By: David Allen Hall

Title: _President_

Sworn to and subscribed before me this _____ day of April 2018

Notary Public

My Commission expires: _August 10, 2021_

52