# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

**DAVID ALLEN HALL**
**THOMAS BURRELL**
**TYRONE GRAYER**                      **CASE NO.: 2:18-cv-02265-JTF-tmp**
**WALTER JACKSON and**
**MONIQUE JACKSON, his Wife**

                                                              **PLAINTIFFS**

**V.**

**STINE SEED COMPANY**
**KEVIN COOPER**
**MYRON STINE**
**KEVIN RYAN**
**GREG CRIGLER**
**CONCEPT AG.**
**B&B, INC.**
**AGRISELECT, LLC.**
**UNKNOWN STINE SEED BREEDERS**
**UNKNOWN FARMERS AND PLANTERS**

                                                        **DEFENDANTS**

## FIRST AMENDED COMPLAINT
### (A JURY TRIAL IS DEMANDED)

**COME NOW** Plaintiffs, DAVID ALLEN HALL, THOMAS BURRELL, TYRONE

GRAYER, WALTER JACKSON and MONIQUE JACKSON, his Wife bring this action against

the captioned Defendant(s).  Unless otherwise stated, "Defendant" or "Defendants" shall also refer

to all Defendants named collectively and together unless otherwise stated.  The term "Plaintiff" or

"Plaintiffs" shall refer to all Plaintiffs collectively and together unless otherwise stated.   The

actionable conduct of Defendants constitutes violations of 18 U.S.C. §§ 1341, 1343, 18 U.S.C. §§

1962 (a), (b), (c) and (d), 42 U.S.C. § 1981, 15 U.S.C. § 1691 et seq. and generally Tennessee State

Law.  In support hereof, Plaintiff states as follows.

## JURISDICTION AND VENUE

1.      This action is brought pursuant to the civil Racketeer Influenced and Corrupt

Organizations Act (RICO). Federal subject matter jurisdiction is conferred by 18 U.S.C.§ 1964(c)

which also creates the cause of action and provides:

> Any person injured in his business or property by reason of a violation of section 1962 of
> this chapter may sue therefore in any appropriate United States District Court and shall
> recover threefold the damages he sustains and the cost of the suit. Including a reasonable
> attorneys fee.

Defendants fall under the jurisdiction of Tennessee State and Federal laws as set forth

specifically below as well as 18 U.S.C.§§ 1965 (a) and (b).

> (a) Any civil action or proceeding under this chapter against any person may be instituted
> in the district court of the United States for any district in which such person resides, is
> found, has an agent or transacts his affairs.

> (b) In any action under section 1964 of this chapter in any district court of the United States
> in which it is shown that the ends of justice require that other parties residing in any other
> district be brought before the court, the court may cause such parties to be summoned, and
> process for that purpose may be served in any judicial district of the United States by a
> marshal thereof.

2.      Section 1965(b) provides that as long as one defendant is subject to service in a

district additional parties residing in other districts may be brought before the forum court in the

court's discretion to the extent that the" ends of justice requires."[1] A civil RICO action can only

be brought in a district where personal jurisdiction based on minimum contacts is established as to

at least one defendant[2] providing a basis for this action in this Court.

---

[1] See Civil RICO A Definitive Guide Fifth Edition Gregory P. Joseph (Page American Bar Association 2018)
[2] See PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65 (2d Circuit 1998).

3.      For nationwide service to be imposed under section 1965(b) the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy.[3] This court has personal jurisdiction over the hub participant in the subject conspiracy.  Defendant, Kevin Cooper satisfies all requirements for personal jurisdiction in this Tennessee forum. Kevin Cooper physically entered the forum state (Tennessee) that on March 3, 2017 Cooper was one of two sales representatives sent by STINE Seed Company to represent it at the 67th Annual Mid-South Farm and Gin Show held in Memphis, Tennessee.  Subsequent to his attendance at the Gin show held in Memphis, Cooper established contact with Thomas Burrell in the forum state on at least ten occasions through telephone text messages into the forum state on (May 19, 2017 May 22, 2017, June 8, 2017, June 14, 2017, June 28, 2017, June 29, 2017, July 5, 2017, July 14, 2017,August 14, 2017 and October 13, 2017) to establish user license agreements and sell what were purportedly certified STINE seed to Thomas Burrell.

4.      At all times relevant and material to the Complaint, Cooper was employed by STINE Seed Company as a Sale Representative in Tennessee and Mississippi area (Region # 19). As such, Cooper was a key and dominant figure representing STINE in the application for credit and/or technology agreements with STINE. Cooper had control "over" and operated, directed and always managed the enterprises affairs material to the Complaint.  He was the person who would place orders from STINE's seed breeder in Arkansas and elsewhere.  He arranged for the transportation, storage and delivery of STINE soybeans to STINE end users. Cooper was responsible for mailing invoices and collection of accounts owing to STINE.  To the extent that, here again, STINE chose not to use local farm supply distributors (external organizing principle) to otherwise sell, store, treat and delivery of its soybean seeds, Cooper was virtually the only

---

[3] See Butcher's Union Local No. 498 v. SDC Inv., Inc. 788 F.2d 535, 539 (9th Circuit 1986).

person that farmers interfaced (chain of command) within the STINE corporation — as a direct result of STINE's policy of not utilizing traditional farm suppler chain purveyors.

5.      Based upon the personal jurisdiction of Kevin Cooper, the additional defendants, STINE Seed Company, Kevin Ryan, Myron Stine, Greg Crigler, Concept Ag., B&B Inc. and Agri Select, Inc. are brought before the forum court to the extent that the ends of Justice require.

6.      Defendants fall under the jurisdiction of Tennessee State and Federal laws as set forth specifically below, providing a basis for this action in this Court.  All damages are to be recovered according to provisions addressing recoverable damages set forth in the above-mentioned laws.  Plaintiffs incorporate, in their prayer for relief below, all provisions of the above-mentioned laws defining and describing the types and categories of damages they may recover. They specifically claim each Plaintiff is separately entitled to recover all damages recoverable under all laws referred to in this Complaint, (or otherwise implicated by the facts or causes of action) all of which are sought pursuant to this Complaint whether or not specifically stated below.

7.      This Honorable Court has jurisdiction of this matter (due to one or more federal questions according to 28 U.S.C § 1331) and venue is proper according to 28 U.S.C § 1391 given substantial actionable conduct occurred in this district.  This Honorable Court also has jurisdiction over state law claims according to 42 U.S.C. § 1367.   Plaintiff, David Allen Hall is domiciled in Tennessee as more fully described below.   Plaintiff, Thomas Burrell is domiciled in Tennessee as more fully described below.  Plaintiff, ITG, LLC has its principle place of business in Tennessee as more fully described below. Plaintiffs, TYRONE GRAYER, WALTERJACKSON and MONIQUE JACKSON are domiciled in the state of Mississippi as more fully set forth below. Jurisdiction is otherwise proper.  The amounts in controversy well exceed seventy-five thousand dollars therefore implicating diversity jurisdiction as well according to 42 U.S.C. § 1332.

8.    All Counts, claims, causes of action, allegations, statements, and theories of recovery are alleged in the alternative to each other, and also in addition to each other. The matters below are set forth while reserving the opportunity to provide additional details in discovery. Nothing herein shall be deemed as waiving requirements of notice pleading. Unless otherwise stated in the heading of the Count or within the Count, all Counts, and claims within them, are meant to be applicable to all Defendants named or to be named. Wherever referred to in this Complaint, the term "actionable conduct" shall include all facts, occurrences, actions, inactions, representations, omissions, and other things providing the basis for legal action which Plaintiff alleges in fact occurred.

## **PARTIES**

9.    Plaintiff, Thomas Burrell is a member of the African American race and is domiciled in Tennessee currently and at the time of all actionable conduct referred to in this Complaint. He is therefore domiciled at 175 Capital Way, Atoka Tennessee 38004. Plaintiff, David Allen Hall is a member of the African American race and is domiciled in Tennessee currently and at the time of all actions conducted referred to in Complaint. He is therefore domiciled at 1972 Peabody Avenue, Memphis, Tennessee 38104. Plaintiff, Tyrone Grayer is a member of the African American race and is domiciled in Mississippi currently and at the time of all actionable conduct referred to in this Complaint. He is domiciled at 409 West Street, Tutwiler, Mississippi 38963. Plaintiff, WALTER and MONIQUE JACKSON are members of the African American race and are domiciled at 987 Squirrel Lake Road, Darling, Mississippi 38623 and at the time of all actionable conduct referred to in this Complaint. Moreover, Plaintiffs THOMAS BURRELL, TYRONE GRAYER and WALTER and MONIQUE JACKSON are believed to be considered by the United States Congress as qualifying as LIMITED RESOURCE and

SOCIALLY DISADVANTAGED FARMERS AND/OR RANCHERS.[4] Plaintiff, ITG is a limited liability Company and has it principle place of business at 287 Madison Avenue, Memphis, Tennessee 38103 presently and at the time of all actionable conduct.

10.    Defendant STINE SEED COMPANY ("STINE") has a principle place of business at 2255 Laredo Trail, Adel, Iowa 50003. At all times relevant to the Complaint, STINE is held out in the seed industry as being the world's largest private seed company, and the largest independent seed company in the U.S. It has over 900 patents, specializing in soybean and corn genetics (Certified Seeds).  STINE's soybean seeds are also tolerant to herbicides and other weed control products referred to as "Liberty Link" soybeans. As such, any STINE soybean that is "Liberty Link" tolerant must, necessarily, be sprayed "only" with herbicides (weed control) that conform to the Liberty Link traits — whether produced by STINE or some other "Liberty Link" breeder. By example, any herbicide that is Liberty Link "ready" (tolerant) can be applied as a weed killer on soybeans produced under the liberty link trait whether (1) the soybeans were grown by STINE or some other breeder, (2) whether the soybeans are certified or not (soybean grown in previous years) and/or (3) whether the variety is suitable for a particular area or region of the soybean growing states or not.  Therefore, soybean farmers who purchase STINE's Liberty Link soybeans will be limited to using only certain herbicide products after they make the decision to plant STINE's Liberty Link in their fields.

11.    Plaintiffs aver that Defendant, STINE produces over 200 varieties of genetically modified soybean seeds that are sold in states throughout the soybean producing regions of America.  Moreover, STINE requires its certified seed customers (farmers) to sign a Seed User

---

[4] A socially disadvantaged group is a group whose members have been subject to racial or ethnic prejudice of their identity of a group, without regard to their individual qualities. Identify socially disadvantaged groups include: (a) Black or African American (b) American Indians or Alaska Natives (c) Hispanics (d) Asians and (e) Native Hawaiians or other Pacific Islanders.

Agreement otherwise promising, among other things, that the customer will not make any efforts

to re-plant any harvested certified seeds (progeny) in any following years and/or sold for seed

and/or breeding purpose as follows:

> In consideration of the foregoing, and in consideration of the Seed that User has been sold or otherwise granted the right to use, User hereby acknowledges and agrees that the production from the Seed will be used only for **feed** or **processing**, and will not be used or sold for seed, breeding, or any variety or hybrid improvement purposes unless User has a valid agreement with STINE for such purposes.  User acknowledges STINE and its suppliers have a proprietary interest in the use of subsequent production from the Seed, and agrees it would be a violation of this Agreement to allow the subsequent production of the Seed to be used to create any seed variety or seed product from said production.  Any export of this Seed or its progeny from the country of purchase is strictly prohibited, except that forage or grain may be exported solely for use in feeding or processing.

> § 201.9   **Kind and Variety** - this may include the species or common name, and cultivar or variety name of the plant and distinguishes it from other seeds of the same kind.
> § 201.13  **Lot number** - defined quantity of seeds identified by a lot number or mark, every portion or bag of which is uniform, within permitted tolerances, relative to the factors which appear in the labeling.
> § 201.5   **Origin** - location identifying where the seed was grown. This may be listed as a state or may be a more specific location as with Pre-Varietal Releases.
> §201.6  **Germination** – (% Germination) a germination test determines the capability of a seed lot to produce normal seedlings under favorable controlled conditions.

12.    Plaintiffs aver that STINE, as a certified seed purveyor is required to follow and

adhere to the federal seed laws otherwise codified under 7 CFR Part 201 — Federal Seed Act

Regulations and its pertinent parts §§ 201.1 – 201.78 and 7 U.S. Ch. 37.

13.    Plaintiffs aver that on March 3, 2017, STINE was one of hundreds of exhibitors at

the 67th Annual Mid-South Gin and Farm Show which was held in Memphis, Tennessee.  This

event was highly published and advertised to farmers and ranchers through the Mid-South area to

include, but not limited to, Tennessee, Missouri, Kentucky, Mississippi, Louisiana and Alabama.

On Friday, March 3, 2017 a group of African American farmers attended the show and exhibition and visited the site where STINE had two sales representatives to explain and ultimately obtain sales agreement with these farmers.

14.    Plaintiff states that STINE does not operate as regular seed breeders who use middle-men (general store) distributors (farm and ranch supply wholesalers, *i.e., Sanders Seed Company*, *Helena Chemical Company, Green Point Ag* and/or *Crop Production Supply*)).  STINE, at least in the Tennessee and Mississippi area has a policy (external organizing principle) of using its own sales representatives to be the sale person, delivery person and warehousing and distributors of its certified soybean seeds. That is to say that the sales persons are the order takers, delivery persons, seed treatment persons, seed storage persons — all in one. The STINE sales representative is responsible for taking credit applications, executing technology agreements, selling and delivering seeds, collecting unused seeds, mailing invoices to customers and collecting payments from customers, via electronic and transmissions and/or telephone communications.

15.    Plaintiffs aver that Kevin Cooper was at all times relevant and material to the Complaint, employed by STINE Seed Company as a Sale Representative in the Tennessee and Mississippi area (Region # 19).  As such, Cooper was a key and dominate figure representing STINE in the application for credit and technology agreements with STINE. Cooper had control "over" and operated, directed and managed the enterprises affairs at all time material to the Complaint.  He was the person who would place an order from STINE's seed breeder in Arkansas and elsewhere.  He arranged for the transportation, storage and delivery of STINE soybeans to STINE end users.  Cooper was responsible for mailing invoices and collection of accounts owing to STINE.

16.    Plaintiffs aver, here again, that STINE chose not to have local farm supply distributors to otherwise sell, store, treat and deliver its soybean seeds.  Defendant, KEVIN COOPER was, therefore, the only person that farmers interfaced with in the STINE corporation as a direct result of STINE policy (external organizing principle) of not utilizing traditional farm suppler chain purveyors.

17.    Plaintiffs aver that Defendant, B&B Ag. was at all times relevant to the Complaint owned by Kevin Cooper. As such, B&B Ag. was created by Cooper for the sole purpose of treating soybean seed.  Moreover, Cooper insisted to all plaintiffs that all the varieties of STINE certified seeds should be treated.  Typical soybean treatment involves coating the soybean seed with liquid that contains either (a) inoculant (b) fungicide (c) insecticide and (d) biological and/or fertility and allegedly, aid the development of the roots system and protection against insects while the soybean seedlings are vulnerable to insects — the argument goes.  However, coating and treating the seeds with inoculants (red and/or green coloring) provided a masking and camouflaging of the sort that gave the appearance that the seeds were new and of the first (1st) generation progeny.

18.    Plaintiffs aver that Defendant, Greg Crigler was at all times relevant to the Complaint employed by and/or associated with a Company from Charleston, Missouri named Concept Ag.

19.    Plaintiffs aver that at all times relevant and material to this Complaint Concept Ag is a Missouri corporation engaged in, among other things, the manufacturing and sale of certain agricultural products to include inoculants and/or seed treatment products.

20.    Plaintiffs aver that, at all times relevant and material to this Complaint Agri Select, Inc. is a North Carolina corporation and is engaged in the manufacturing and/or sale of herbicides and agricultural fertilizers.

9

21.     Plaintiffs reserve their right to substitution with regard to all Defendants named or to be named.  Likewise, Defendant, AGRISELECT, LLC. AND B&B, INC., entities operated by KEVIN COOPER and GREG CRIGLER in furtherance of their actionable conduct.  Plaintiffs allege that DEFENDANTS, KEVIN COOPER and GREG CRIGLER operated CONCEPT AG and B&B, INC whose principle place of business is in a warehouse, herein after, (Warehouse Operation) in Sledge, Mississippi.

## STATEMENT OF FACTS

22.     Plaintiffs aver that on March 3, 2017, WALTER JACKSON and TYRONE GRAYER, along with other African American farmers did travel to Memphis, Tennessee to attend the 67th Annual Mid-South Farm and Gin Show which was held March 3 – 4, 2017 at the Memphis Cook Convention Center in downtown Memphis, Tennessee.  The Mid-South Farm and Gin Show has been held in Memphis, Tennessee for at least the last TWENTY YEARS.

23.     All Plaintiffs aver that advertisement in the form of magazines, newspapers, radio and television have been employed to reach, among other states, Tennessee, Arkansas, Missouri, Kentucky, Louisiana, and Mississippi was employed by and/or for the benefit of all exhibitors to include Defendant, STINE SEED COMPANY.

24.     Plaintiffs WALTER JACKSON and TYRONE GRAYER aver that while at the Gin Show (March 3, 2107) they did visit a display booth belonging to a STINE SEED COMPANY and talked to Defendant, KEVIN COOPER who acknowledged that he was a "District Sales Manager" for STINE SEED COMPANY.  Defendant, KEVIN COOPER stated, among other things, that STINE Seed Company had certain soybean varieties (Liberty Link) suitable for the growing conditions in the general area (Region 19) with good yield potential and excellent control of weeds and that he would like to sell STINE seeds to Plaintiffs for the current 2017 growing

season. *See, Exhibit A. ("WALTER JACKSON Affidavit, with Sub-Exhibits A-E"). See, Exhibit "B" ("TYRONE GRAYER Affidavit, with Sub-Exhibits A-D").*

25.     Moreover, Plaintiffs Jackson and Grayer state that Defendant, Kevin Cooper followed them around the exhibition area and cajoled and otherwise persuaded them to return back to the STINE booth where he and the other STINE representatives where located.

26.     Plaintiff, Walter and Monique Jackson aver that on March 28th, 2017 they received an electronic application for credit sent and/or caused to be sent to them by Defendant, Kevin Cooper for the purpose of establishing credit from STINE Seed Company.

27.     Plaintiffs, Walter and Monique Jackson aver that on/or about March 31st, 2017 received an electronic application for a User Agreement from STINE and/or Bayer Company.

28.     Plaintiff, Thomas Burrell avers that on April 11th, he received an electronic application for a User Agreement from Stine and/or Bayer Company.

29.     On or about March 10, 2017 Plaintiff WALTER JACKSON placed a telephone call to Plaintiff, THOMAS BURRELL indicating the fact that Defendant, COOPER was interested in selling STINE seeds to them (Burrell, Hall and Grayer).  Plaintiff, THOMAS BURRELL did immediately share this information with Plaintiff, DAVID ALLEN HALL and TYRONE GRAYER and that Plaintiffs, THOMAS BURRELL and DAVID ALLEN HALL did agree to talk to Defendant, KEVIN COOPER. *See, Exhibit "C" (JOINT AFFIDAVIT OF Thomas Burrell and David Allen Hall, with Sub-Exhibits A-J).*

30.     Plaintiff, WALTER JACKSON avers that on or about April 15, 2017 he placed an order with Defendant, KEVIN COOPER for approximately 115 bushels (**49LD02**) to be planted on approximately 115 acres of the total 425 soybean acre operation (Darling, Mississippi).  In fact, the requested seeds were delivered and placed into an old farm equipment shed ("Warehouse

Operation") in Sledge, Mississippi belonging to Defendant, GREG CRIGLER and CONCEPT AG

of Charleston, Missouri. *See, collective Exhibit "D" (photos of warehouse in Sledge, Mississippi).*

31.    Moreover, Defendant, KEVIN COOPER wanted Plaintiff, WALTER JACKSON

to allow him (KEVIN COOPER) to treat the requested seeds with inoculants. Plaintiff, JACKSON

declined the offer. Again, on or about April 25, 2017, Defendant, KEVIN COOPER asked Plaintiff

if he would allow him to treat the seed. Again, Plaintiff declined the offer. Moreover, Defendant,

KEVIN COOPER would ask if he could treat the seeds on at least two more occasions. Here to

again, Plaintiff, JACKSON declined the offers.

32.    Plaintiff, WALTER JACKSON avers that for the past several years he has planted

a certified soybean seed variety provided by a company in Tunica, Mississippi named Buck Island

Seeds and more specifically a variety (non-treated) offered by Buck Island known as **Delta Grow**

**4970** and that this variety (4970) has produced an average yield of approximately 48 bushels per

acre for his operation.

33.    Plaintiff, David Allen Hall, Sr., avers that on April 11, 2017 he received, via an e-

mail transmission an application for credit from STINE Seed Company sent and/or caused to be

sent by Defendant, Kevin Cooper for the express purpose of purchasing STINE Certified seeds for

the farming season of 2017.

34.    Plaintiff, David Allen Hall, Sr., avers that on April 18, 2017 he received, via an e-

mail transmission an application for a User Agreement with STINE Seed Company sent and/or

caused to be sent by Defendant, Kevin Cooper for the farming season of 2017.

35.    Plaintiff, Thomas Burrell avers that on April 11, 2017 he received, via an e-mail

transmission an application for a User Agreement   with STINE Seed Company sent and/or caused

to be sent by Defendant, Kevin Cooper for the farming season of 2017.

36.     On or about April 15, 2017, Defendant, KEVEN COOPER called and did arrange to meet Plaintiff, Burrell at the Rome, Mississippi operation to do, as he stated, make a determination as to the best variety of STINE seeds to be planted on the land.  Defendant, KEVIN COOPER recommended that Plaintiff's should start with a variety known as **49LD02**.

37.     On May 6, 2017 defendant Kevin Cooper did indeed met Plaintiff, Burrell on the farm in Rome and recommend a variety (49LD02) that were suitable for plaintiff's planting operation.

38.     Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL, TYRONE GRAYER and WALTER JACKSON aver and covenant that they possessed the necessary farming skills and equipment to adequately plant, cultivate and harvest all known varieties of soybeans suitable for planting in the general area of Tennessee and Mississippi.  Likewise, Plaintiffs maintain that the STINE varieties were planted on soils (that received above average amount of rainfall) that had the necessary fertility to produce an adequate and/or above average yields.  *See, Exhibit "E" (Mississippi Soybean Trials for 2017, Table 14).*

39.     Plaintiffs, THOMAS BURRELL and TYRONE GRAYER aver that all the land for which these STINE seeds were planted in 2017 had been adequately tilled and prepared for planting.  Moreover, Plaintiffs maintains that all the equipment for tilling, bedding and planting of the STINE seeds was relatively new and in excellent working condition.  In fact, there was ample rainfall (moisture) available to the newly planted soybean seeds and that the fertility for soybean development on the referenced tracts was optimal (see, Joint Affidavit of Burrell/Hall at Ex. "D").  All Plaintiffs aver that the 'time of planting" the STINE varieties were consistent and otherwise optimal with the Quitman and Sunflower Counties (Mississippi Delta) region.

40.    Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and TYRONE GRAYER aver that on or about May 1, 2017, an initial order for approximately 500 bushels of STINE's **49LD02** certified seeds were placed with Defendant, KEVIN COOPER.  Plaintiffs further aver that this order was communicated to a STINE SEED breeder in Northwestern Arkansas and/or Missouri and was subsequently delivered to the (Warehouse Operation) in Sledge, Mississippi. Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and TYRONE GRAYER aver that Defendant, KEVIN COOPER did insist that the STINE seeds be "treated" before being delivered to Rome, Mississippi soybean fields.

41.    At all times relevant and material to the Complaint Defendant, KEVIN COOPER knew that Plaintiffs, Burrell, Hall and Grayer would expend time, energy, assets, and incur losses and other obligations as a result of reasonable reliance upon the authority of him (as represented by him) to purchase seeds and chemicals from Defendants, STINE SEEDS, CONCEPT AG, B&B AG and AGRI SELECT, LLC for the crop year of 2017.

42.    Following May 11, 2017 Plaintiff, Burrell did place a call to Defendant, KEVIN COOPER to deliver approximately 12,000 pounds (SIX jumbo bags) of STINE certified variety **49LD02** for immediate planting (May 13, 2017).  *See, Collective Exhibit "F" (photo of STINE jumbo bags).*

43.    Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and TYRONE GRAYER aver that the STINE seeds were originally transported from the state of Arkansas and/or Missouri by Defendant, KEVIN COOPER and delivered to a (Warehouse Operation) where Plaintiff, TYRONE GRAYER then picked up approximately 12,000 pounds (SIX bags) of STINE' **49LD02** (which had been treated by COOPER in the (Warehouse Operation) for, here again, immediately planting.

44.     Plaintiffs, further aver that the purchased certified STINE seeds were grown by a STINE "seed breeder" in Northwest Arkansas and/or Missouri and then placed into "bulk" (jumbo bags, 2,200 lbs.) and otherwise containing labels of certification regarding, among other things, seed varieties, seed germination (90%), vigor and seed purity as set forth by United States Department of Agriculture regulations.  Said labels were placed inside of a clear plastic (zip lock (right hand side of bag)) bags and which were stapled and/or sewed onto said jumbo bags and contained a tag — bearing the word "Cooper"— inside of same.  *See, Exhibits "G" (photos of STINE jumbo bags and close-up of plastic zip lock bag.*  Plaintiffs aver that the zip lock bags allowed for any Defendant and/or person(s) to "freely" remove or replace any document into the bag at any time during transportation and/or storage.

45.     Plaintiff GRAYER avers that on May 13th, 2017 he met with an individual named Greg Crigler who then assisted Plaintiff with placing seeds from approximately SIX jumbo bags into Plaintiff's seed tender.  Moreover, Plaintiff did walk through the warehouse facility and observed approximately 15 to 20 additional jumbo bags being stored in the same.  In fact, Plaintiff did not, while walking through the warehouse, see or otherwise observe any mechanical device or object that would have been capable of coating and/or treating seeds.

46.     On or about June 3, 2017 Charlie Jones (an employee of Plaintiffs, Burrell, Hall and Grayer) drove a Ford F-350 truck and trailer (belonging to Plaintiffs) to Defendant's (Warehouse Operation) to pick up additional seeds which had been ordered from Defendants and while being "directed and guided"(backing up the Ford F-350 truck and trailer) by Defendants KEVIN COOPER and GREG CRIGLER he (Jones) inadvertently collided with a Ford F-250 truck belonging to Defendants GREG CRIGLER and CONCEPT AG of Charleston, Missouri.

47.     In fact, shortly thereafter on the same afternoon, Plaintiff THOMAS BURRELL received a telephone call from Defendant, KEVIN COOPER informing him (Burrell) of the accident and wanted Plaintiff, Burrell to assure him that the owner of the truck, as he stated it Greg Crigler, would be compensated for the damages after an assessment by an auto repair shop was completed. *See, Exhibit "H" (Hey Mr. Burrell letter).*

48.     Moreover, Plaintiff, DAVID ALLEN HALL did send on July 18th, 2017, collectively ($3,000 and $5,000 checks respectively) **EIGHT THOUSAND DOLLARS as per** the request made on August 11th, 2017**.**  These sums of monies sent to defendant, KEVIN COOPER in July and August of 2017 for payment to B&B AG for seed treatment.  It is believed that these funds were reinvested in the enterprise for the benefit of all defendants. *See, Exhibit I.*

49.     Plaintiffs, THOMAS BURRELL and TYRONE GRAYER aver that they did have several discussions during May and June, 2017, among themselves, regarding, among other things, the slowness of the germination of the STINE seeds and that the STINE seeds did not germinate (sprout) until four to five days after planting had emerged out of the ground exhibiting "skippy" patterns (non-uniform stand).

50.     Plaintiffs, THOMAS BURRELL and TYRONE GRAYER aver that Defendant, KEVIN COOPER did make several visits to the Rome Operation within several weeks , 2017 of the planting (May and June) the STINE seed varieties and expressed a concern that "you all might suffer some yield losses" from, what he introduced and described to be, "dicamba drift." Cooper knew that plaintiffs would indeed experience injuries from the fake seeds and attempted to establish an alibi for the losses that were anticipated as a natural consequence of the unlawful scheme.

51.     Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and TYRONE GRAYER aver that on or about June 10, 2017, Defendant, KEVIN COOPER did inform them that the payment for the STINE seeds bills were due and payable by June 30, 2017 and that if payments were not made by then penalties and interest would accrue and that a "delinquency report" would be generated by Defendant, STINE SEEDS.

52.     Plaintiffs, THOMAS BURRELL and TYRONE GRAYER aver that they became further concerned in August and September that the STINE varieties' "pod development" were not fully developing (flat pods) and that the leaves of the STINE varieties were disintegrating before maturity, notwithstanding the amount of rainfall during the summer growing season on these soybeans was above average.

53.     Plaintiffs, BURRELL, HALL and GRAYER aver that during the entire months of July, August, September and October Defendant, KEVIN COOPER made several requests regarding (electronic transmittals) for payments for the benefit of Defendants, STINE SEEDS, AGRISELECT, B&B AG and CONCEPT AG.  Moreover, KEVIN COOPER made demand for payment of $4,800 for damages and repair of Greg Crigler's truck due to damages caused by Charlie Jones (plaintiff's employee) during a pickup of seed at the Sledge facility *(Ex. H)*.

54.     Plaintiffs, WALTER JACKSON aver that he became concerned when he noticed — upon opening the bags (**STINE 49LD02**) for planting (May 12th, 2017) — that the seeds from STINE seed company had a slightly different color and purity (plumpness/fullness/smoothness) from the Delta Grow variety and or any other varieties for which Plaintiff has planted in the last eight years and that the STINE seeds were not producing a consistent "stand" as the Delta Grow varieties.

55.    Plaintiff, WALTER JACKSON avers that on or about July 11, 2017 (after the emergence of the young plants) he placed a call to Defendant, KEVIN COOPER expressing a concern regarding the STINE variety's "bubbling" of leaf development as never observed from any other soybean varieties so planted by Plaintiff or the Delta Grow varieties as planted around the same time as the STINE varieties (Jackson Affidavit (Exhibit A and see also Delta Grow Varieties Exhibit B) from Mississippi State University).  Defendant COOPER's response was evasive and speculated that the situation could be the result of "over spraying."

56.    Also, on or about June 25th, 2017 Plaintiff, WALTER JACKSON had a discussion with his wife, MONIQUE regarding, among other things, the fact that the STINE seeds "pod quality development" was not being achieved at the same rate that the Delta Grow varieties were developing and that the height of the STINE plants were approximately 40% shorter than the Delta Grow varieties (Jackson Affidavit) (Exhibit B) and see also Sub Exhibit D *(photo of Plaintiff hold soybean plant).*

57.    Moreover, Plaintiff, Jackson avers that on or about July 15th, Defendant, KEVIN COOPER called him (Jackson) and stated that (a) he (Cooper) needed to pick up any STINE seeds and STINE labels that were left over from the planting operation and (b) take them to a local grain elevator and sell them.  Plaintiff, Jackson acknowledges that he had never experienced or heard of any sales representative asking for any leftover seeds and or seed labels and taking unused seeds to a grainer for disposal.

58.    In fact, on or about August 30, 2017, Plaintiff, DAVID ALLEN HALL did receive a letter from Defendant, STINE SEEDS stating among other things, an opportunity for certain STINE seed growers to provide seed stock for the upcoming 2018 crop year.  Plaintiff, THOMAS BURRELL immediately placed a call to STINE SEED representative CHUCK HANSEN and was

told that STINE could otherwise verify "any" of its seeds so harvested and stored by analyzing and or testing the referenced seed (stored) varieties for STINE purity and traits. *See, Exhibit "J" (letter from Chuck Hansen of STINE SEEDS).*

Mr. Burrell had received a letter in August of 2017 from a STINE employee, Mr. Chuck Hansen, stating there may be an opportunity for Mr. Burrell and Mr. Hall to become STINE seed breeders. Mr. Burrell had an earlier conversation in August 2017 with another employee, Chuck Hansen, at the STINE headquarters regarding an opportunity for Burrell and Hall to sell harvested STINE seeds back to STINE for creating a certified seed supply for the year of 2018 *i. e.* to become a breeder.

59.     Mr. Burrell responded to the letter by contacting Mr. Hansen via telephone. Mr. Burrell inquired whether they needed to send someone down to inspect the fields prior to harvesting. Mr. Hansen indicated that no and they were able to determine the progeny whatever state, whether they were harvested in a grain silo or still standing in the field. We know then that they have the technology to determine the origin of all of their varieties of seeds.

60.     Plaintiff, Burrell immediately (August 30th) called Defendant, KEVIN COOPER and shared what he believed to be exciting news for Mr. COOPER and found him instead indifferent and non-excited and that Defendant's ultimate response was, "I will get back with you" but never did regarding the matter of storing STINE seeds for the 2018 crop year.

61.     Moreover, on or about October 9, 2017, Plaintiff, WALTER JACKSONs wife (Monique) called while he (WALTER) was cutting the STINE soybeans and asked, "How are they cutting." Plaintiff answered; "something aint right!"

62.     That on or about October 12, 2017, while still harvesting the STINE varieties Defendant, KEVIN COOPER did indeed call (WALTER) and asked; "how are the beans cutting?"

Plaintiff responded. "Not worth a damn!" COOPER responded, "I am sorry, when can you send a check."

63.    Plaintiff, WALTER JACKSON avers that his soybean fields which were planted in May of 2017, with the Delta Grow — under similarly planting and growing conditions — yielded approximately 48 bushels per acre: that the STINE Seeds yields were approximately 24-25 bushel per acre (less than half of the Delta Grow varieties).

64.    Plaintiffs, THOMAS BURELL and TYRONE GRAYER aver that they harbored similar concern and became very disappointed with the yield results when the May 13th through 21st planted soybeans were being harvested in October.  The yields for this section of planting were producing yields of 35 bushels and less per acre.   In fact, one section of Farm No. 1977 (120 acres) was planted with STINE late maturing varieties that yielded less than 5 bushels per acre with a germination rate of ZERO percent (Affidavit of Tyrone Grayer Sub Exhibit "D").

65.    Again, Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and TRYRONE GRAYER aver that they begin to realize that they were the victims of a scheme to defraud them when they had a conversation with Plaintiff, Walter Jackson who expressed that he would never plant any STINE seeds again.  This statement was made to Tyrone Grayer and repeated, by Grayer to Plaintiff, Thomas Burrell on or about October 12, 2017.

66.    Plaintiffs aver that the fraudulent scheme and fraudulent intent manifested itself, when, among other things, an [order] was placed by plaintiffs to Defendant, KEVIN COOPER for certified STINE seeds that an equal amount of non-certified (old stock/feed and/or processing) seeds were then sent and or already in place (Warehouse Operation) to be treated and subsequently "replaced" into emptied STINE jumbo bags.  Therefore, plaintiffs aver, the seeds ordered and shipped to plaintiffs had been switched with old seeds and the old seeds will be delivered to

plaintiffs while the original certified STINE seeds will be delivered to some other farmers, customers and/or associates of Defendants.

67.    Plaintiffs aver that the "**other**" farmers had access to seed trailers (seed tenders and/or seed trailers) and therefore did not require the delivery of soybeans to their farms via the STINE jumbo bags.  These now "emptied" STINE jumbo bags — still bearing the label of **49LD02** — were then, here again, filled with coated and treated non-certified soybean seeds of inferior quality (provided by Defendant, GREG CRIGLER) and tied into knots and delivered to Plaintiffs. *See, Collective Exhibit "K" (photo of emptied bags tied into knot).*

68.    The tying of the bag reveals the fact that the certified seeds were not removed from the bag by the proper means (there is a rip cord at the base of the bag when properly released will dump the contents of the bag into a seed tender) but rather reopening the top of the bag that had otherwise been mechanically sown and filled with treated and non-certified seeds.  Opening the bags from the top and the failure to use the rip cord reveals the intent to reuse the bag for refilling of coated non-certified seeds and subsequent transport of non-certified seeds to Plaintiff. See, Exhibit L.

69.    On or about October 15, 2017, Plaintiff, THOMAS BURRELL placed a telephone call to Defendants, STINE SEED COMPANY (Myron STINE) notifying it of the low performance of all of the STINE seeds that were purchased from STINE Seeds through Defendant, KEVIN COOPER.  Moreover, Plaintiffs have sent soil and seed samples to the Mississippi State University at Starkville, Mississippi and elsewhere for testing.  *See, Joint Affidavit of Burrell and Hall Exhibit C at Sub Exhibit B.*

70.    Defendant, STINE SEED COMPANY did send its regional agronomist, KEVIN RYAN, to Plaintiffs' THOMAS BURRELL and DAVID ALLEN HALL Rome, Mississippi

soybean operation. On or about November 1, 2017, Defendant, STINE SEED representatives KEVIN COOPER and KEVIN RYAN met Plaintiffs, THOMAS BURRELL and DAVID ALLEN HALL in Rome, Mississippi on a county road where fields of soybeans belonging to Thomas Burrell were planted with STINE seeds. Defendant, KEVIN RYAN stated, among other things, "**you have a yield problem**." Defendant, KEVIN RYAN went on to say, among other things, that "STINE had the capability of tracing all of its soybeans by determining where 'every lot number' came from and where that particular lot of soybeans was shipped from and to whom." Mr. Burrell requested of Mr. Ryan to take samples and test them for purity and to determine whether these plants were indeed the progeny of certified STINE seeds.

71.   It was this conversation that led Mr. Burrell to request of Mr. Ryan as to whether he would conduct a test as Mr. Burrell had spoken to Mr. Hansen two months prior in August. This being the same visit wherein Ryan (a) indicated that STINE could identify where every "Lot Number" of soybeans came from and Ryan (b) instructed David Hall and Thomas Burrell to send samples of seeds to Mississippi State University for testing. Moreover, Ryan's refusal to test any soybean plants belonging to the STINE varieties was in furtherance of covering for Kevin Cooper's and Greg Crigler's scheme. Ryan knew that any testing of the purported STINE plants would "patently" reveal that those plants were not a progeny of a certified STINE variety billed to plaintiffs.

72.   Moreover, Ryan knew that Mississippi State University would only be able to test for germination — not for genetic finger printing — as he was able to do.[5] However, during this thirty-minute conversation between Plaintiffs, Thomas Burrell, David Hall and Defendant, Kevin Ryan; Defendant, Kevin Cooper did not utter one single word. Since that time Kevin Ryan has

---

[5] Testing for genetic finger printing requires, among other thing, having a specimen of the tested soybean's varies' DNA which MSU, by virtue of STINE's patent, would not have.

been the only person from STINE Seed company to correspond and or direct (electronic/mail) to plaintiffs.

73.     Plaintiffs, THOMAS BURRELL and TYRONE GRAYER did arrange and did indeed send, on or around November 9, 2017, a representative sample of harvested STINE soybean seeds from a field (120 acres tract) to the Mississippi State University (MSU) in Starkville, Mississippi where a Mr. James Smith (Director) did receive and promised to test the said sample for germination.

74.     Plaintiff, THOMAS BURREL did receive the referenced test result from MSU on or about December 22, 2017 showing, among other things, the germination result of ZERO per cent.  See, Exhibit (MSU-ZERO EGRAMINATION).

75.     In fact, neither Defendant, STINE SEED COMPANY nor its agronomist, KEVIN RAYAN made any effort to contact and/or agreed to have any of the suspect soybeans otherwise harvested by Plaintiffs tested or caused to be tested by any agency whatsoever.   Their capacity and promises to Plaintiffs to do so, notwithstanding. But, Defendant KEVIN RYAN did take it upon himself to send a statement for the purpose of collecting (unlawful) debt from Plaintiff, DAVID ALLEN HALL.

76.     Plaintiff, David Hall did receive a visit on January 09, 2018, from Bill Fassnacht a representative from Agri Select attempting to collect and/or negotiate a settlement for payment between Hall and Agri Select.  See, Exhibit M.

77.     Plaintiff Hall, did receive, via the internet an invoice from Defendant, Kevin Ryan of STINE Seed Company on February 12th, 2018. See, Exhibit N.

78.     Plaintiff, Walter and Monique Jackson did receive, via electronic transmission of invoices from Defendant, STINE Seed Company on May 11th, June 20th and September 24th, 2018. See, Collective Exhibit O.

79.     Plaintiffs, Walter and Monique Jackson did receive, via a telephone message on January 24th, 2018 from Defendant, Kevin Cooper stating, among other things that if the Jacksons did not cooperate with Cooper they would end up on a list of certain names that are going to be on the list for which he was giving them a chance to stay off of it.  See, Exhibit P.

80.     Plaintiffs, THOMAS BURRELL, DAVID ALLEN HALL and TRYRONE GRAYER aver that the fraudulent scheme and fraudulent intent manifested itself, when, among other things, an [order] was placed to Defendant, KEVIN COOPER for certified STINE seeds (2,000 lbs.) and that an equal amount of non-certified seeds (2,000 lbs.) were then sent and/or already at the Sledge (Warehouse Operation) and ready to be treated and subsequently "replaced" into emptied STINE jumbo bags. This is to say; the certified seeds purchased by Plaintiffs were sold to **other** farmers and the jumbo bags that were now emptied — as a result of the sale to these other farmers — were then refilled with "treated" inferior seeds and subsequently delivered or caused to be delivered to Plaintiffs.

81.     All Plaintiffs aver that inferior seeds came from Defendants, GREG CRIGLER's stock pile of soybeans from the Charleston, Missouri (or his farming operation in Sledge, Mississippi) area and were otherwise tolerant to the "Liberty Link" herbicides to include herbicides sold by AGRISELECT, LLC. and CONCEPT AG.

82.     Plaintiffs aver that other farmers had access to seed trailers (seed tenders and/or seed trailers) and therefore did not require the delivery of soybeans to their farms via the STINE jumbo bags.  These now "emptied" STINE jumbo bags— still bearing the label of **49LD02**— were

then, here again, filled with coated and treated non-certified soybean seeds of inferior quality (provided by Defendant, GREIG CRIGLER) and tied into knots and delivered to Plaintiffs.  *See, Exhibit "Q" (flowchart of routing of non-certified seeds to Plaintiffs).*

83.    All Plaintiffs, aver that all Defendants, were able to charge approximately **FIFTY-FIVE DOLLARS** per bushel for treated STINE certified seed where in fact the inferior non-certified seed would have been worth approximately **EIGHT DOLLARS** per bushel on the open market (feed and processing).

84.    In fact, the selling of chemicals and other inputs by Defendants, B&B Ag, AGRISELECT, LLC. and CONCEPT AG were acts (overt) done in furtherance of the unlawful scheme by all Defendants to defraud plaintiffs of their money ($47.00 per every bushel sold as STINE seeds).  Plaintiffs purchased approximately 2,000 bushel of STINE seeds.

85.    Plaintiffs aver the Defendants Kevin Cooper and Greg Crigler "never" intended to deliver STINE certified soybean seeds to plaintiffs.

86.    These acts of racketeering, occurring within ten years of one another, constitute a pattern of racketeering activity within the meaning of 18 U.S.C.A. 1961(5).  The function of the enterprise was to fraudulently induce Plaintiffs into executing a contract for certified seeds (FIFTY-FIVE DOLLARS per bushel) and delivering — instead — an altered and inferior seed (approximately EIGHT DOLLARS per bushel) to Plaintiffs.  Creating a profit of approximately **FORTY-SEVEN DOLLARS** per bushel for each and every bushel sold to Plaintiffs.  Plaintiffs purchased approximately 2,000 bushels of purported STINE certified seed and in addiction other corresponding Liberty Link herbicides from other Defendants as a direct result of the criminal activities herein complained of.

87.     Defendant, KEVIN COOPER's representation at the 67th Annual Mid-South Farm and Gin Show in Memphis, Tennessee that STINE SEEDS, via his business card, **STINE HAS YIELD** was for the purpose of executing a scheme and artifice to defraud and obtaining money by means of false and fraudulent pretenses, representations and promises.  Defendants, STINE SEED COMPANY and KEVIN COOPER committed wire fraud by convincing Plaintiffs — in furtherance of the scheme — to apply for credit and licenses agreements, via the Internet, to purchase STINE "certified seeds" when in fact Defendants never intended to (nor did they) deliver any such certified seeds from STINE seed breeders to Plaintiffs.

88.     All Defendants knew that the sale of inferior seeds and corresponding herbicides (Liberty Link) could not have succeeded and/or continued without the use of extensive advertisement through wire, internet, and exhibitions (farm and gin show (cards, brochures and pamphlets)) in interstate commerce for transmitting misleading and fraudulent information otherwise targeted at prospective customers such as Plaintiffs.  Consequently, the advertisement constituted a necessary component of the alleged fraud for which Plaintiffs reasonably relied upon and suffered grievous losses as a result.

89.     Defendant, STINE SEED COMPANY and KEVIN COOPER knew that Plaintiffs would reasonably rely upon their representations at the farm and gin show in Memphis.  Defendant's sole purpose of advertising and presentations of its products would cause farmers to stop by its exhibit booth at the gin show.  Defendants knew that the majority of the farmers attending the show were using other competitor's certified seeds as were Plaintiffs.

90.     The common purpose of the Defendants was to make a profit of approximately **FORTY-SEVEN DOLLARS** or more per bushel (the difference between a certified bushel costing approximately FIFTY DOLLARS and an average cost of approximately EIGHT

DOLLARS a bushel for non-certified soybean seeds).    In addition, Defendants would then be poised to sell Liberty Link *herbicides* (AGRISELECT etc.) to protect those soybeans from weeds. Plaintiffs are therefore worse off in that they are now paying for seeds and herbicides with little potential of yield increase necessary to the service the debt associated with the otherwise high cost of using STINE certified seeds and Liberty Link herbicides. Analogously, submitting payments for jockey and entrance fees to an unwitting owner of an otherwise terminally ill race horse.  All Defendants had a quid pro quo relationship with one another.  Defendants, KEVIN COOPER and GREG CRIGLER represented all other Defendants and sold or steered Plaintiffs to do business with the circle of Defendants' who were an association-in-fact enterprise.

91.    The defendant objectively manifested an agreement to participate directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes." Those acts permit the inference that Caudill "manifested an agreement to participate" in the affairs of the Caudill Association.

92.    Defendants, KEVIN COOPER and GREG CRIGLER were stooped, bent and resolute on criminal activity and seized control of a previously legitimate firms (STINE SEED, CONCEPT AG and AGRISELECT) and use the firms' resources to perpetrate more extensive, and less discernable, criminal acts than they could do on their own.  Defendants, KEVIN COOPER and GREG CRIGLER **common purpose** for defrauding Plaintiffs was to make a profit of over **FIFTY-DOLLARS** or more by selling Plaintiffs seeds (non-certified) otherwise valued at approximately **EIGHT DOLLARS** per bushel for STINE certified seeds valued at approximately FIFTY DOLLARS per bushel.

93.    All Plaintiffs aver that the request from Defendant, KEVIN COOPER of Plaintiff, WALTER JACKSON to pick up any remaining STINE seeds and labels to be sent to a grain

elevator was to dispose of any untreated seeds that could be tested for germination and purity otherwise proving the inferiority of the fake certified soybean seeds. And, why Defendant, KEVIN COOPER expressed no jubilation or enthusiasm when learning that STINE seeds could possibly be repurchased from Plaintiffs, Hall as per the August 21st letter from Mr. Hansen of STINE seeds. Likewise, KEVIN COOPER's request to visit Plaintiffs fields in April and May to— make a determination of best varieties (49LD02) for a particular field — was a scheme to further all Plaintiffs' reliance on the representation of receiving certified seeds from STINE SEED Company.

94.     Moreover, Plaintiffs aver that Defendant KEVIN COOPER's raising the "dicamba drift" concerns shortly after the soybeans started to emerge was simply to prepare Plaintiffs for what he "knew" would be a "**yield problem" (¶ 31)** once the soybean fields were harvested. Defendants, KEVIN COOPER and KEVIN RYAN both had ample time, opportunity and means to determine whether any soybean fields had been affected with dicamba drift. But, Defendants chose not to test for dicamba because, Plaintiffs aver, any testing would also reveal the fact that the soybeans were not of a certified STINE variety.

95.     All plaintiffs aver that they have received over THIRTY (30) telephone messages (18 U.S.C. Section 1343) from Defendant, Kevin Cooper during the period of March through October 0f 2017, regarding, among other things, taking orders for soybeans and chemicals from Stine Seeds, B&B ag, and Agri Select, Inc. Likewise, plaintiffs have received during the same period approximately 10 telephone calls and/or text messages from Kevin Cooper regarding collecting money form the benefit of Stine Seeds, B7B Ag, Concept Ag and Agri Select, Inc as follows:

> The following predicate acts were committed as Stine, to include, among other things, (1) an electronic (wire) credit application from Stine to Walter and Monique Jackson on March 28th, 2017

(2) an electronic transmittal (wire) to Walter Jackson regarding a licenses (User Agreement) to use Stine certified Seeds on March 31st, 2017 (3) an electronic email (wire) from Stine/Bayer on May 9, 2017 to Thomas Burrell regarding licenses (4) an electronic credit application from Stine to David Hall on April 8th, 2107 (5) an telephone text message from Kevin Cooper on May 19, 2017 to Thomas Burrell (6)  transmittal from Stine to David Allen Hall on May 8, 2107 (7) an telephone text message from Kevin Cooper to Thomas Burrell on May 22, 2107 (8) a telephone text message from Kevin Cooper on June 8, 2017 to Thomas Burrell regarding seed treatment payment for $13,000.00 (9) telephone text message regarding Greg Crigler's address and payment instructions to Thomas Burrell on June 14, 2017 (10) a telephone text message from Kevin Cooper to Thomas Burrell on June 28, 2107 regarding Stine seed bill be due on June 30th, 2017 (11) a telephone text message from Kevin Cooper to Thomas Burrell regarding 4 bulk bags of treated seeds for delivery on June 29, 2017 (12) a telephone text message from Kevin Cooper to Thomas Burrell on July 5, 2017 regarding check being made out to AgriSelect for chemicals (13) text message from Kevin Cooper to Thomas Burrell on July 14, 2017 Stine Bill and seed treatment bill (14) text message on August 14, 2017 from Kevin Cooper to Thomas Burrell regarding want to see if Hall could send another $5,000.00 check (15) text message on October 13, 2017 from Kevin Cooper to Thomas Burrell.

96.    Moreover, Plaintiffs, Walter Jackson and received four items, via the U.S. Postal Service regarding outstanding sums owed to Ag Select. See, again collective Exhibits O.

97.    Plaintiffs have adequately alleged an association-in-fact enterprise and have described the "interrelationships between each set of defendants and their respective roles in the scheme," and demonstrated how the enterprise functioned with "sufficient longevity to permit its members to pursue the illicit purpose of the enterprise through a pattern of racketeering activity. Each Defendant conspired and knowingly carried out his part of the activities (conspiracy) of the alleged scheme to defraud all Plaintiffs. Defendant, KEVIN COOPER request of having Plaintiff, WALTER JACKSON to surrender any leftover seeds and labels is clear evidence that he planned to eliminate any trace of seeds that could be tested for purity and germination.

98.    STINE Seeds, as a person, is a direct recipient of funds derived from a pattern of racketeered activity. The sales price of certified soybean seeds (varieties 49LD02, 49LD01 and

50LD02) as referenced in the User Agreement (breeding seeds) were billed to Plaintiffs were valued at approximately $55.00 per bushel.   However, Plaintiffs avers that the seeds delivered to Plaintiffs for planting were not certified and/or of breeding quality and were valued at approximately $8.00 per bushel (feed and process quality).   Therefore, STINE realized a profit of approximately $40.00 per bushel for each bushel of inferior seed sold to Plaintiffs and bears a nexus to interstate commerce resulting in injury to Plaintiff's business and/or property by reason of a violation of RICO's criminal prohibitions.   Moreover, STINE Seed is now guilty of violating both Tennessee's and Mississippi's usury laws.   The interest rate that STINE has charged all defendants are on late loans in 40% on certified seeds is $55.00 per bushel.   However, to the extent that these farmers received seeds valued at $8.00 per bushel STINE has realized an interest charge of 200% (50/10 =5 x 40%=200%), or, 40% x 5=200%.

99.     Moreover, plaintiffs aver that Kevin Cooper, as a person acting with the necessary *mens rea*, received income as a direct result of the sales of inferior seeds to Plaintiff in the form of, among other things, sales commissions.   Moreover, Kevin Cooper received income as a direct result of income realized from the sale of seed treatment (inoculants) used on the STINE seeds from his company B&B Ag.   Additionally, Kevin Cooper received income from the sale of herbicides to plaintiffs for the purpose of eliminating weeds and insects in the soybean fields wherein the STINE inferior soybean seeds were delivered and planted by Plaintiffs.

100.     Kevin Cooper received income from a pattern of racketeering activity.   First, Cooper was able to maintain his employment, sales commissions and/or bonus from the sale of STINE Seeds to Hall and others.   Second, Kevin Cooper was the sole owner of B&B Ag and received income directly from Hall and others.   Third, Kevin Cooper received income from Concept Ag and Agri Select from sales commissions from the sale of chemicals from Agri Select.

Four, Kevin Cooper received income from other farmers who paid him for the certified otherwise purchased by Hall and others. Last, Kevin Cooper received income from the sale of inferior seeds by Greg Crigler and other supplier of un-certified seeds from previous soybean stock. This income allowed Cooper to invest in B&B Ag which was the entity used to treat the inferior seeds planted by Burrell and others.

101.    Therefore, Cooper realized a profit of approximately $40.00 per bushel for each and average bushel that resulted in injury to Plaintiffs and bears a nexus to interstate commerce resulting in injury to Plaintiff's business and/or property by reason of a violation of RICO's criminal prohibitions.

102.    Moreover, Greg Crigler as a person acting with the necessary *mens rea*, received income as a direct result of the sales of inferior seeds to Plaintiff in the form of, among other things, sales commissions. Kevin Cooper received income as a direct result of income realized from the sale of seed treatment (inoculants) otherwise sold to Kevin Cooper and used on the STINE seeds from his sales commission from Concept Ag.

103.    Additionally, Crigler Cooper received income from the use of his facility in Sledge, Mississippi. Additionally, Crigler received income from the sale of inferior seeds that were the replacement seeds for the purported certified seeds (switched) with STINE seeds. Therefore, Crigler realized a profit from the switching of seeds and invested this income in the building and vehicles used to perpetrate the racketeering activity that resulted in injury to Plaintiffs and bears a nexus to interstate commerce resulting in injury to Plaintiff's business and/or property by reason of a violation of RICO's criminal prohibitions.

104.    Defendant, Concept Ag, as a person, acting with the necessary *mens rea*, received

income as a direct result of the sales of inferior seeds to Plaintiff in the form of, among other things,

sales commissions.  Kevin Cooper received income as a direct result of income realized from the

sale of seed treatment (inoculants) otherwise sold to Kevin Cooper and used on the STINE seeds

from his sales commission from Concept Ag.  Additionally, Greg Crigler received income from

the use of his facility in Sledge, Mississippi.  Also, Crigler received income from the sale of inferior

seeds that were the replacement seeds for the purported certified seeds (switched) with STINE

seeds and from the sale of herbicides to plaintiffs for eliminating weeds and insects in the soybean

fields wherein the STINE inferior soybean seeds were delivered and planted by Plaintiffs.

Therefore, Crigler realized a profit from the switching of seeds and invested this income in the

building and vehicles used to perpetrate the racketeering activity that resulted in injury to Plaintiffs

and bears a nexus to interstate commerce resulting in injury to Plaintiff's business and/or property

by reason of a violation of RICO's criminal prohibitions.

105.    Greg Crigler received income from a pattern of racketeering activity.  First,

Crigler profited from the sale of inferior and/or old crop soybeans which amounted to roughly

FORTY-SEVEN DOLLARS per bushel for each bushel sold with Cooper.  Second, Crigler

profited from the sale of the seed treatment (inoculants etc.) to B&B Ag.  Third, Crigler receive

sales commission and salary from Concept Ag in Charleston, Missouri. Four, Crigler profited by

investing income from the sale of inferior seeds and the bushel spread and invested those profits

into his personal farming operation in Mississippi and elsewhere.   Last, Crigler profited from the

sale of certified seeds switched from Hall and others and sold to other Crigler customers.

106.    Plaintiffs, DAVID ALLEN HALL and WALTER JACKSON have been subject and

caused to be subjected to constant hounding and harassment by Defendants' collection agencies

attempting to collect unlawful debt. Defendant Kevin Ryan in the same manner as Defendant

Kevin Cooper sent communications through electronic mail attempting to collect unlawful debt on behalf of STINE SEED and other defendants.

107.    Plaintiffs suffer and will continue to suffer damages from those actions and omissions by them. These damages are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.  *See also, Collective Exhibit "R" (letter of demand of payment from Defendant, KEVIN RYAN and collection letter from Altus GTS Inc.).*

## CAUSE OF ACTION

**Racketeering Influence Corrupt Organization "persons" and "enterprise."**

### RICO PERSONS

**108.    Plaintiffs aver that Defendants, Kevin Cooper, Greg Circler, Kevin Ryan and Myron STINE, as RICO persons, have pursuant to the RICO act damaged the business and property of Plaintiffs through a criminal enterprise consisting of STINE Seed Company, B&B Ag, Concept Ag and Agri Select, Inc.  Under §§ (a) (b) and (d) of 18 U.S.C § 1962, STINE Seed Company, B&B Ag, Concept Ag and Agri Select, Inc. are RICO persons as well.**

### RICO ENTERPRISE

**109.    STINE Seed Company, B&B Ag, Concept Ag and Agri Select, Inc. also, combined to form an association-in-fact criminal enterprise.  This group of corporate entities forms a criminal enterprise whereby Cooper, Crigler, Ryan and Myron STINE have invested, gain control, conducted and conspired all pursuant 18 U.S.C. §§ (a) (b) (c) and (d) a set forth hereinbelow.**

### COUNT I:

## VIOLATION OF RACKETEER INFLUENCED AND CORRUPT
## ORGANIZATIONS ACT (RICO), 18 U.S.C. § 1341

110.    Plaintiff re-alleges and incorporates all above and below as if fully incorporated herein. The claims in this Count are alleged in the alternative, and in addition, to each other.  They are alleged in the alternative, and in addition, to the claims in the other Counts.

111.    Plaintiffs, Walter and Monique Jackson, David Allen Hall, Sr. and Thomas Burrell received multiple wire transmission from March of 2017 through January of 2018. Defendant's Kevin Cooper and Kevin Ryan and Stine Seed Company, Greg Crigler, Concept Ag and Agri Select have used the mail for the purpose of executing a scheme or artifice to defraud.  As such defendant's Kevin Cooper and Kevin Ryan and Stine Seed Company, Greg Crigler, Concept Ag and Agri Select, have participated in the scheme to defraud having specific intent to defraud and have used the mail in furtherance of the scheme.

112.  The statute provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretense, representations, or promises, or to sell, dispose of, loan, exchange, alter, give a way, distribute, supply, or furnish or procure for unlawful use any counterfeit is spurious coins, obligations, security, or articles or anything represented to be or intimated or held out to be such spurious article, for the purpose of executing such scheme or attempting to do so, places in any post office or authorize depository for mail matter, any matter or thing whatever to be sent or delivered by the postal service, or deposits or caused to be deposited or any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier or takes or receives there from, any such matter or thing, or knowingly caused to be delivered by mail or such carrier according to directions there on, or the place at which it is directed to be delivered by the person to whom it  is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

113.    Plaintiffs, Walter and Monique Jackson, David Allen Hall, Sr. received two mailings from March of 2017 through January of 2018 from Defendants, Agri Select, Inc.

114.    As a direct and proximate cause of Defendants' Stine Seed and Agri Select Plaintiffs have sustained losses to their businesses and property by reason of the violations of the act's criminal prohibitions.  Plaintiff not only has shown that the actions of the Defendants were the "**but for cause**" of his injuries but the actions of the Defendants were the "***proximate cause***." Plaintiff's injuries were directly caused by Defendant's RICO violations.  Moreover, Plaintiff has shown that no other factors — other than the alleged RICO conduct — contribute to Plaintiff's injuries.  To be sure, Plaintiffs have demonstrated that they are the parties best situated to redress the alleged injuries and that no other statutory scheme in place is designed to address the injuries at issue.  The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in the Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.

**COUNT II:**
**VIOLATION OF RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS ACT (RICO), 18 U.S.C. § 1343**

115.    Plaintiff re-alleges and incorporates all above and below as if fully incorporated herein. The claims in this Count are alleged in the alternative, and in addition, to each other.  They are alleged in the alternative, and in addition, to the claims in the other Counts.

116.    Plaintiffs, Walter and Monique Jackson, David Allen Hall, Sr. and Thomas Burrell received multiple wire transmission from March of 2017 through January of 2018.   Defendant's Kevin Cooper and Kevin Ryan and Stine Seed Company, Greg Crigler, Concept Ag and Agri Select have used wire transmission for the purpose of executing a scheme or artifice to defraud. As such defendant's Kevin Cooper and Kevin Ryan and Stine Seed Company, Greg Crigler, Concept Ag and Agri Select, have participated in the scheme to defraud having specific intent to

defraud and have used wire transmission in furtherance of the scheme and in violation of the wire

and fraud statutes section 1343 provides;

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false pretense, representations, or promises, transmits or caused to be transmitted by means of wire, radio, or television communications in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisonment for not more than twenty years, or both.

117.    As a direct and proximate cause of Defendants' Kevin Ryan's and Agri Select, Inc.

……… Plaintiffs have sustained losses to their businesses and property by reason of the violations

of the act's criminal prohibitions.  Plaintiff not only has shown that the actions of the Defendants

were the "***but for cause***" of his injuries but the actions of the Defendants were the "***proximate***

***cause***."  Plaintiff's injuries were directly caused by Defendant's RICO violations.  Moreover,

Plaintiff has shown that no other factors — other than the alleged RICO conduct — contribute to

Plaintiff's injuries.  To be sure, Plaintiffs have demonstrated that they are the parties best situated

to redress the alleged injuries and that no other statutory scheme in place is designed to address

the injuries at issue.  The losses and damages suffered as a result of the claims in this Count are

meant to include all categories and types of damages otherwise mentioned in the Complaint, as

well as otherwise available pursuant to any laws implicated by the facts and allegations of this

Complaint.

### COUNT III:
### VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO), 18 U.S.C. § 1962(a)

118.    Plaintiff re-alleges and incorporates all above and below as if fully incorporated

herein. The claims in this Count are alleged in the alternative, and in addition, to each other.  They

are alleged in the alternative, and in addition, to the claims in the other Counts.

119.    Section 1962(a) prohibits any person" who has received income from a pattern of racketeering activity or through collection of an unlawful debt from "us[ing] or invest[ing], directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of an interest in, or the establishment or operation of, any enterprise.

## RICO PERSON (A) KEVIN COOPER:

120.    Plaintiffs aver that Kevin Cooper invested income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate the enterprise while acting with necessary *mens rea*. Kevin Cooper received a sales commission from the sale of inferior seeds to Plaintiff's herein.  Kevin Cooper then invested a portion of that commission into B&B Ag.  See Joint Affidavit of Thomas Burrell and David Hall para wherein Kevin Cooper acknowledged to Thomas Burrell and David Allen Hall that he had just formed a company to perform such "treating" of the seeds with an inoculant before planting them.  The investment use itself by defendant Kevin Cooper proximately caused the plaintiff's injuries as B&B Ag did subsequently bill Plaintiff's for inoculants.  That this investment of racketeering income is distinct from any injuries caused by the predicate [racketeering] activity themselves.  This income in sales commission was invested in an enterprise that bears the necessary nexus to interstate or foreign commerce resulting in injuries to the plaintiff's business or property by reason of the defendant's use or investment of the income in the enterprise.

121.    The predicate acts of Kevin Cooper arise out of the same common plan, common purpose, results, victims, and methods of commission.  The predicate acts of mailing electronically the credit  application to each plaintiff, sending an user agreement to each plaintiff, making false representations while in the field and real property of each plaintiff, making representations to

each plaintiff as to the necessity of seed treatment and sending usurious bills to collect on inferior products and unnecessary chemicals.  Each transmission caused the same results an increase in each plaintiff's out of pocket expenses

122.    Predicate acts of Kevin Cooper established open ended continuity because the related predicate acts occur over a period of eleven months from March 2017 through January 2018 with a threat of repetition. The threat of continuity also established Stine's and Kevin Coopers regular way of doing business. New victims are created from Cooper and Stine at every year Mid South Gin show which is continuing into the future.  The predicate acts project a threat of continuing misconduct based upon the structure of Stine Seed Company in its external operating principle of not selling seeds through the general store but selling seeds through loosely supervised agents and employees like Kevin Cooper.  Continuity is established because if the defendant's in this matter are not stopped there is no reason to believe they would not still be selling fraudulent seeds.  For example Kevin Cooper incorporated B&B Ag expressly for the purpose of expanding his seed selling and treating operation.  See Civil RICO Guide (5th Ed. ABA at pg. 192).

123.    Plaintiffs aver that Kevin Cooper was able to maintain his employment, sales Commissions and/or bonus from the sale of STINE Seeds to Hall and others by virtue of his ability to place sales from the orders of seed to plaintiffs.  Second, Kevin Cooper was the sole owner of B&B Ag and received income directly from Hall and others ($8,000 on July 18th and August 11th, respectively 2017 (Exh. I).  Third, Kevin Cooper received income from Concept Ag and Agri Select from sales commission from the sale of chemicals (inoculants/herbicides) from Agri Select.  Four, Kevin Cooper received income from other farmers who paid him for the certified seeds otherwise purchased by Hall and others from STINE.  Last, Kevin Cooper received income from

the sale of inferior seeds by Greg Crigler and other suppliers of un-certified seeds from previous soybean stock. These herein referenced sources were derived from a pattern of racketeering activity to allow Cooper to directly and/or indirectly invest and acquire an interest in, establish and/or operate this enterprise in violation of RICO.

### RICO PERSON (B) GREG CRIGLER:

124.   Plaintiffs aver that Defendant, Greg Grigle profited from the sale of inferior and/or old crop soybeans which amounted to roughly FORTY DOLLARS per bushel for each bushel sold with Cooper. Second, Crigler profited from the sale of the seed treatment (inoculants etc.) to B&B Ag. Third, Crigler received sales commission and salary from Concept Ag in Charleston, Missouri. Greg Crigler received his commission from the sale of inoculants "seed treatment" from Concept Ag to B&B. For, Crigler profited by investing income from the sale of inferior seeds and the bushel spread and invested those profits into the Sledge, MS facility and consequently the enterprise. Last, Crigler profited from the sale of certified seeds switched from Hall and others and sold to other Crigler customers and invested these profits into the enterprise.

125.   The predicate acts of Greg Crigler arise out of the same common plan, common purpose, results, victims, and methods of commission. The predicate acts of Greg Crigler are providing a facility where criminal acts of receiving, switching and transporting inferior seeds occurred. It is undisputed as Kevin Cooper stated to Thomas Burrell that Greg Crigler owned and controlled the Sledge, MS facility where the criminal acts of receiving inferior seeds and switching the certified seeds from Stine Seed Co. occurred. Thomas Burrell states in para 11 of the joint affidavit of Thomas Burrell and David Hall that the Sledge, MS facility is owned by Greg Crigler as stated by Kevin Cooper to Thomas Burrell on/or about June 3rd 2017 in a telephone conversation

wherein Kevin Cooper advised Thomas Burrell that his (Mr. Burrell's) employee Charlie Jones,

had backed into a Ford F-250 while loading seeds at the warehouse in Sledge, MS.  Thus, Greg

Crigler was held out by Kevin Cooper as the owner of the Sledge, MS facility where the receipt

and switch of inferior seeds was made.  The truck that was struck by Charlie Jones was according

to Kevin Cooper owned by Greg Crigler and Concept Ag.  See Exhibit H (See Hey Mr. Burrell

letter).  The Courts have clearly stated that association with an enterprise may be established by

evidence that the defendant participated in or managed aspects of the enterprise's affairs or was

simply held out, with his or hers acquiescence, as a member of the enterprise.  See E. G. Casperone

v. Landmark Oil and Gas Corp., 819 F.2d 112 (5th Cir. 1987) (Per Curiam).  Tyrone Grayer in para

8 of his affidavit noted that on/or about May 13th, 2017 he did travel to the Sledge, MS facility to

pick up the first order of Stine Seeds to be planted at Rome farming operation.  Mr. Grayer states

that he met with Greg Crigler at the Sledge, MS facility and observed approximately 15-20

unlabelled jumbo bags.  Therefore, your Plaintiffs aver that Greg Crigler was intimately involved

and associated with the enterprises of switching inferior seeds to be delivered to Plaintiffs herein.

And Greg Crigler did participate and manage the activities of the enterprise.

## RICO PERSON (C) B&B Ag:

126.    B&B invested approximately $20,000 obtained from racketeering activity in the

enterprise (see, Exh. Hey Mr. Burrell letter). The $20,000 was derived from a charge of inoculants

and foliar fertilizer to treat inferior seeds which charge was made to Plaintiff's Burrell and Hall.

(Hey Mr. Burrell Letter). Courts have held that for RICO purposes there is no meaningful

distinction between income fraudulently acquired and income fraudulently obtained.  Both result

in funds not otherwise available but for the fraud.  See Anza v. Ideal Steel Supply Corp., 547 U.

S. 451 (2006). Plaintiffs states B&B Ag was owned by Kevin Cooper who was able to leverage the sales contracts from STINE to plaintiff to obtain the necessary credit with Concept Ag for the seed treatments (inoculants) otherwise used to coat the inferior seeds obtained from Greg Crigler. B&B Ag was created directly as a result of the sales potential and volume of business from the sale of inferior seeds sold to plaintiffs by STINE.  Again, B&B Ag did not exist at the time its owner; Kevin Cooper met plaintiffs at the gin show in Memphis neither in March of 2017 nor during the time that Cooper was arranging financing for plaintiffs in April of 2017.   Defendant, B&B Ag creation was a direct result of income derived from a pattern of racketeering activity that was acquired, established and operated an enterprise by its owner and Defendant, Kevin Cooper.

## RICO PERSON (D) CONCEPT AG:

127.    Plaintiffs aver that Defendant, Concept Ag received income derived directly from a pattern of racketeering activity…to use or invest in acquisition of an interest in or operation of an enterprise… which is engaged in or affects interstate or foreign commerce.   That the investments by defendant themselves proximately caused the plaintiff's injuries.   Secondly, Concept Ag profited from the sale of the seed treatment (inoculants etc.) to B&B Ag.  Concept Ag received profit from the sale of inoculants to B&B Ag. Here again, Courts have held that for RICO purposes there is no meaningful distinction between income fraudulently acquired and income fraudulently obtained.  Both result in funds not otherwise available but for the fraud.  See Anza v. Ideal Steel Supply Corp., 547 U. S. 451 (2006). But for the fraud Concept Ag would not have received the $20k in sales revenue which Concept Ag in turn derived a benefit.  The corporation Concept Ag is the beneficiary of its employees or agents racketeering activity. A finding of

vicarious liability on the part of an enterprise is available as in the instant case when the enterprise derived a benefit from its representative wrongful acts.

128.    Concept Ag is vicariously liable for the racketeering conduct of its employee Greg Crigler.  Vicarious liability may be imposed on a corporate defendant under section 1962(a) only if the corporation, through its upper level employees or officers, knew of or acquiesced in the racketeering conduct of its lower level employees.  See, Banque Worms v. Louis A. Duke Pena E. Hijos, Ltd., 652 F. Supp. 770 (S. D. N. Y. 1986).  Concept Ag's upper level employees and officers acquiesced in the conduct of Greg Crigler failed to supervise the activities of Greg Crigler and benefited from the racketeering activity of Greg Crigler.

129.    Greg Crigler is held as an employee of Concept Ag by Kevin Cooper.  Moreover, Thomas Burrell states in para 11 of the joint affidavit of Thomas Burrell and David Hall that the Sledge, MS facility is owned by Greg Crigler as stated by Kevin Cooper to Thomas Burrell on/or about June 3rd 2017 in a telephone conversation wherein Kevin Cooper advised Thomas Burrell that his (Mr. Burrell's) employee Charlie Jones, had backed into a Ford F-250 while loading seeds at the warehouse in Sledge, MS.  Thus, Greg Crigler was held out by Kevin Cooper as the owner of the Sledge, MS facility where the receipt and switch of inferior seeds was made.  The truck that was struck by Charlie Jones was according to Kevin Cooper (see Hey Mr. Burrell letter, Exh. H) owned by Greg Crigler and Concept Ag.  The Courts have clearly stated that association with an enterprise may be established by evidence that the defendant participated in or managed aspects of the enterprise's affairs or was simply held out, with his or hers acquiescence, as a member of the enterprise.  See E. G. Casperone v. Landmark Oil and Gas Corp., 819 F.2d 112 (5th Cir. 1987) (Per Curiam).  Tyrone Grayer in para 8 of his affidavit noted that on/or about May 13th, 2017 he

did travel to the Sledge, MS facility to pick up the first order of Stine Seeds to be planted at Rome farming operation. Mr. Grayer states that he met with Greg Crigler at the Sledge, MS facility and observed approximately 15-20 unlabelled jumbo bags. Therefore, your Plaintiffs aver that Greg Crigler was intimately involved and associated with the enterprises of switching inferior seeds to be delivered to Plaintiffs herein. And Greg Crigler did participate and manage the activities of the enterprise.

### RICO PERSON (E) STINE SEED COMPANY:

130.    Plaintiffs aver that STINE Seeds was a direct beneficiary of the pattern of racketeering activities from its employees, Kevin Cooper RICO violations. Kevin Cooper's acts were committed within the course and scope of his employment. STINE Seed Company is a direct recipient of funds derived from a pattern of racketeered activity. Plaintiffs aver that Defendant, Stine Seed Co. received income derived directly from a pattern of racketeering activity…to use or invest in acquisition of an interest in or operation of an enterprise… which is engaged in or affects interstate or foreign commerce. That the investments by defendant themselves proximately caused the plaintiff's injuries. The sales price of certified soybean seeds (varieties 49LD02, 49LD01 and 50LD02) as referenced in the User Agreement (breeding seeds) were billed to Plaintiffs were valued at approximately $55.00 per bushel. However, Plaintiffs aver that the seeds delivered to Plaintiffs for planting were not certified and/or of breeding quality and were valued at approximately $8.00 per bushel (feed and process quality). Therefore, STINE realized a profit of approximately $47.00 per bushel for each and every bushel of inferior seed sold to Plaintiffs and bears a nexus to interstate commerce resulting in injury to Plaintiff's business and/or property by

reason of a violation of RICO's criminal prohibitions. Moreover, STINE Seed is now guilty of violating both Tennessee's and Mississippi's usury laws. The interest rate that STINE has charged all defendants is on late loans in 40% on certified seeds is $55.00 per bushel. However, to the extent that these farmers received seeds valued at $8.00 per bushel STINE has realized an interest charge of 200% (50/10 =5 x 40%.

131.    Plaintiffs aver that Defendant, Stine Seed Co. received income derived directly from a pattern of racketeering activity…to use or invest in acquisition of an interest in or operation of an enterprise… which is engaged in or affects interstate or foreign commerce. That the investment use by defendant themselves proximately caused the plaintiff's injuries. Stine Seed Co. profited from the sale of inferior seed to Plaintiff's. Stine Seed Co. received profit from the sale of inferior seed to plaintiffs. Here again, Courts have held that for RICO purposes there is no meaningful distinction between income fraudulently acquired and income fraudulently obtained. Both result in funds not otherwise available but for the fraud. See Anza v. Ideal Steel Supply Corp., 547 U. S. 451 (2006). But for the fraud Stine Seed Co. would not have received over $150k in sales revenue from which Stine Seed Co. in turn derived a benefit from those sale revenues. The corporation Stine Seed Co. is the beneficiary of its employees or agents racketeering activity specifically Kevin Cooper. A finding of vicarious liability on the part of an enterprise is available as in the instant case when the enterprise derived a benefit from its representative's wrongful acts.

132.    Stine Seed Co. is vicariously liable for the racketeering conduct of its employee Kevin Cooper. Vicarious liability may be imposed on a corporate defendant under section 1962(a) only if the corporation, through its upper level employees or officers, knew of or acquiesced in the racketeering conduct of its lower level employees. See, Banque Worms v. Louis A. Duke Pena E. Hijos, Ltd., 652 F. Supp. 770 (S. D. N. Y. 1986). Stine Seed Co.'s upper level employees and

officers acquiesced in the conduct of Kevin Cooper and failed to supervise the activities of Kevin

Cooper and ultimately benefited from the racketeering activities of Kevin Cooper.  Stine Seed Co.

is uniquely structured that it does not use the general store.  The activities of Kevin Cooper and

resulting damages to plaintiffs herein are a direct result of Stine's policy which created the scheme

through which Kevin Cooper carried out his racketeering activities.  Before RICO liability can be

imposed it must be proven that the corporate policy created the scheme whereby the corporation

benefits from the enterprise run its agents. See, N. Star Gas Company v. Pacific Gas and Electric

Company 2017 USDIST. Lexis 145194 at 5(N. D. Cal. Sep. 7, 2017).  Stine Seed Company

benefited from its employees RICO violation and the employees' acts were committed within the

course and scope of his employer.  The employer is distinct from the enterprise.  See, Landry v.

Airline Pilots Association 901 F.2d at 425. The failure of Stine Seed Company to oversee the

activities of its employees amounts to reckless conduct.   Stine's policy created external

organizational structure and environments that invited structural deficiencies such as ineffective

monitoring of the activities of the organization and poor response to external change.

## RICO PERSON (E) AGRI SELECT:

133.    Plaintiffs aver that Defendant, Agri Select, Inc.   Plaintiffs aver that Defendant,

Agri Select received income derived directly from a pattern of racketeering activity…to use or

invest in acquisition of an interest in or operation of an enterprise… which is engaged in or affects

interstate or foreign commerce.  Secondly, Agri Select profited from the sale of the herbicides

(weed killer and foliar fertilizer) to plaintiffs herein.  Agri Select received profit from the sale of

herbicides (weed killer and foliar fertilizer). Here again, Courts have held that for RICO purposes

there is no meaningful distinction between income fraudulently acquired and income fraudulently

obtained.  Both result in funds not otherwise available but for the fraud.  See <u>Anza v. Ideal Steel</u>
<u>Supply Corp</u>., 547 U. S. 451 (2006). But for the fraud Agri Select would not have received the
$100k in sales revenue from which Agri Select in turn derived a benefit.  The corporation Agri
Select is the beneficiary of its associate Kevin Cooper's racketeering activity. A finding of
vicarious liability on the part of an enterprise is available when as in the instant case the enterprise
derived a benefit from its associate wrongful acts. Kevin Cooper expressly directs the plaintiffs
herein to make a check payable to Agri Select.  (See, Hey Mr. Burrell Letter).

134.    Agri Select is vicariously liable for the racketeering conduct of its associate Kevin
Cooper.  Vicarious liability may be imposed on a corporate defendant under section 1962(a) only
if the corporation, through its upper level employees or officers, knew of or acquiesced in the
racketeering conduct of its lower level employees.  See, <u>Banque Worms v. Louis A. Duke Pena E.</u>
<u>Hijos, Ltd.</u>, 652 F. Supp. 770 (S. D. N. Y. 1986).  Agri Select's upper level employees and officers
acquiesced in the conduct of Kevin Cooper and benefited from the racketeering activity of Kevin
Cooper.

135.    Kevin Cooper is held out as an associate of Agri Select by Kevin Cooper.  Kevin
Cooper was held out as Agri Select's sales representative and agent during a relevant time period
when chemicals were purchased and applied to the crops until January 2018 at which time two
representatives came to the Memphis office of Thomas Burrell and David Allan Hall to negotiate
a revised sales contract. Kevin Cooper was the only employee, person or representative of Agri
Select, Inc.  And was the collector of outstanding sums owed to Agri Select.

**COUNT IV.**
**VIOLATION OF RACKETEER INFLUENCED AND CORRUPT**
**<u>ORGANIZATIONS ACT (RICO), 18 U.S.C. § 1962(b).</u>**

136.    Plaintiff re-alleges and incorporates all above and below as if fully incorporated herein. The claims in this Count are alleged in the alternative, and in addition, to each other.  They are alleged in the alternative, and in addition, to the claims in the other Counts.

137.    Section 1962(b) renders it unlawful for any person "to acquire or maintain, directly or indirectly, any interest in or control of any enterprise" through a pattern of racketeering activity or collection of an unlawful debt.

138.    Plaintiffs aver that Defendants, Kevin Cooper and Greg Crigler — as insiders — while acting with the necessary *mens rea* through a pattern of racketeering activity or collection of an unlawful debt acquired and/or maintained an interest and/or control of an enterprise engaged in or affecting interstate or foreign commerce that resulted in injuries to Plaintiffs' business and/or property by reason of the defendants' acquisition or maintained of the interest in or control over, the unlawful enterprise.

139.    Plaintiffs aver that Kevin Cooper's establishment of control over the enterprise (association-in-fact) was a direct result of a policy and decision to maximize profits by STINE by avoiding the use of traditional middle man distributors (farm supply and/or general stores to sale, deliver and store its certified soybeans and choose instead to use sales representatives to conduct all of its affairs with STINE customers. Consequently, STINE was disposed to having Cooper conduct — literally — all its affairs with prospective farmer in Cooper's sales territory. Effectively, Mr. Cooper was the sole "manager" for STINE in the area of Tennessee and Mississippi where Plaintiffs operated.  Cooper arranged the financing between STINE and the farmers.  He conducted all of the discussion regarding the User Agreements.  He was also the sole manager of B&B Ag as well as being the sole manager for Agri Select, Inc.  Defendants Kevin Cooper and Greg Crigler were also the managers for the affairs of Concept Ag.

140.    Defendant, Kevin Cooper was the sole decision maker as to which STINE varieties were suitable for the farmer's fields.  He made all of the farm visits after the seeding had started to grow. He sent all correspondences regarding invoices and negotiated the plans for delinquent accounts.  Until the farmers made a call to STINE headquarters in October of 2017, Cooper was the only employee or officer of STINE that had any contact with STINE's customers, whatsoever. The injuries suffered by Plaintiffs are not only injuries resulting from the predicate acts of racketeering activity (wire and mail fraud) ***but*** are the direct result of Cooper's acquisition and maintenance of control in the STINE Seed enterprise — through a pattern of racketeering activity. Here again, Plaintiffs aver that STINE's blatant disregard for the procedures for tagging, labeling, transporting and re-bagging certified seed as codified under 7 CFR 201 et seq. made it easy and consequently allowed Cooper to infiltrate and seize control of and perpetrate crime that would have otherwise been impossible had he not had the unfettered access, management and control of the entire STINE operation.

141.    Likewise, Cooper was able to acquire and maintain an interest in B&B Ag through a pattern of racketeering activity because first and foremost he was the sole proprietor of B&B. As such his maintenance and control is a direct result of his creating this entity to further his scheme to defraud Plaintiffs by demanding and promise yield results and insect control by treating the STINE certified seeds with inoculants — provide by his company — B&B Ag.  Cooper knew that the seeds for which he would treat and ultimately charge plaintiffs in furtherance of the unlawful scheme to defraud Plaintiffs would be easy to implement because of the control that he had over STINE seeds.  Again, this situation would not have been possible if STINE had been using a local farm supply entity instead of allowing Mr. Cooper to control the situation.

142.    Moreover, Cooper acquired an interest and control over Agri Select as a direct result of the necessity of needing to provide promised weed control for the Liberty Link tolerant STINE seeds.  Agri Select allowed Cooper to "manage" and arrange all of the credit approvals, sales and delivery of its products (herbicides and foliar fertilizer) to Cooper STINE Seed customers.  At no time, whatsoever, during the ordering and/or delivery and inspecting for weed and insect control did any representative from Agri Select communicate with Burrell or Hall regarding the Rome, Mississippi farming operation.  Kevin Cooper was the man — at all time relevant and material. Plaintiff's suffered injuries from Agri Select as a direct result of Cooper acquiring and maintaining an interest and/or control of the Agri Select enterprise through a pattern of racketeering activity.

143.    Kevin Cooper acquisition/maintenance of an interest in or control of the enterprise occurred shortly after he was able to obtain credit and user agreement with Thomas Burrell and David Allen Hall.  The sheer size of the Burrell farming operation (2,500) after the farm visit on May 6, 2017 in Sunflower County, Mississippi provided (a) the volume of sales adequate and sufficient for Cooper to realize an additional profit (coating and treating seeds) and a vertical opportunity for B&B Ag and Concept Ag in addition to (b) making a profit from the sale of inferior seeds to Burrell, Hall and Jackson (horizontally) with co-defendant Greg Crigler.

144.    Simultaneously, Cooper's realization of the potential from the vertical plan to extend the fraudulent scheme by both switching old stock seeds and the opportunity to make even more profit by applying and coating (B&B Ag) the inferior seeds provided the occasion of Greg Crigler to (a) obtain old stock seeds and (b) provide the treatment chemicals (Concept Ag) and (c)

a location to make the switch and apply the coating in Sledge, Mississippi. This is the time and point that Kevin Cooper and Greg Crigler established control of the enterprise.

## GREG CRIGLER

145.    Likewise, Greg Crigler was able to acquire and maintain an interest in Concept Ag through a pattern of racketeering activity. Defendant, Greg Crigler acquisition and control over Concept Ag was a direct result of Mr. Crigler's managerial association with the Charleston, Missouri enterprise.  Moreover, Mr. Crigler managed the warehouse in Sledge, Mississippi where the STINE seeds were stored and treated. In fact, the seed treatment that was provided to B&B Ag was supplied by Mr. Crigler and Concept Ag.   Hereto, Crigler had unfettered managerial control over Concept Ag's credit and distribution of the seed treatment products.   Moreover, Crigler is alleged to be the person who maintained the "stock pile" of outdated and inferior seed that the parties switched with Plaintiff and had absolute knowledge that the seed treat provided by Concept Ag was in furtherance of the scheme to defraud Plaintiff.

146.    Plaintiff's suffered injuries to their business and property as a direct result of Defendants, Kevin Cooper and Greg Crigler's control and maintenance of the financial interest and/or exertion of that control of the enterprise through racketeered activities in violation of Section 18 1962(b).

147.    As a direct and proximate cause of Defendants' Kevin Cooper and Greg Crigler (acquisition) control and maintenance of a financial interest in the enterprise all Plaintiffs have sustained losses to their businesses and property by reason of the violations of the act's criminal prohibitions.  Plaintiff not only has shown that the actions of the Defendants were the "***but for***

*cause*" of his injuries but the actions of the Defendants were the "***proximate cause***."  Plaintiff's

injuries were directly caused by Defendant's RICO violations.  Moreover, Plaintiff has shown that

no other factors — other than the alleged RICO conduct — contribute to Plaintiff's injuries.  To

be sure, Plaintiffs have demonstrated that they are the parties best situated to redress the alleged

injuries and that no other statutory scheme in place is designed to address the injuries at issue.  The

losses and damages suffered as a result of the claims in this Count are meant to include all

categories and types of damages otherwise mentioned in the Complaint, as well as otherwise

available pursuant to any laws implicated by the facts and allegations of this Complaint.

### COUNT V.
### VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO), 18 U.S.C. § 1962(c)

148.    Plaintiff re-alleges and incorporates all above and below as if fully incorporated

herein.  The claims in this Count are alleged in the alternative, and in addition, to each other.  They

are alleged in the alternative, and in addition, to the claims in the other Counts.

149.    18 U.S.C. § 1962(c) states in pertinent parts that it shall be unlawful for any person

who is employed by or associated with any enterprise… to conduct or participate… in the conduct

of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

150.    Plaintiffs aver that Defendants, Kevin Cooper and Greg Crigler — *as insiders* —

were both employed by and/or associated with the enterprise (association-in-fact) that was engaged

in or affected interstate or foreign commerce and wrongfully conducted or participated in the

conduct of the enterprise's affairs through a pattern of racketeered activity or collection of an

unlawful debt while acting with the necessary *mens rea* that resulted in injuries to the Plaintiffs

business and/or property by reason of a violations of the acts criminal prohibitions.

151.    All plaintiffs aver that Defendant, Kevin Cooper, as a person, was employed by STINE Seed Company, B&B Ag and was associated with Agri Select, Greg Crigler and Concept Ag during the time Cooper and Crigler (insiders) committed at least two predicate acts that constitute a pattern of racketeering activity in violation of 18 U.S.C. Section 1962(c).    As such, Cooper's conduct provided the major and overall "direction" of the enterprise.  His actions were calculated, foreseeable, related and injured Plaintiff's in their property and business and amounted to and/or posed a threat of continued criminal activity.  Moreover, the wire and mail fraud by Kevin Cooper was made in furtherance of the fraudulent scheme of (a) selling Plaintiff's inferior seeds (b) treating the inferior seeds with inoculants (c) providing herbicides otherwise tolerant to the STINE seeds and (d) the predicate acts of wire transmissions were a regular way of doing business by means of conducting or participating in an ongoing RICO enterprise.

152.    A plan or scheme to defraud need not depend on one fact in isolation but rather emerges from inferences arising when facts are viewed in their entirety.    Plaintiffs have asserted a pattern of fraud consisting of Cooper's and Ryan's regular transmittal of credit and user agreements throughout 2017.  Each electronic transmission regarding credit and user agreements and seed deliver telephone call/text had the same common plan— to (1) to create a binding obligation against plaintiffs for the payment from the sale of inferior and/or none-certified soybean seeds varieties (49LD02, 49LD03 and 50LD01) from "old stock" on an horizontal plan and (2) create additional sales for products (inoculants/fertilizer) to supposedly protect and further improve the efficiency of those inferior soybean seeds by making the purchaser of those inferior soybeans available to other businesses comprising the "enterprise" on the vertical plan (Stine, B&B Ag. Concept Ag and AgriSelect).

153.    All Plaintiffs aver that Greg Crigler, as a person, was employed by Concept Ag and associated with STINE Seeds, B&B Ag and Agri Select.  Defendant, Greg Crigler was the person who provided (a) the warehouse facility where virtually all of the old stock (inferior seeds) were stored (c) provided the inoculants for coating and treating the inferior seeds to B&B Ag and (b) provided the means to re-package and switch the STINE certified seeds with old (inferior) seeds that were ultimately to plaintiffs.

154.    Plaintiffs aver that Defendant, Kevin Cooper was the sole proprietor of B &B Ag at all times relevant to the Complaint but that the corporation is a different person even where the employee is the corporation's sole owner.

155.    Defendant, Kevin Ryan — *an outsider* — was employed by STINE Seed company and associated with the enterprise because he became a willing participant in the direction of the enterprise's affairs after his visit to the plaintiff's fields in October of 2017.  Ryan indicated to David Hall and Thomas Burrell that STINE could identify where every lot number of soybeans came from.  To be a certified producer of certified seeds the federal seed act codified at 7 CFR section 201 requires that every portion or bag be labeled with its kind and variety, its lot number, origin and its germination.  Burrell and Hall in the fields on that day in October 2017 requested of Ryan to take samples and test for purity and to determine whether these plants in that field were indeed the progeny of certified STINE seeds.  Burrell advised Ryan that they had purchased the variety 49LD02.  Ryan refused to take samples and conduct tests.  Here he was in the field as Chief Agronomist sent to the fields after Burrell and Hall had contacted STINE at their headquarters.  Burrell had contacted the headquarters and indicated that the seed yields were woefully low, the plants had not developed as they should and did not sprout.  Mr. Burrell had been referred to Myron STINE and his call was transferred to Myron STINE at which time Mr.

Burrell reiterated his concerns to Myron STINE and had asked that they investigate to determine what had transpired regarding the seeds.   Myron STINE indicated to Mr. Burrell that he needed to involve his agronomist and he would have that agronomist to contact Mr. Burrell.  Mr. Burrell subsequently was contacted by the agronomist Mr. Ryan.  Mr. Ryan arranged a meeting to come to the field where the seeds were planted.  Mr. Ryan arrives and goes to the field with Mr. Burrell and Mr. David Alan Hall.  Mr. Ryan comments you definitely have a yield problem here.  Mr. Burrell requests of Mr. Ryan to take samples and test them for purity and to determine whether these plants were indeed the progeny of certified STINE seeds.  Mr. Burrell had received a letter (Exh. J) in August of 2017 from a STINE employee, Mr. Chuck Hansen, stating there may be an opportunity for Mr. Burrell and Mr. Hall to become STINE seed breeders.  Mr. Burrell had an earlier conversation in August 2017 with another employee, Chuck Hanson, at the STINE headquarters regarding an opportunity for Burrell and Hall to sell harvested STINE seeds back to STINE for the purpose of creating a certified seed supply for the year of 2018, i.e. to become a breeder.  Mr. Burrell responded to the letter by contacting Mr. Hansen via telephone.  Mr. Burrell inquired whether they needed to send someone down to inspect the fields prior to harvesting.  Mr. Hansen indicated that no and they were able to determine the progeny whatever state, whether they were harvested in a grain silo or still standing in the field.  Plaintiffs know then that they have the technology to determine the origin of all their varieties of seeds.  It was this conversation that led Mr. Burrell to request of Mr. Ryan as to whether he would conduct a test as Mr. Burrell had spoken to Mr. Hansen two months prior in August. This being the same visit wherein Ryan (a) indicated that STINE could identify where every "Lot Number" of soybeans came from and Ryan (b) instructed David Hall and Thomas Burrell to send samples of seeds to Mississippi State University for testing.  Moreover, Ryan's refusal to test any soybean plants belonging to the STINE varieties

was in furtherance of covering for Kevin Cooper's and Greg Crigler's scheme. Plaintiffs aver that Ryan knew that any testing of the purported STINE plants would "patently" reveal that those plants were not a progeny of a certified STINE variety billed to plaintiffs. Moreover, Ryan knew that Mississippi State University would only be able to test for germination — not for genetic finger printing — as he was able to do and would not be dispositive of claim that the tested seeds were not of the STINE varieties.[6] Therefore, Ryan's involvement is more that tangential and he has now participated with the insiders (Cooper and Crigler) and satisfies the operation-and-management requirement of 18 U.S.C. Section 1962(c).

156.    Defendant, Myron STINE — *an outsider* — was employed by STINE Seed Company. Myron STINE was the individual that Plaintiff, Thomas Burrell spoke with in October of 2017 regarding plaintiffs concerns and subsequent request for having someone from STINE Seed Company down to the fields where the concerns regarding low yields had been planted with STINE certified seeds. Myron STINE promised Plaintiff, Burrell that he would make sure that someone (agronomist) would be contacting plaintiff as per the telephone conversation between plaintiff and Myron STINE.

157.    Plaintiff, Burrell avers, however, that Myron STINE did not make any follow-up calls, E-mails and/or correspondence, in any form to Burrell after the visit to the fields by Defendant, Kevin Ryan to explain STINE's findings and/or recommendations. Moreover, in March and April of 2018 plaintiffs made several calls to Myron STINE, via legal counsel with, herein again, no response from defendants Myron STINE and/or STINE Seed company.

158.    Plaintiffs aver that after the visit to the fields on November 1, 2017 by Kevin Ryan both Ryan and Myron STINE had conversations regarding Rayan's knowledge that the soybean

---

[6] Testing for genetic finger printing requires, among other thing, having a specimen of the tested soybean's varies' DNA which MSU, by virtue of STINE's patent, would not have.

plants so mentioned by Rayan as having "yield problems' caused both Ryan and Myron STINE to agree to further the unlawful scheme and thereby associated with alleged enterprise by abstaining from any investigation into plaintiffs concerns regarding the poor performance of the STINE soybean varieties.

159.    Moreover, Plaintiffs aver that Kevin Ryan's sending the collection notices to Hall on February, 12th, 2017 and to Walter Jackson on/or about February 12th, 2017 were a direct result of the conversation between Ryan and Myron STINE after the visit in November to Rome, Mississippi.  Defendants, Kevin Ryan and Myron STINE have now exercising control over (chain of command) an enterprise to carry on (not simply assisting but participating and directing) a pattern of racketeering activity.

160.    Plaintiffs aver that Defendant, Kevin Ryan and Myron STINE (outsiders) have banded together with Kevin Cooper (insider) and Kevin Ryan associated with the enterprise and conducting directly the association-in-fact enterprise's affairs, and not their own affairs. Moreover, Defendant, Myron Stine's involvement after having the conversation during October of 2017 with Plaintiff, Burrell was such that he directed Defendant, Kevin Ryan to visit the soybean fields in Mississippi and as such is participating in the operation and/or management of the enterprise itself subject to 18 U.S.C. Section 1962 (c) liability.  Defendant, Myron STINE agreed with Defendant, Kevin Ryan by deciding not to have any soybean fields planted with STINE seeds tested to establish progeny.  In fact, it was Myron STINE that "directed" Defendant, Kevin Ryan to come and evaluate the situation pursuant to the request from Burrell in the first instance.  Ryan's act of omission of testing the varieties to determine progeny was a direct result of Myron STINE directives and Ryan's subsequent act of sending an electronic transmission for debt collection to

Hall and Jackson make it plausible that both Ryan and Myron STINE have now associated themselves with Defendant, Kevin Cooper's scheme to further the enterprise's objectives.

161.    The predicate acts of Kevin Cooper, Myron Stine and Kevin Ryan arise out of the same common plan, common purpose, results, victims, and methods of commission.  The United States Supreme Court has held that "relatedness" refers to a connection among the defendant's criminal acts. That is, related acts are those that serve some common purpose, constitutes parts of a common plan, are directed at a common victim, or involves the same modus operandi or the same perpetrators.  Cooper… acts satisfy the relatedness test.

162.    Likewise, The United States Supreme Court has held that continuity is established when a series of related predicate extends over a substantial period of time.  Kevin Cooer et al….acts satisfy the continuity requirement, because the request for payment for non-certified seeds and other farm inputs (inoculants, fertilizer and herbicides) were transmitted repeatedly over a period of 11 months, from March 2017 through February 2018.

163.    Predicate acts of Kevin Cooper, Myron Stine and Kevin Ryan established open ended continuity because the related predicate acts occur over a period of eleven months from March 2017 through January 2018 with a threat of repetition. The threat of continuity also established Stine's and Kevin Coopers regular way of doing business. New victims are created from Cooper and Stine at every year Mid South Gin show which is continuing into the future.  The predicate acts project a threat of continuing misconduct based upon the structure of Stine Seed Company in its external operating principle of not selling seeds through the general store but selling seeds through loosely supervised agents and employees like Kevin Cooper.  Continuity is established because if the defendant's in this matter are not stopped there is no reason to believe

they would not still be selling fraudulent seeds.  For example Kevin Cooper incorporated B&B Ag expressly for the purpose of expanding his seed selling and treating operation.  See Civil RICO Guide (5th Ed. ABA at pg. 192).  Myron Stine and Kevin Ryan took up where Kevin Cooper left off demanding payment for non-certified seeds.  Kevin Cooper had nothing to say in the field once Kevin Ryan showed up.

164    Plaintiffs aver that once Defendants, Kevin Ryan and Myron STINE became members in the scheme to defraud plaintiffs, they Kevin Ryan and Myron Stine became.  They started to direct the affairs.  They became knowing participants and are liable for any wire communication which subsequently took place, or which previously took place in connection the scheme.

165.    As a direct and proximate cause of Defendants' Kevin Cooper, Greg Crigler and Kevin Ryan and Myron STINE plaintiffs have sustained actual and definite financial losses to their business and property by reason of the violations of the act's criminal prohibitions.  Those losses include, among other things, (a)…(n). Plaintiff not only has shown that the actions of the Defendants were the "***but for cause***" of their injuries but the actions of the Defendants were the "***proximate cause***" of plaintiff's injuries.    Plaintiffs avers that their injuries were reasonably foreseeable and anticipated and a natural and direct consequence of the criminal acts committed by defendants.    Plaintiffs have established that their injuries were foreseeable and a natural consequence of defendant's scheme to obtain money from plaintiffs by billing them for seeds ($55.00 per bushel) that were delivered to other farmers and supplying inferior seeds ($8.00 per bushel) to plaintiffs.  These actions were deliberate and calculate to harm plaintiffs in the business and property and the low soybean yields were foreseeable and a natural consequence by reason of a violation of RICO's criminal prohibitions.  Moreover, Plaintiff has shown that no other factors

— other than the alleged RICO conduct — contribute to Plaintiff's injuries.    Plaintiff's injuries were a direct result of the RICO predicate offenses, rather than being derivative of, or mediated through injuries to another.  Plaintiffs were the victim of the RICO predicate offenses.  Defendants specifically intended to harm the plaintiffs.  And, the injuries to Plaintiffs were a reasonably foreseeable consequence of the RICO violations.  The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in the Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.

## COUNT VI:
## VIOLATION OF RACKATEER INFLUENCED AND CORRUPT OPRGANIZATION (RICO), 18 U.S.C. § 1962 (d)

166.    Plaintiff, BURRELL re-alleges and incorporates all above and below as if fully incorporated herein. The claims in this Count are alleged in the alternative, and in addition, to each other.  They are alleged in the alternative, and in addition, to the claims in the other Counts.

167.    18 U.S.C. § 1962 (d) states in pertinent parts that it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

168.    All Plaintiffs aver that Defendants, Kevin Cooper, Greg Crigler, STINE Seed Company, Myron Stine, Kevin Ryan, B&B Ag, Concept Ag and Agri Select, Inc. did, from a period of March 2017 through January, 2018 commit predicates and overt acts (taken in further of the conspiracy) by agreements to commit predicate acts with knowledge that the predicate acts were part of a pattern of racketeering activity conducted in such a way as to violate Section 1962 (d).  Moreover, these overt predicate acts and conspiracy caused foreseeable and concrete injuries to plaintiffs' businesses and property by reason of the violations of the RICO act's criminal prohibitions.

169.    Plaintiffs aver the Defendants Kevin Cooper and Greg Crigler "never" intended to deliver STINE certified soybean seeds to plaintiffs.  That Defendant, Kevin Cooper's arranging to meet with Burrell on May 6, 2017 in Rome, Mississippi to inspect his fields and subsequently determine which STINE varieties was best suited for planting on the same was a scam and pretext for giving the appearance and imprimatur of determining the best varieties for planting.

170.    Defendant, Keven Cooper's predicate acts of (a) sending credit application and (b) an e-mailing of plaintiffs application and subsequent User Agreement "licenses" was an indispensable and necessary parts of the scheme for ultimately making plaintiffs pay for purported STINE certified seeds when in fact he knew that the plaintiffs would never receive but would instead be given old stock (inferior) "liberty Link Tolerant" seeds of low germination and purity.

171.    Plaintiffs aver that Defendant, Greg Crigler's access and providing (overt act taken in furtherance) to old stock soybeans provided the perfect opportunity for literally killing two birds with one stone.  First, STINE would be able to get paid for the seeds ordered ($55.00 per bushel) as being certified and sold to plaintiffs.  Second, defendants would be able to able to get ($55.00 per bushel) for old stock soybean left over from previous years ($8.00 per bushel) and otherwise provided by Defendant, Greg Crigler. Third, Cooper and Crigler would be able to deliver the original STINE certified seeds ($55.00 per bushel) to other soybean farmers.  Therefore, (1) STINE would be made whole by receiving ($55.00 per bushel) for its certified seeds (2) whoever actually received the certified seeds would be made whole receiving STINE certified soybean seeds and (3) plaintiffs received "coated" inferior seeds.  This was a zero sum game for plaintiffs.  Every dollar of STINE certified seed sold to plaintiff produced a dollar of inferior seeds to plaintiffs. Plaintiffs were the only ones that lost.

172.    Plaintiffs aver that the acts of going through what would otherwise seem to be an elaborate and legitimate certification process with a major seed breeder (STINE) gave the imprimatur of a "top notch" legitimate business transaction. Defendants, Kevin Cooper and Greg Crigler were intent on infiltrating legitimate business to perpetrate crimes that they would not have been able to commit on their own.

173.    Plaintiffs aver that all defendants (Cooper, Crigler, STINE Seed Company, Kevin Ryan, B&B Ag, Concept Ag and Agri Select) conspired to violate § 1962(a), (b) or (c) over a period of 11 months.

174.    The object of the conspiracy was to cause plaintiffs to pay the price ($55.00 per bushel) for STINE genetically engineered seeds (see, supra at para 72) and instead have inferior non-certified seed delivered to plaintiff's fields which were worth considerably less ($8.00 per bushel) and pocketed and/or invested the difference in the enterprise, corporations, businesses and/or personal accounts. The overt act taken in furtherance of the conspiracy was the actual switching and delivering of non certified seeds. All defendants agreed to commit the predicate acts and have knowledge that the acts were part of a pattern of racketeering activity conducted in such a way as to violate § 1962 (a), (b), or (c). Moreover, defendant's acts caused injuries to the plaintiff's businesses and property by reason of violations of the RICO's overt acts that were also predicate acts.

175.    Defendants Kevin Cooper and Greg Crigler — *as insiders* — conspired to obtain money and property by means of false pretenses and the concealment of material facts through a pattern of racketeering activity. First, in or around March of 2017 through November of 2017, Kevin Cooper and Greg Crigler agreed that they and/or various John Does would regularly and repeatedly electronically transmit and/or mail or cause to be mailed sales orders for certified

soybeans, herbicides and chemical to either, Burrell, Hall and Jackson.   The misrepresentations and unlawful schemes and conspiracy by Kevin Cooper, Greg Crigler, Myron STINE and Kevin Ryan had as its primary object to induce Hall, Burrell and Jackson to pay $55.00 per bushel for certified seed from STINE when it was known that the seeds that Hall, Burrell and Jackson planted were not certified seeds but were the seed that would have sold for feed stock and processing at approximately $8.00 per bushel.   Second, Kevin Cooper and Greg Crigler and Agri Select representatives conspired by requiring Burrell, Hall and Jackson to use and pay for herbicides and chemicals necessary to control weeds in the planted fields of soybeans that were unique (tolerant) to the STINE soybean varieties (Liberty Link).   Plaintiffs were then disposed, necessarily to purchasing these chemicals as a direct result of being sold the purported Liberty Link soybean traits whether certified and/or old crop soybeans.   Third, Kevin Cooper, Greg Crigler, Kevin Ryan and Myron STINE sought to collect on payments, via electronic and mailing of invoices to Burrell, Hall and Jackson.   Fourth, Kevin Cooper even sought to charge David Hall for soybeans and chemicals otherwise ordered by a company named Williams Farms with whom Hall has no association with and no knowledge of.  See, Exhibits S.   This billing is potentially evidence of Cooper's involvement with other farmers.  And not only did Cooper send nefarious billing to Hall, he also sent strange bills to Walter and Monique Jackson.  See, Exhibit T.

176.    Moreover, Defendants, Kevin Ryan and Myron STINE conspired to violate section 1962(d) when they intended to further the endeavor — collection of $55.00 per bushel for each bushel of seeds sold — which if "completed" would satisfy the object and common purpose of the conspiracy.   Ryan's mailing of the demand letter to both Hall and Jackson were more than simply attempting to collected debts owed to STINE Seeds Company but were done in furtherance of the fraudulent scheme by Kevin Cooper to defraud Plaintiff of their money (property) and was

injurious to their property and business.  Here, defendants, Kevin Ryan and Myron STINE have "agreed" with such other person or persons that they or one of them have engaged in conduct that constitute such crime.

177.    Moreover, Kevin Ryan had visited the fields on November 1st, 2017 wherein the STINE seeds had been planted and stated to Burrell and Hall, that, among other things, "you have a yield problem."  Defendant Ryan summarily declined the offer by Burrell and Hall to cut and take samples of the soybean plants (mature seeds) back with him for testing.  As an agronomist for STINE seeds Ryan could have easily determined whether the harvested seeds were the progeny of a certified STINE — genetically engineered seed matching any of STINE's patented varieties.  As an ergonomist — that is what he does.  Plaintiffs avers that Defendant Ryan knew or should have known that that soybean field wherein he made the statement regarding the yield problems were not STINE of the elements of substantive criminal offenses Kevin Ryan could easily have determined the origin and germination of the plantings in the Burrell field.  However Ryan chose to disregard the opportunity to get to the bottom of the problem.

178.    Defendant's Ryan involvement in the racketeering conspiracy does not depend on his operation and/or management in that he was aware of the general nature of the conspiracy and that the conspiracy extended beyond his individual role.

179.    In fact, Plaintiff's allegations of fraud by all Defendants have been pled with heightened particularity and have shown that all Defendants did indeed conspire with one another and with full knowledge of one another to have committed the RICO conduct herein complained of.

180.    In the alternative and in addition, Defendants may claim a lawful purpose, yet collaborated and worked together to unlawfully carry out any alleged lawful purpose.  Defendants

conspired so as to cause Plaintiff's losses and damages when considering all factors including, but not limited to, their misrepresentations and or omissions.

181.    All Defendants did manifest willingness directly or indirectly to participate in "a pattern of racketeering activity" alleged and conspired together to do so with full knowledge that Plaintiff could suffer grievous loss in his property and business by Defendants' conduct and by reason of the RICO violation.  Moreover, these acts by all Defendants were done to further the object of the conspiracy and have not abandoned the conspiracy and are in direct violation of §§ 1962 (a), (b), and (c), thereby contravening § 1962(d).

182.    Plaintiff has adequately alleged an association-in-fact enterprise and has described the "interrelationships between each set of Defendants and their respective roles in the scheme," and demonstrated how the enterprise functioned with "sufficient" longevity to permit its members to pursue the illicit purpose of the enterprise through a pattern of racketeering activity. That each Defendant knowingly carried out his part of the activities of the alleged scheme.

183.    Plaintiffs aver that RICO persons, Kevin Cooper, Greg Crigler, Kevin Ryan, Myron STINE, B&B Ag, Concept Ag and Agri Select, Inc. conspired to violate Section 1962(a), (b) and or (c) during the period of March 3, 2017 through February 2018.  That the objective of the conspiracy was to have plaintiffs pay for seeds that were not STINE certified seeds and for payment of other farm inputs (inoculants, fertilizers and/or herbicides) from other entities of the enterprise for the benefit of the inferior seeds.   That overt acts were taken in furtherance of the conspiracy and that there were agreements to commit predicate acts and that knowledge that the acts were part of a pattern of racketeering activity conducted in such a way as to violate Section 1962(a), (b), or (c).  Moreover, plaintiffs aver that injury to their business and/or property occurred by reason of the act's criminal prohibitions and that the overt acts were also predicate acts.  In

sum, in addition to defendant's operation and management in the enterprise, all defendants knew the general nature of the conspiracy and that the conspiracy extended beyond their individual role.

184.    As a direct and proximate cause of Defendants' Kevin Cooper, Greg Crigler and Kevin Ryan plaintiffs have sustained losses to his business and property by reason of the violations of the act's criminal prohibitions. Those losses include, among other things, compensation for past, present, and future emotional distress or non-economic losses; past, present, and future out of pocket costs and attorney fees; past, present, and future loss of enjoyment of life; past, present, and future pain and suffering; past, present, and future mental anguish; past, present, and future lost income and/or lost revenue and/or lost profits and/or lost business opportunity; loss of revenue earning capacity; costs related to medical or mental health treatment which might occur in the future if OR which Plaintiffs might be recommended to have, or which he might have been recommended. Recovery is fully sought to be calculated based on each separate claim and cause of action individually possible. Plaintiff not only has shown that the actions of the Defendants were the "*but for cause*" of their injuries but the actions of the Defendants were the "*proximate cause*" of plaintiff's injuries. Plaintiff's injuries were directly caused by reason of violation of the statue's prohibit activities. Moreover, Plaintiff have shown that no other factors — other than the alleged RICO conduct — contribute to Plaintiffs' injuries. The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in the Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.

## COUNT VII:

## CLAIMS OF RACE DISCRIMINATION PURSUANT TO
## 42 U.S.C. § 1981

185    Plaintiffs re-allege and incorporate all provisions above and below as if fully incorporated.  The claims alleged in the alternative, and in addition, to each other.  They are alleged in the alternative, and in addition, to the claims in the other Counts.

186.    Defendants, STINE SEED COMPANY, KEVIN COOPER, GREG CRIGLER, B&B AG, AGRISELECT, LLC and CONCEPTAG knew of or should have known that Plaintiffs are members of the African-American race and were conducting operations in part as a result of attempting to assist one or more black farmers.  STINE SEEDS and its representatives and contractors as a protector and guardian of the USDA (SEED LAW) had a public duty to protect the interest of its customers — Black farmers — whom it knew would reasonably rely upon, at all times relevant and material, the labeling, information, representation and statements regarding STINE's products.

187.    At the time of contractual formation, and at other relevant times, Defendants, STINE SEED COMPANY, KEVIN COOPER, GREG CRIGLER, B&B AG and CONCEPTAG indicated racial animus by and through their statements during the course of the matters referred to in the facts section above.

189.    Defendants, STINE SEED COMPANY, KEVIN COOPER, GREG CRIGLER, B&B AG and CONCEPTAG operated to discriminate against Plaintiff as a result of Plaintiff's race when it ultimately, tortuously and willfully coated, treated and switched certified seeds with seeds of inferior genetics, purity and germination causing Plaintiff losses and damages.

190.    All Defendants' actions are in direct contravention to 42 U.S.C. § 1981 and it pertinent part as follow:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white

citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

191.    Moreover, Defendant, STINE SEED COMPANY had a duty and obligation to examine and otherwise initiate and inquiry into the allegations and expressed concerns resulting from the telephone call from Plaintiffs, THOMAS BURRELL and DAVID ALLEN HALL to STINE SEED representatives, Myron Stine and Kevin Ryan in October of 2017 as is required under 7 U.S. Chapter 37, § 1594 (Alteration).  Defendants' categorical and absolute dismissal of the pleas and cries (call to Myron STINE and visit by Kevin Ryan) from Plaintiffs regarding the problems with STINE seeds was a direct, blatant and intentional disregard for the safety and welfare of Black farmers and constitute a badge of incidences of slavery.

192.    In fact, Defendant, KEVIN RYAN, acknowledged emphatically, "*you have a yield problem*," when he met with Plaintiffs, THOMAS BURRELL and DAVID ALLEN HALL on a road next to Plaintiff's soybean fields in Rome, Mississippi in October of 2017.    Moreover, Defendant KEVIN RYAN assured Plaintiffs that he would look into this matter further and determine what happened regarding the very problem for which he identified — "**you have a yield problem.**"  Defendant, KEVIN RYAN never contacted any Plaintiff regarding the yield problem, whatsoever.  He never called or spoke to either Plaintiff regarding this matter.   But, Defendant KEVIN RYAN did indeed take time to send Plaintiff, DAVID ALLEN HALL a letter demanding payment for STINE seeds *(see, Exh. N).*

193.    Plaintiffs maintain that Defendant, KEVIN RYAN did conspire to withhold material and relevant information regarding the alteration of STINE seed for the benefit of other co-conspirators (Greg Crigler) and Defendants (seed breeder) regarding the transportation and selling of inferior seed to all Plaintiffs.

194.    All Plaintiffs aver that the unlawful, intentional and blatant actions of all Defendants, have caused all Plaintiffs to suffer loses and have impeded their right in the leasehold interest in the land upon which inferior seeds and the application of other chemical to maintain those inferior seeds were planted.

195.    As a direct and proximate cause of all Defendants' conduct towards Plaintiff they sustained losses which were fully described in other parts of this Complaint.  The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.   These damages are also a direct result of animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

## COUNT VIII:

## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT
## 15 U.S.C. § 1691.

196.    Plaintiff re-alleges and incorporates all above and below as if fully incorporated herein. The claims in this Count are alleged in the alternative, and in addition, to each other.  They are alleged in the alternative, and in addition, to the claims in the other Counts.

197.    The Equal Credit Opportunity Act states in pertinent parts the following:

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—
> (**1**) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the application has the capacity to contract);
> (**2**) because all or part of the applicant's income derives from any public assistance program; or
> (**3**) because the applicant has in good faith exercised any right under this chapter.

198.    Plaintiff, David Allen Hall avers that on/or about April 8th, 2017 he received, via an E-mail transmission, a credit application from STINE Seed Company for the express purpose

68

of establishing a line of credit from STINE to purchase certified soybeans seeds otherwise produced and or distributed by STINE in accordance to the User Agreement executed on March 28th, 2017.

199.   Plaintiffs, Walter and Monique Jackson aver that on March 28th, 2017 they received, via an E-mail transmission, a credit application from STINE Seed Company for the express purpose of establishing a line of credit from STINE to purchase certified soybeans seeds otherwise produced and or distributed by STINE in accordance to the User Agreement executed on March 31st, 2017.

200.   Plaintiffs, David Allen Hall, Walter and Monique Jackson aver that they would not have entered into a credit agreement with STINE if indeed they had been aware that their credit application was for the financing of inferior, old stock, feed and or processing purposes.

201.   Plaintiffs David Allen Hall, Walter and Monique Jackson aver that Defendants, STINE Seeds and Kevin Cooper misrepresented a material fact and knew and/ or should have known that plaintiffs would rely upon the misrepresentations regarding the reason for credit as presented by Kevin Cooper.

202.   All Defendants knew or should have known and was aware that Plaintiffs, Davis Allen Hall, Walter and Monique Jackson were members of the African American race and were substantially responsible for the actionable conduct related to the formation of the alleged credit approval and grower's agreements.  All Plaintiffs and Defendants had capacity to properly enter into contractual agreements in the form of credit and grower's agreements even though Plaintiff disagrees that Defendant acted properly in any way.   Defendant offered to sell certified soybean seeds upon certain terms.  Those terms were met by all Plaintiffs.  The parties mutually assented to terms as reasonably understood and/or as should have been reasonably understood.  Mutual

promises were exchanged wherein Plaintiff would be required to make payment starting June 30,

2017 or, alternatively pursuant to reschedule terns with interest.

203.    Consideration was extended insofar as there were mutual promises of performance

in exchange for Plaintiff's promise to pay at the appropriate time.

204.    There was an offer, acceptance and therefore contractual formation.

205.    Defendants are both responsible for the breaches of the agreement when

considering their mutual conduct providing the basis for the promise of certified seeds, and

damages that were incurred as a result.

206.    As a direct and proximate of both Defendants' conduct towards Plaintiff, they

sustained losses which were fully described in other parts of this Complaint.  The losses and

damages suffered as a result of the claims in this Count are meant to include all categories and

types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant

to any laws implicated by the facts and allegations of this Complaint.  Theses damages are also a

direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

## COUNT IX.
## BREACHES OF CONTRACT

207.    Plaintiffs re-allege and incorporate all provisions above and below as if fully

incorporated.  The claims in this Count are alleged in the alternative, and in addition, to each other.

They are alleged in the alternative, and in addition, to the claims in the other Counts.

208.    All Defendants were substantially responsible for the actionable conduct related to

the formation of the alleged credit approval and grower's agreements.  All Plaintiffs and

Defendants had capacity to properly enter into contractual agreements in the form of credit and

grower's agreements even though Plaintiff disagrees that Defendant acted properly in any way.

Defendant offered to sell certified soybean seeds upon certain terms. Those terms were met by all

Plaintiffs.  The parties mutually assented to terms as reasonably understood and/or as should have been reasonably understood.  Mutual promises were exchanged wherein Plaintiff would be required to make payment starting June 30, 2017 or, alternatively pursuant to reschedule terns with interest.

209.    Consideration was extended insofar as there were mutual promises of performance in exchange for Plaintiff's promise to pay at the appropriate time.

210.    There was an offer, acceptance and therefore contractual formation.

211.    Defendants are both responsible for the breaches of the agreement when considering their mutual conduct providing the basis for the promise of certified seeds, and damages that were incurred as a result.

212.    Plaintiff maintains all breach of contract claims against Defendants, STINE SEED COMPANY, KEVIN COOPER, GREG CRIGLER, B&B AG and CONCEPT AG regardless of whether Plaintiff is entitled to recover against all Defendants pursuant to this Count.  Plaintiff maintains that they should recover when considering all actionable conduct by all Defendants.

213.    As a direct and proximate of both Defendants' conduct towards Plaintiff, they sustained losses which were fully described in other parts of this Complaint.  The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.   Theses damage are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

## COUNT X:
## TORTIOUS BREACH OF CONTRACT

214.    Plaintiffs re-allege and incorporate all provisions above and below as if fully incorporated.  The claims in this Count are alleged in the alternative, and in addition, to each other.  They are alleged in the alternative, and in addition, to the claims in the other Counts.

215.    Defendants' breaches referred to in the prior Count were willful, intentional, wanton, reckless, tortious, and operated to cause Plaintiffs losses and damages under circumstances Defendant knew of and/or should have known and/or which occurred as a result of intentional conduct.  Defendants knew of and should have known that Plaintiffs would suffer the damages as a result of the wrongful and tortious breaches.

216.    Defendant, STINE SEEDS COMPANY had a public duty to give accurate information for the guidance of others in their pecuniary interest in business transaction and failed to exercise reasonable care or competence in obtaining and communicating to Plaintiffs.  Defendants supplied faulty information meant to guide Plaintiffs in their business transactions.  In fact, all Plaintiffs justifiably relied upon the information that was given by Defendants and suffered losses as a result.

217.    Defendants otherwise acted in such a manner that constituted a tortious breach of contract.  While Plaintiffs maintains that the conduct related to the breaches support a tortious breach of contract claim, Plaintiffs also maintains that a tortious breach of contract claim is appropriate when considering all other torts alleged.  In fact, STINE SEEDS failed to exercise care in the course of its business and supplies faulty information meant to guide others in their business transactions and further failed to exercise reasonable care in obtaining or communicating the information and all Plaintiffs justifiably relied upon the information.

218.    As a direct and proximate cause of both Defendants' conduct towards Plaintiffs, they sustained losses which were fully described in other parts of this Complaint.  The losses and

damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.  These damages are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

## COUNT XI:
## INTENTIONAL MISREPRESENTATION (FRAUD)

219.    Plaintiffs re-allege and incorporate all provisions above and below as if fully incorporated.  The claims in this Count are alleged in the alternative, and in addition, to each other. They are alleged in the alternative, and in addition, to the claims in the other Counts.

220.    Plaintiffs maintain that Defendants are equally responsible for materially false and/or misleading material misrepresentations and/or omissions.  Notwithstanding, Plaintiffs alleges fraud against Defendants in the alternative and in addition to each other.

221.    All Defendants knew of or should have known that Plaintiffs were relying upon their material misrepresentations and/or omissions indicating and reasonably intending to indicate that Plaintiff's purchase of certified seed would have the germination and purity to produce adequate yields commensurate to that of similarly situated white farmers under similar growing conditions and that the germination — of the STINE seed's progeny — would not be of ZERO quality when considering a reasonable interpretation of the agreements and all representations made by the parties.

222.    Defendant, Kevin Cooper expressly represented to Plaintiff Burrell on May 6, 2017 that STINE Seeds variety 49LD02 was the seeds that would be best suited for in field.  Moreover, Defendant, Kevin Cooper(a) made a material misrepresentation of fact (b) knowing of its falsity (c) with the intent to induce reliance and (d) Plaintiff, Burrell justifiably relied on that

misrepresentation to his detriment. However, Defendant Cooper never intended to deliver certified STINE seeds to plaintiff.

223. Defendant knew that he never intended to furnish STINE 49LD02 or any other STINE variety subsequently delivered to Plaintiff's field would qualify as a STINE genetically certified soybeans seed as represented and billed to Plaintiff. Likewise, Cooper knew that the inoculants and herbicides from other Defendants would be used on soybeans that were not STINE certified soybean seeds and/or plants.

224. Defendants made material misrepresentations and/or omissions when the agreements were entered into and/or the agreements were allowed to be entered into under the reasonable expectations noted above.

225. All Defendants are responsible for all representations and/or omissions which resulted in Plaintiffs receiving altered inferior seeds wherein Defendants knew and/or should have known that Plaintiffs would incur losses and investment as a result of reasonable reliance. All Defendants knew of or should have known that Defendants, STINE SEED COMPANY, KEVIN COOPER, GREG CRIGLER, B&B AG and CONCEPTdid not intend to honor the contract terms as reasonably understood by the parties and therefore Defendants are responsible for fraud in the inducement.

226. Defendants made material misrepresentations and/or omissions that the Plaintiffs relied upon, and which Plaintiffs was reasonable to rely upon, therefore resulting in losses.

227. Plaintiffs' claim that regardless of their inability to recover against any particular Defendant pursuant to this Count, Plaintiffs shall nevertheless maintain the right to recover against any other Defendant.

228.     As a direct and proximate cause of all Defendants' conduct towards Plaintiffs, they sustained losses which were fully described in other parts of this Complaint.  The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.   These damages are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

## COUNT XII:

### PROMISSORY ESTOPPEL, EQUITABLE ESTOPPEL, AND DETRIMENTAL RELIANCE (AGAINST ALL DEFENDANTS)

229.     Plaintiffs re-allege and incorporate all provisions above and below as if fully incorporated.  The claims in this Count are alleged in the alternative, and in addition, to each other. They are alleged in the alternative, and in addition, to the claims in the other Counts.

230.     Defendants were materially responsible for misrepresentations and/or omissions made at the time of the credit and grower's agreements, prior, and following.

231.     Plaintiffs at all times relevant and material relied on these misrepresentations and omissions, and it was reasonable for Plaintiffs to rely upon them.  Plaintiffs materially changed their position, incurred costs, expenses, efforts, and other losses and reasonable, detrimental reliance upon promises made by one or more Defendants, as well as misrepresentations, and/or omissions by them.

232.     Plaintiffs' claim that regardless of their inability to recover against any particular Defendant pursuant to this Count, Plaintiffs shall nevertheless maintain the right to recover against any other Defendant.

233.    Defendants should be equitably estopped from denying responsibility for all losses and damages as a result of Plaintiff's reasonable, detrimental reliance upon promises made by one or more Defendant'smaterial omissions and/or misrepresentations.

234.    As a direct and proximate cause of all Defendants' conduct towards Plaintiffs, they sustained losses which were fully described in other parts of this Complaint.  The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.   These damages are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

## COUNT XIII:
## CIVIL CONSPIRACY

235.    Plaintiffs re-allege and incorporate all provisions above and below as if fully incorporated.  The claims in this Count alleged in the alternative, and in addition, to each other.  They are alleged in the alternative, and in addition, to the claims in the other Counts.

236.    All Defendants are reasonably believed to have worked together to accomplish the unlawful purpose of depriving Plaintiffs' of contractual rights, and/or committing torts, and/or otherwise causing Plaintiffs' losses as more fully described in the other parts of this Complaint.

237.    In the alternative and in addition, Defendants may claim a lawful purpose, yet collaborated and worked together to unlawfully carry out any alleged lawful purpose.  Defendants conspired so as to cause Plaintiffs' losses and damages when considering all factors including but not limited to their misrepresentations and/or omissions.

238.    As a direct and proximate cause of all Defendants' conduct towards Plaintiffs, they sustained losses which were fully described in other parts of this Complaint.  The losses and damages suffered as a result of the claims in this Count are meant to include all categories and

types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.   These damages are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

## COUNT XIV:

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST ALL DEFENDANT

239.    Plaintiffs re-allege and incorporate all provisions above and below as if fully incorporated.  The claims alleged in the alternative, and in addition, to each other.  They are alleged in the alternative, and in addition, to the claims in the other Counts.

240.    Defendants, STINE SEED COMPANY, KEVIN COOPER, GREG CRIGLER, B&B AG and CONCEPT AG acted without right or good cause so as to engage in actionable conduct interfering with the contractual relations between the other Defendants and Plaintiff.  In the alternative and in addition, Defendants, STINE SEED COMPANY, KEVIN COOPER, GREG CRIGLER, B&B AG and CONCEPT AG acted in bad faith when it engaged in actions it knew of and should have known would result in the receipt of altered and inferior seeds by Plaintiffs the other Defendants and Plaintiff and where in all parties knew of or should have known damages would result.

241.    As a direct and proximate cause of all Defendants' conduct towards Plaintiff, they sustained losses which were fully described in other parts of this Complaint.   The losses and damages suffered as a result of the claims in this Count are meant to include all categories and types of damages otherwise mentioned in this Complaint, as well as otherwise available pursuant to any laws implicated by the facts and allegations of this Complaint.   These damages are also a direct result of discriminatory animus toward all Plaintiffs by all Defendants due to Plaintiffs' race.

## DAMAGES

242.    Plaintiffs re-allege and incorporate all averments set forth in all paragraphs above as if fully incorporated herein.  Plaintiffs suffered losses and damages as set forth below and incorporated herein. Plaintiffs reserves a claim for punitive damages for conduct which was willful and/or wanton and/or in reckless disregard for his civil rights as well as in reckless disregard for the above law (as they alleges the conduct was), and otherwise in reckless disregard for Plaintiff or which was wanton, or willful or in other form so as to preserve a claim for punitive damages as Plaintiff alleges the conduct was.

243.    Defendants acted in reckless disregard for Plaintiff's civil rights and for the law, and for Plaintiff in its actionable conduct giving rise to the above claims.   In the alternative and in addition, Defendants' actions against Plaintiff were of the kind and character to support all damages referred to in this Complaint including but not limited to punitive damages.   As a direct result of this unlawful switching and replacement of certified seeds with seeds of inferior germination, purity and vigor all Plaintiffs' suffered losses as a result of soybeans yields than those experienced by similarly situated white farmers.

## RELIEF

244.    CONSOLIDATED PRAYER FOR RELIEF TO BE APPLICABLE TO ALL ABOVE SEPARATE CLAIMS INDIVIDUALLY AND TOGETHER.  (THE BELOW IS INCORPORATED INTO ALL ABOVE COUNTS AND CLAIMS AND DEMANDED AS A RESULT OF THE ACTIONABLE CONDUCT DESCRIBED ABOVE.)

WHEREFORE, PREMISES CONSIDERED, PLAINTIFFS RESPECTFULLY PRAYS that the Court cause service to issue in this cause upon the Defendants and that this matter be set for trial on each separate claim(s) in each separate Count.   Upon trial by jury thereon, Plaintiffs

pray that the following relief be granted separately for each Count, claim, or cause of action against each Defendant:

1.   All pecuniary losses proximately caused by Defendants' unlawful conduct, as well as all other fair compensation for the acts and omissions referred to;

2.   Treble Damages against all Defendants and attorney's fees in an amount to be determined by the jury for damages described

above and herein and above the minimum jurisdictional amount.  Those damages include but are not limited to (recovery for the following categories of damages are sought in the alternative and in addition to each other): compensation for past, present, and future emotional distress or non-economic losses; past, present, and future out of pocket costs and attorney fees; past, present, and future loss of enjoyment of life; past, present, and future pain and suffering; past, present, and future mental anguish; past, present, and future lost income and/or lost revenue and/or lost profits and/or lost business opportunity; loss of revenue earning capacity; costs related to medical or mental health treatment which might occur in the future if OR which Plaintiffs might be recommended to have, or which he might have been recommended.  Recovery is fully sought to be calculated based on each separate claim and cause of action individually possible.  Plaintiff's pray for a right to a jury trial under the Constitution for each claim. Plaintiff'spray for all other compensatory damages, and other damages he may legally recover.  Plaintiffsalso claim all costs, pre-judgment interest, post-judgment interest, costs of this action, expenses of this action, expert witness fees and reasonable attorney's fees and <u>any other damages allowed under actions brought pursuant to all above laws, under which Plaintiffsspecifically intends to bring this Complaint</u>; and

3.   Plaintiffs pray for punitive damages in the maximum amount allowed by law.

4.   Such further relief as is deemed just and proper. Plaintiffs claim all categories of

damages recoverable in this action including but not limited to all compensatory and punitive damages.

## JURY TRIAL DEMAND

Plaintiffs demands a jury trial on all matters raised by the Complaint

**as Respectfully Stated Herein pursuant to the U.S. Constitution.**

RESPECTFULLY SUBMITTED, this the 25th day of   September, 2018.

FOR THE PLAINTIFFS,

> THOMAS BURRELL, DAVID ALLEN HALL,
> YRONE  GRAYER,  WALTER  JACKSON  and,
> MONIQUE JACKSON.

BY:    /S//Paul A. Robinson, Jr., ESQ

PAUL A. ROBINSON JR., ESQ.

Paul A. Robinson Jr., Esq., (014464))
THE LAW OFFICES OF PAUL ROBINSON, PLLC
3749 Marty Street
Memphis, Tennessee 38109
Tel: (901) 649-4053
Fax: (901) 649-4053
Email: problaw937@hotmail.com

I hereby certify that a copy of the foregoing has been served upon all parties on the court's matrix as set forth below via the court's   electronic   notification   system.

/s/ Paul A. Robinson Jr.

Paul A. Robinson Jr.


Annie Christoff
Michael Kappellas
 Bass Berry & Sims, PLC
100 Peabody Place, Ste.
1300 Memphis, TN 38103
901-543-5939 (T)
901-543-5999 (F)
 acristoff@bassberry.com
Attorneys for Defendants
B&B, Inc. and Kevin Cooper

Daniel Van Horn
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
901-680-7200 (T)
 901-680-7201 (F)
danny_vanhorn@butlersnow.com
Attorneys for Defendants Concept AG and Greg Crigler
 Paul C. Peel
Farris Bobango Branan, PLC
 999 South Shady Grove, Suite 500
Memphis, TN 38129
901-259-7100 (T)
 901-259-7150 (F)
 ppeel@farris-law.com Attorneys for Defendant AgriSelect, LLC

Joseph Koury
Allen Summers Simpson Lillie & Gresham
 80 Monroe Ave., Ste. 650
Memphis, TN 38103
901-763-4200 (T)
901-684-1768 (F)
jkoury@allensummers.com
Attorney for Defendants Stine Seed, Myron Stine and Kevin Ryan


Jack A. Simms
 Katherine P. Chiarelo

Maria Amelia Calaf
Wittliff Cutter Austin, PLLC
1803 West Avenue Austin, TX 78701
512-960-4865 (T)
512-960-4869 (F)
jack@wittliffcutter.com
Katherine@wittliffcutter.com
mac@wittleffcutter.com
Attorney for Defendants Stine Seed, Myron Stine and Kevin Ryan