## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

**DAVID ALLEN HALL**
**THOMAS BURRELL**
**TYRONE GRAYER**                                    **CASE NO.: 1-18-CV-02265-JTF-tmp**
**WALTER JACKSON and**
**MONIQUE JACKSON, his Wife**

                                                                            **PLAINTIFFS**

**V.**

**STINE SEED COMPANY**
**KEVIN COOPER**
**KEVIN RYAN**
**GREG CRIGLER**
**CONCEPT AG.**
**B&B, INC.**
**AGRISELECT, LLC.**
**UNKNOWN STINE SEED BREEDERS**
**UNKNOWN FARMERS AND PLANTERS**

                                                                            **DEFENDANTS**

### RICO FILING STATEMENT

Plaintiffs, Thomas Burrell, David Allen Hall, Sr., Walter and Monique Jackson and Tyrone Grayer, ("Plaintiffs") herewith submit their RICO Filing Statement, which includes the facts that Plaintiffs relied upon to initiate his RICO complaint ("Complaint") as a result of the "reasonable injury" required by Fed. R. Civ. P. 11.

**1. State whether the alleged unlawful conduct is in violation of Title 18 U.S.C. § 1962(a)(b)(c) and/or (d)….If you allege violations of more than one subsection of Section 1962….each must be treated or should be pled as a separate RICO claim.**

- 1962(a), (b), (c) and (d).

**2. List each defendant, and separately state the misconduct and basis of liability of**

1

**each defendant.**

- STINE Seed Company ("Stine"). At all times relevant to the Complaint, Stine is held out in the seed industry as being the world's largest private seed company, and the largest independent seed company in the U.S. It has over 900 patents, specializing in soybean and corn genetics (Certified Seeds) and is based in Adel, Iowa. Stine's soybean seeds are also tolerant to herbicides and other weed control products referred to as "Liberty Link" soybeans. As such, any Stine soybean that is "Liberty Link" tolerant must, necessarily, be sprayed "only" with herbicides (weed control) that conform to the Liberty Link traits — whether produced by Stine or some other "Liberty Link" breeder. By example, any herbicide that is Liberty Link "ready" (tolerant) can be applied as a weed killer on soybeans produced under the liberty link trait whether (1) the soybeans were grown by Stine or some other breeder, (2) whether the soybeans are certified or not (soybean grown in previous years) and/or (3) whether the variety is suitable for a particular area or region of the soybean growing states or not. Therefore, soybean farmers who purchase Stine's Liberty Link soybeans will be limited to using only certain herbicide products after they make the decision to plant Stine's Liberty Link in their fields.

It is estimated that Stine produces over 200 varieties of genetically modified soybean seeds that are sold in states throughout the soybean producing regions of America. Moreover, Stine requires its certified seed customers (framers) to sign a Seed Use Agreement otherwise promising, among other things, that the customer will not make any efforts to re-plant any harvested certified seeds (progeny) in any following years and/or sold for seed and/or breeding purpose as follows:

> In consideration of the foregoing, and in consideration of the Seed that User has been sold or otherwise granted the right to use, User hereby acknowledges and agrees that the production from the Seed will be used only for **feed or processing**, and will not be used or sold for seed, breeding, or any variety or hybrid improvement purposes unless User has a

valid agreement with STINE for such purposes. User acknowledges STINE and its suppliers have a proprietary interest in the use of subsequent production from the Seed, and agrees it would be a violation of this Agreement to allow the subsequent production of the Seed to be used to create any seed variety or seed product from said production. Any export of this Seed or its progeny from the country of purchase is strictly prohibited, except that forage or grain may be exported solely for use in feeding or processing.

However, Stine as a certified seed purveyor is required to follow and adhere to the federal seed laws otherwise codified under 7 CFR Part 201 — Federal Seed Act Regulations and it's pertinent parts §§ 201.1 – 201.78 and 7 U.S.Ch. 37.  Some of the basic information that should be included on each tag includes, for example, the following:

§ 201.9  **Kind and Variety** - this may include the species or common name, and cultivar or variety name of the plant and distinguishes it from other seeds of the same kind.

§ 201.13 **Lot number** - defined quantity of seeds identified by a lot number or mark, every portion or bag of which is uniform, within permitted tolerances, relative to the factors which appear in the labeling.

§ 201.5  **Origin** - location identifying where the seed was grown. This may be listed as a state or may be a more specific location as with Pre-Varietal Releases.

§ 201.6  **Germination** – (% Germination) a germination test determines the capability of a seed lot to produce normal seedlings under favorable controlled conditions.

Most Stine certified seeds (Liberty Link soybean varieties, etc.) sold for approximately **FIFTY-FIVE DOLLARS** per bushel in the spring of 2017.   By contrast, an average price of **EIGHT DOLLARS** per bushel was what American soybean farmers realized when the soybeans were taken to market (**feed and processing**) in September through December of 2017.  More importantly, if Stine certified soybean seeds are not sold for planting in the year (2017) following the year that the seed breeder received certification (2016), those remaining or left over soybeans will be sold as feed and/or for processing (see STINE user agreement) (User hereby acknowledges and agrees that the production from the Seed will be used only for feed or processing, and will not be used or sold for seed, breeding, or any variety or hybrid improvement

3

purposes).  A certified seed is a seed that is the progeny of the first generation seed.  If you try

and sell the seed in years subsequent it is an old stock soybean for feed and processing only —

**EIGHT DOLLARS** per bushel and will not be considered certified soybeans if held over (old

crop) for planting in the spring of 2018.  However, the injury to plaintiffs was directly related to

the fact that the seeds that were planted by Plaintiffs were of inferior quality and varieties that

was foreseeable and a natural consequence of defendants scheme to obtain money by providing

Plaintiffs with old stock and inferior seeds.  No other independent factors account for plaintiff's

injuries.

On March 3, 2017, Stine was one of hundreds of exhibitors at the 67[th]Annual Mid-South

Gin and Farm Show which was held in Memphis, Tennessee.  This even was highly published

and advertised to farmers and ranchers through the Mid-South area to include, but not limited to,

Tennessee, Missouri, Kentucky, Mississippi, Louisiana and Alabama. On Friday, March 3, 2017

a group of African American farmers were in attendance at the show and exhibition and visited

the site where Stine had two sales representatives to explain and attempt to obtains sales

agreement with these farmers.

It should be noted, however, unlike other seed breeders who use middle-men (general

store) distributors (farm and ranch supply wholesalers, *i.e., Sanders Seed Company*, *Helena*

*Chemical Company, Green Point Ag* and/or *Crop Production Supply)*.  Stine, at least in the

Tennessee and Mississippi area has a policy of using its own sales representatives to be the sale

persons, delivery person and warehousing and distributors of its certified soybean seeds.  That is

to say that the sales persons are the order taker, delivery persons, seed treatment persons, seed

storage person — all in one.  A Stine sales representative was responsible for taking credit

applications, executing technology agreements, selling and delivering seeds, collecting unused

seeds, mailing invoices to customers and collecting payments from customers via electronic and transmissions and/or telephone communications.

- Kevin Cooper. At all times relevant and material to the Complaint, Cooper was employed by Stine Seed Company as a Sale's Representative in the Tennessee and Mississippi areas (Region # 19). As such, Cooper was a key and dominant figure representing Stine in the application for credit and technology agreements with Stine. Cooper had control "over" and operated, directed and managed the Stine affairs at all times material to the Complaint. He was the person who would place order from Stine's seed breeder in Arkansas and elsewhere. He arranged for the transportation, storage and delivery of Stine soybeans to Stine end users. Cooper was responsible for mailing invoices and collection of account owing to Stine. To the extent that, here again, that Stine chose not to use local farm supply distributors to otherwise sell, store, treat and deliver its soybean seeds, Cooper was virtually the only person that farmers interfaced (chain of command) with in the Stine corporation — as a direct result of Stine policy of not utilizing traditional farm suppler chain purveyors. This practice of Stine to avoid using the system of the general store created an opportunity for incidents of criminal activity such as occurred in the instant case by Stine using or applying some external organizing principle that renders them ordered or arranged or part of a common plan such as existed in the instant case. Because of the external organizing principle affecting the structure of the enterprise (avoiding the general store) was such that it invited a scheme such as occurred in the instant case. The lack of oversight provided by Stine afforded Cooper and others the opportunity to execute a common scheme or plan to defraud the plaintiff's in this case.

On March 3, 2017 Cooper was one of two sales representatives sent by Stine to represent it at the 67th Annual Mid-South Farm and Gin Show held in Memphis, Tennessee. This gin

show was highly publicized and advertised throughout — no only Tennessee — but the entire Mid-South through newspapers, television and radio.  Farmers and ranchers from states like Kentucky, Missouri, Arkansas, Mississippi, Alabama and Louisiana were present at this annual event.

Among those attending the show on March 3, 2017 were three African American farmers named, Tyrone Grayer, Walter Jackson and Keith White of Mississippi.  At least one of these farmers have stated that they stop by the exhibition booth where Stine and Cooper were situated and after leaving the Stine booth he was followed by Cooper while visiting the booth belonging to another seed company and Cooper insisted that he return back to the Stine booth.  Cooper convinced that Stine's Liberty Link varieties were excellent in curb and killing "weeds."

On or about, April 1, 2017 Walter Jackson called Burrell and indicated the Cooper was wanting to know if he (Jackson) knew of any other farmers who might be interested in purchasing Stine Seeds and wanting to try Stine's Liberty Link. On April 10, 2017 Cooper call Burrell and Hall in Burrell's office in Memphis, Tennessee and informed both Hall and Burrell that they would need to complete a buyer Use Agreement with Stine Seeds and that Hall would be the person who would fill out a credit application with Stine to establish a line of credit for both Burrell and Hall.

On Saturday, May 6, 2017 after the credit application and user Agreements between Hall and Burrell and Stine were approved Cooper wanted to meet with Burrell on the farmland located in Rome, Mississippi to do, as he stated, make a determination as to which Stine soybean varieties would work best on the land.  At approximately 1:15 P.M (May 6th).  Cooper drove and met Burrell on West Minot Road where a 120 acre tract of the total 2,500 acres of land on which Burrell planned to plant soybeans.  Cooper walked over a certain section of the 120 acres and

declared that a variety known as 49LD02 would be the best variety for both yields and the control of pig weeds.  Moreover, when asked if he needed to see the other section of land Cooper indicated that he was almost out of gas and needed to get to a service station and left after only a brief stay of no more than 20 minutes.

Moreover, Cooper wanted to know if we would allow him to sell at least enough Stine seed to plant approximately 2,000 of the 2,500 hundred in the 2017 operation.  Burrell declined to agree to that amount on the basis that he had no experience with planting Stine seeds and wanted to see how that would stack up with the seed that he had been planting for the last several years.

On Saturday, May 13, 2017 the first order of Stine seeds were delivered from a Stine seed breeder in Northwestern Arkansas and the seeds were transported from Arkansas and delivered to a warehouse in Sledge, Mississippi where they were treated with inoculants and insecticides by Cooper and his associate Greg Crigler.  Moreover, the Stine certified seeds were in 2,200 pound jumbo bags where they were removed and treated and subsequently replaced back into the original Stine jumbo bags and delivered to Burrell in Rome.  On the afternoon of May the 13th, 16th and 17th of 2017, Burrell planted the Stine seed so delivered on the 13th.  On Sunday, May 21st Burrell planted another 200 acres of the Stine varieties, but was stopped by rainfall later that evening. Therefore, these seeds having ample moisture should have germinated and sprouted within 48 hours.  However, on May 27th, the following Saturday Mr. Burrell did an inspection of the field that was planted on the 21st and noticed that the soybeans had not started to sprout.

Burrell became concerned when the seeds planted on the 21st had not started to germinate (sprout) as of the following Saturday, May 27th, 2017— five days later.  It should have taken no

7

more than 30-48 hours for the soybeans planted in soil with ample moisture to take root, sprout
and germinate.

From June 12th to the 25th of 2017, Cooper visited the farmland where the Stine seed had
been planted and indicated that he thought the Stine varieties were suffering from dicamba drift
because the leaves were exhibiting a "curling" of sorts. Cooper's dicamba argument was simply
pretext to explain away the low yield which was a foreseeable and natural consequence of
Cooper's scheme to sell inferior and none certified seeds to Burrell which low yields would be
revealed later in the growing season.

Moreover, On June 12th, 2017 Cooper had made arrangement for a company known as
Agri Select to be the company providing the herbicides (Liberty Link) tolerant and otherwise
suitable for the spray and killing of weeds that were starting to emerge into the Stine soybean
plants.

- Greg Crigler.  At all times relevant to the Complaint, Crigler was employed by a
Company from Charleston, Missouri named Concept Ag.

- B&B Ag. At all times relevant to the Complaint, B & B Ag is owned by Kevin
Cooper.  As such, B & B Ag. was created by Cooper for the sole purpose of treating
soybean seed.  Moreover, Cooper insisted that all of the varieties of Stine certified seed that he
sold should be treated.  Typical soybean treatment involves coating the soybean seed with liquid
that contains either (a) inoculant (b) fungicide (c) insecticide (4) biological and/or fertility and to
allegedly aid the development of the root system and protection against insects while the soybean
seedlings are young.  Moreover, coating and treating the seeds with inoculants (red and/or green
coloring) provided a masking and camouflaging of sort that gave the appearance that the seeds
was new.  B&B Ag was owned by Kevin Cooper who was able to leverage the sales contracts

from STINE to plaintiff to obtain the necessary credit with Concept Ag for the seed treatments

(inoculants) otherwise used to coat the inferior seeds obtained from Greg Crigler.  B&B Ag was

created directly as a result of the sales potential and volume of business from the sale of inferior

seeds sold to plaintiffs by STINE.  Again, B&B Ag did not exist at the time its owner, Kevin

Cooper met plaintiffs the gin show in Memphis in March of 2017 nor during the time that

Cooper was arranging financing for plaintiff in April of 2017.   Defendant, B&B Ag creation was

a direct result of income derived from a pattern of racketeering activity that was acquired,

established and operated an enterprise by its owner and Defendant, Kevin Cooper.

Concept Ag.  Concept Ag is vicariously liable for the racketeering conduct of its employee

Greg Crigler.  Vicarious liability may be imposed on a corporate defendant under section 1962(a)

only if the corporation, through its upper level employees or officers, knew of or acquiesced in the

racketeering conduct of its lower level employees.  See, <u>Banque Worms v. Louis A. Duke Pena E.

Hijos, Ltd.</u>, 652 F. Supp. 770 (S. D. N. Y. 1986).  Concept Ag's upper level employees and officers

acquiesced in the conduct of Greg Crigler failed to supervise the activities of Greg Crigler and

benefited from the racketeering activity of Greg Crigler.

- Agri Select, Inc.  Agri Select received income derived directly from a pattern of

racketeering activity…to use or invest in acquisition of an interest in or operation of an

enterprise… which is engaged in or affects interstate or foreign commerce.  Secondly, Agri

Select profited from the sale of the herbicides (weed killer and foliar fertilizer) to plaintiffs

herein.  Agri Select received profit from the sale of herbicides (weed killer and foliar fertilizer).

Here again, Courts have held that for RICO purposes there is no meaningful distinction between

income fraudulently acquired and income fraudulently obtained.  Both result in funds not

otherwise available but for the fraud.  See <u>Anza v. Ideal Steel Supply Corp</u>., 547 U. S. 451

(2006). But for the fraud Agri Select would not have received the $100k in sales revenue from

which Agri Select in turn derived a benefit.  The corporation Agri Select is the beneficiary of its

associate Kevin Cooper's racketeering activity. A finding of vicarious liability on the part of an

enterprise is available when as in the instant case the enterprise derived a benefit from its

associate wrongful acts. Kevin Cooper expressly directs the plaintiffs herein to make a check

payable to Agri Select.

- Stine Seed Company is one of the largest private seed breeders in the United

States. It has over 900 U.S Patients and has over 200 varieties of genetically engineered soybean

varieties.

- B&B Ag is seeds Treatment Company owned by Kevin Cooper.  Concept Ag is a

company primarily selling the ingredients for the treatment of a variety of agricultural seeds

(soybeans, corn and wheat). Agri Select is a chemical (herbicides) manufacture and seller of

weed control for certain "Liberty Linked" soybean tolerant seeds.   It was created in 2017 to treat

soybeans seeds that have been sold to customer otherwise purchasing seed from Stine seed

Company

- Myron Stine and Stine Seed Company allowed Stine Seed employee's and agents

to employ an external organizing principle whereby they could avoid the use of the age old and

well established general store (policy) in Tennessee and Mississippi without adequate and proper

oversight.  Unlike other seed breeders who use middle-men (general store) distributors (farm and

ranch supply wholesalers (*Sanders Seed Company*, *Helena Chemical Company, Green Point Ag*

and/or *Crop Production Supply)*).  Stine, at least in the Tennessee and Mississippi area has a

policy of using its own sales representatives to be the sale persons, delivery person and

warehousing and distributors of its certified soybean seeds.  That is to say that the sales persons are the order taker, delivery persons, seed treatment persons, seed storage person — all in one. Stine's sales representative is responsible for taking credit applications, executing technology agreements, selling and delivering seeds, collecting unused seeds, mailing invoices to customers and collecting payments from customers via electronic and transmissions and/or telephone communications.  Stine benefited from the external organizing principle in that they maximized profits Stine could generate more sales by selling direct to farmers.   However, Stine and Myron Stine failed to maintain the necessary oversight of agents that they allowed to operate in Tennessee and Mississippi.  For example, when Mr. Burrell spoke to Myron Stine on/or about October 15th, 2017 alerted him to the situation Myron Stine sent out an agronomist to inspect and evaluate the soybean fields in Rome, MS.  That inspector, one Kevin Ryan, took no samples, performed no tests and made no effort to determine the source of the low yielding seeds after acknowledging "you definitely have a yield problem."  Even upon Kevin Ryan's own determination of a yield problem Stine Seed Company and Myron Stine made no further effort to analyze, evaluate or address the problem in any way.

- Myron Stine. Made the decision to allow Stine Seeds to operate in Tennessee and Mississippi without the use of the general store (policy) and Stine benefited from the fraud. Moreover, Myron Stine became a willing participant after the telephone call with Thomas Burrell. Likewise, all Plaintiffs suffered losses to their business and property by reason of Stine's decision which was reasonable and foreseeable and a natural consequence of the RICO pattern of racketeered activity.

- Kevin Ryan.  Defendant, Kevin Ryan — *an outsider* — was employed by STINE Seed company and associated with the enterprise because he became a willing participant in the direction of the enterprise's affairs after his visit to the plaintiff's fields in October of 2017. Ryan indicated to David Hall and Thomas Burrell that STINE could identify where every lot number of soybeans came from.  To be a certified producer of certified seeds the federal seed act codified at 7 CFR section 201 requires that every portion or bag be labeled with its kind and variety, its lot number, origin and its germination.  Burrell and Hall in the fields on that day in October 2017 requested of Ryan to take samples and test for purity and to determine whether these plants in that field were indeed the progeny of certified STINE seeds.  Burrell advised Ryan that they had purchased the variety 49LD02.  Ryan refused to take samples and conduct tests.  Here he was in the field as Chief Agronomist sent to the fields after Burrell and Hall had contacted STINE at their headquarters.  Burrell had contacted the headquarters and indicated that the seed yields were woefully low, the plants had not developed as they should and did not sprout.  Mr. Burrell had been referred to Myron STINE and his call was transferred to Myron STINE at which time Mr. Burrell reiterated his concerns to Myron STINE and had asked that they investigate to determine what had transpired regarding the seeds.   Myron STINE indicated to Mr. Burrell that he needed to involve his agronomist and he would have that agronomist to contact Mr. Burrell. Mr. Burrell subsequently was contacted by the agronomist Mr. Ryan.  Mr. Ryan arranged a meeting to come to the field where the seeds were planted.  Mr. Ryan arrives and goes to the field with Mr. Burrell and Mr. David Alan Hall.  Mr. Ryan comments you definitely have a yield problem here.  Mr. Burrell requests of Mr. Ryan to take samples and test them for purity and to determine whether these plants were indeed the progeny of certified STINE seeds.  Mr. Burrell had received a letter in August of 2017 from a STINE employee, Mr. Chuck Hansen, stating there

may be an opportunity for Mr. Burrell and Mr. Hall to become STINE seed breeders. Mr. Burrell had an earlier conversation in August 2017 with another employee, Chuck Hanson, at the STINE headquarters regarding an opportunity for Burrell and Hall to sell harvested STINE seeds back to STINE for the purpose of creating a certified seed supply for the year of 2018, i.e. to become a breeder. Mr. Burrell responded to the letter by contacting Mr. Hansen via telephone. Mr. Burrell inquired whether they needed to send someone down to inspect the fields prior to harvesting. Mr. Hansen indicated that no and they were able to determine the progeny whatever state, whether they were harvested in a grain silo or still standing in the field. Plaintiffs know then that they have the technology to determine the origin of all their varieties of seeds. It was this conversation that led Mr. Burrell to request of Mr. Ryan as to whether he would conduct a test as Mr. Burrell had spoken to Mr. Hansen two months prior in August. This being the same visit wherein Ryan (a) indicated that STINE could identify where every "Lot Number" of soybeans came from and Ryan (b) instructed David Hall and Thomas Burrell to send samples of seeds to Mississippi State University for testing. Moreover, Ryan's refusal to test any soybean plants belonging to the STINE varieties was in furtherance of covering for Kevin Cooper's and Greg Crigler's scheme

   **3. List the wrongdoers, other than the defendants listed above, and separately state the misconduct of each wrongdoer.**

   Other persons whose identities are currently unknown to Plaintiffs may have participated in the wrongdoing. If so, Plaintiffs will supplement this statement as necessary.

   **4. List the victims, and separately state when and how each victim was injured.**

- Thomas Burrell as the victim of the RICO violations alleged in the Complaint.

- Burrell was at all times the person for whom the land upon which the Stine

Seeds were sold and planted have suffered injuries to his business and property by reason of a violations of RICO's criminal prohibitions.

13

- Thomas Burrell as the victim of the RICO violations alleged in the Complaint was directly injured in his business and property by the pattern of racketeering/criminal activities by the defendants.   Burrell was at all times the person for whom land upon which the Stine seeds were planted (2,000 acres) has suffered concrete injuries to his business and property by reason of a violation of RICO's criminal prohibitions by the conduct of Kevin Cooper constituting the violations.  On May 6, 2017 defendant Kevin Cooper did telephone plaintiff and arranged to visit his farming operation for the specific purpose of determining the specific Stine certified soybean varieties that would be best suit for plaintiff's planting operation.   Plaintiff relied upon the misrepresentation made by Kevin Cooper to his detriment.   These injuries became "ripe" when indeed plaintiff's harvesting of the purported Stine soybeans yields were woefully low.   In fact, the one soybean field (120 acres) yielded less than FIVE bushels per acres.  This is also the same tract of soybeans that were tested by the Mississippi State University ("MSU") in December of 2017 — with zero germination.  This tract of soybeans produced approximately $2,400.00 (120 x 5 bu. x $4.00) in revenue and the price for planting this field was approximately $6,600 for the seeds alone ($55.00 x 120 acres).  Plaintiff was forced to sale the soybeans from this tract for approximate $4.00 per bushel.  Therefore, the total revenue from this 120 acre tract was less the cost associated with the purchase of the soybeans themselves ($55.00 per bushel) alone. Moreover, due to the low quality of the harvested seeds, plaintiff was unable to get a major buyer (Bunge Grain Company who had purchased other fields of soybeans) to purchase the soybeans harvested from the 120 acres tract of land.   These injuries are concrete, actual and definite and are not speculative, attenuated and or amorphous.  These financial losses and corresponding injury to plaintiff's property and business are attributable to only one factor — inferior seeds.

- Hall was a victim. David Hall has been victimized in that he has been billed

14

by defendants from inferior seeds and herbicides for the spraying of the inferior seeds in amounts exceeding $150,000.

- Walter and Monique Jackson were victims. Plaintiff, WALTER JACKSON avers that his soybean fields which were planted in May of 2017, with the Delta Grow — under similarly planting and growing conditions — yielded approximately 48 bushels per acre: that the STINE Seeds yields were approximately 24-25 bushel per acre (less than half of the Delta Grow varieties).

**5. Describe in detail the pattern of racketeering/criminal activity or collection of unlawful debts for each RICO claim. A description of the pattern of racketeering/criminal activity shall:**

a. Separately list the predicate acts/incidents of criminal activity and the specific statutes violated by each predicate act/incident of criminal activity.

Multiple acts of wire fraud and mail fraud were committed in contravention of 18 U.S.C.

§§ 1341, 1343.

b. Separately state the dates of the predicate acts/incidents of criminal activity, the participants and a description of the facts surrounding each predicate act/incident of criminal activity:

The following predicate acts were committed as Stine, to include, among other things, (1) an electronic (wire) credit application from Stine to Walter and Monique Jackson on March 28th, 2017 (2) an electronic transmittal (wire) to Walter Jackson regarding a licenses (User Agreement) to use Stine certified Seeds on March 31st , 2017 (3) an electronic email (wire) from Stine/Bayer on May 9, 2017 to Thomas Burrell regarding licenses (4) an electronic credit application from Stine to David Hall on April 11th, 2107 (5) an telephone text message from

Kevin Cooper on May 19, 2017 to Thomas Burrell (6)  transmittal from Stine to David Allen

Hall on May 8, 2107 (7) an telephone text message from Kevin Cooper to Thomas Burrell on

May 22, 2107 (8) a telephone text message from Kevin Cooper on June 8, 2017 to Thomas

Burrell regarding seed treatment payment for $13,000.00 (9) telephone text message regarding

Greg Crigler's address and payment instructions to Thomas Burrell on June 14, 2017 (10) a

telephone text message from Kevin Cooper to Thomas Burrell on June 28, 2107 regarding Stine

seed bill be due on June 30th, 2017 (11) a telephone text message from Kevin Cooper to Thomas

Burrell regarding 4 bulk bags of treated seeds for delivery on June 29, 2017 (12) a telephone text

message from Kevin Cooper to Thomas Burrell on July 5, 2017 regarding check being made out

to AgriSelect for chemicals (13) text message from Kevin Cooper to Thomas Burrell on July 14,

2017 Stine Bill and seed treatment bill (14) text message on August 14, 2017 from Kevin Cooper

to Thomas Burrell regarding want to see if Hall could send another $5,000.00 check (15) text

message on October 13, 2017 from Kevin Cooper to Thomas Burrell.

      c.   If the RICO claim is based on the predicate offense of wire fraud, mail fraud, fraud in

connection with a case under Title 11, United States Code,…the "circumstances constituting the

fraud or mistake shall be stated with particularity[.]"  Fed. R. Civ. P. 9(b). (identify the time,

place, and content of the misrepresentations or omissions, and the identity of persons to whom

and by whom the alleged misrepresentations or omissions were made);

      The misrepresentations were made from March 3, 2017 through November of 2017 by

Kevin Cooper to Walter Jackson on or about April 1, 2017 that Cooper would deliver Stine

genetically engineered (GMO) soybean seed varieties 49LD02 as per the credit and User

Agreement otherwise executed by Walter Jackson for the planting of approximately 120 bushels

of said seeds at price of approximately $55.00 per bushel.  Instead, Plaintiff Jackson and his wife

Monique were knowingly sold none Stine Certified of a variety that was not certifiable by Kevin Cooper instead.  On or about May 13, 2107 Kevin Cooper misrepresented that fact that he was delivering Stine genetically engineered (GMO) soybean seeds of the variety of 49LD02 to Thomas Burrell for the purpose of planting approximately 2,000 of farmland in Sunflower County, Mississippi.  On this same date Kevin Cooper misrepresent that the variety 49LD02 would also benefit from the treatment of inoculants otherwise sold by his company B&B Ag. and Concept Ag of Charleston, Missouri.   On or about May 12th, 2017 Kevin Cooper misrepresented to David Allen Hall that the invoices for seed treatment of seeds was for the benefit of the Stine seed varieties 49LDO2's which were previously delivered to Thomas Burrell. On July 18th and August 11th, 2017 Greg Crigler misrepresent that he was requesting payment for chemicals used to treat Stine soybeans sold to David Allen Hall for the benefit of Stine seed varieties 49LD02. Both Cooper and Crigler sent wire transmittals to and between themselves and ultimately to Jackson, Burrell and Hall.

Moreover, the United States Court of Appeals (5th Cir.) has held that, **"once membership in a scheme to defraud is established, a knowing participant is liable for any wire communication which subsequently took place, or which previously took place in connection with the scheme."**  See, United States v. Stalnaker, 571 F.3d 428 (5th Cir. 2009).

d.  State whether there has been a criminal conviction for any of the predicate acts/incidents of criminal activity bear to each other or to some external organizing principle that renders them ordered or arranged or of a common plan.

No.

e.  Describe in detail the perceived relationship that the predicate acts/incidents of

17

Criminal activity bear to each other or to some external organizing principle that renders them "ordered" or "arranged" or "part of a common plan"; and

A plan or scheme to defraud need not depend on one fact in isolation but rather emerges from inferences arising when facts are viewed in their entirety.   Plaintiffs have asserted a pattern of fraud consisting of Cooper's and Ryan's regular transmittal of credit and user agreements throughout 2017.  Each electronic transmission regarding credit and user agreements and seed deliver telephone call/text had the same common plan— to (1) to create a binding obligation against plaintiffs for the payment from the sale of inferior and/or none-certified soybean seeds varieties (49LD02, 49LD03 and 50LD01) from "old stock" on an horizontal plan and (2) create additional sales for products (inoculants/fertilizer) to supposedly protect and further improve the efficiency of those inferior soybean seeds by making the purchaser of those inferior soybeans available to other businesses comprising the "enterprise" on the vertical plan (Stine Seed Company, B&B Ag. Concept Ag and AgriSelect).

Defendants, Kevin Cooper "never" intended to sale genetically engineered (certified seeds) to plaintiffs.  The Stine certified seeds that were billed and invoiced to plaintiffs were delivered instead to other farmers who were customers, relatives and associates to Cooper.

Stine Seed Company, B&B Ag, Concept Ag and AgriSelect related policies for not using the traditional farm supply chain (general store) created the "perfect atmosphere" that allowed Cooper to sale seeds and chemicals, directly and or indirectly to whomever Cooper chose — with absolutely no oversight or checks and balances from Stine, B&B Ag., Concept Ag and/or Agri Select.   It is the pattern of activity of Cooper's and Grigler's acts of "batting and switching" of certified seeds otherwise charged to Plaintiffs but delivered to other farmers and the vertical involvement from the enterprise that renders the pattern order and and/or arranged.

Plaintiffs, therefore, were given inferior seed from and existing "stock pile" of old and low germination "Liberty Link Tolerant" seeds.  Moreover, these old stock (none certified seeds-low germinating) soybean seeds were not of the certified varieties (49LD02, 49LD03 and 50LD01) but were otherwise capable of receiving the chemical and other ingredients (seed treatment) sold by B&B Ag, Concept Ag and Agri Select, Inc. certification and genetics, notwithstanding.

Stine Seed Company, B&B Ag, Concept Ag and AgriSelect allowed Cooper to sale seeds and chemicals, directly and or indirectly to whomever Cooper.   It is the pattern of Cooper's and Crigler's acts of "batting and switching" of certified seeds otherwise charged to Plaintiffs but delivered to other farmers.    Plaintiffs, therefore, were given inferior seed from and existing "stock pile" of old "Liberty Link Tolerant" seeds that were selling for $8.00 per bushel. Moreover, these old stock (none certified seeds) were not of the varieties (49LD02, 49LD03 and 50LD01) but were otherwise capable of receiving the chemical and other ingredients (seed treatment) sold by B&B Ag, Concept Ag and Agri Select, Inc.

The warehouse facility in either Charleston, Missouri or Sledge, Mississippi controlled by Greg Crigler provided a perfect opportunity for the emptying of seeds out of the Stine Jumbo bags into containers that would be used to deliver the Stine certified seeds to other farmers. These same warehouse facilities were also where the "old stock soybean" seeds were then coated (treated) and instead replaced into the Stine Jumbo bags that originally contained the Stine certified seed from Stine Seed Company — that the plaintiffs were billed at the $55.00 per bushel rate.   The plaintiffs believe that they are planting top notch Stine genetically engineered with maximum yield potential, weed control and insect resistance.   Therein lays the scheme to defraud.

The warehouse facility in either Charleston, Missouri or Sledge, Mississippi controlled by Greg Grigler provided a similar opportunity for the emptying of seeds out of the Stine Jumbo bags into containers (hopper bottom bulk containers and/or seed trailers) that would ultimately be used to switch and ultimately deliver the Stine certified seeds to other farmers.   The bating and switching is now complete and the plaintiffs are operating under the notion that they are planting top notch Stine genetically engineered (GMO) seeds with maximum yield potential, weed control and insect resistance.   Moreover, the predicate acts were directed at the same victims by the same methods and the same results by the same participants.

The relationship between the predicate acts and the racketeering/criminal acts combined with the policy (external organizing principle) provided the criminal infrastructure that allowed the defendants to perpetrate crimes — with this degree of sophistication — would have been extremely difficult if not impossible to commit.

Therein lays the scheme to defraud.

f.   Explain how the predicate acts/incidents of criminal activity amount to or pose a threat of continued criminal activity.

To establish a "pattern" of racketeering, a plaintiff must plead at least two predicate acts that are related and that demonstrate continuity.  The allegations in the Complaint support an inference that the activities "project into the future" with a threat of repetition ant that racketeering acts are the defendant's regular way of doing business.   In the Complaint, plaintiffs allege and have provided evidence of more than two predicate acts consisting of wire fraud and mail fraud involving interstate commerce and that the defendant's acts of racketeered activities are related and the enterprise functioned as a continuing unit.   Kevin Cooper committed or caused to be committed at least two predicate acts when he sent (1) the credit applications to

20

Walter Jackson and wife of Mississippi and to David Allen Hall of Tennessee regarding

qualifying for credit sufficient to pay for the delivery Stine Certified Seeds in April and May of

2017 (2) the request for payment from Walter Jackson on March and April of 2017 for the

delivery of Stine Certified Seeds to be sent to Stine Seed company (3) the request for payment on

July 18th, 2017 to David Allen Hall for the Stine certified seeds delivery to Hall for planting (4) a

demand  for payment of Thomas Burrell on/or about July 15th, 2107 for the benefit of Greg

Crigler's truck expenses and (5) the attempts to collect payment of David Allen Hall from Kevin

Ryan for the delivery of Stine certified seeds.  This collection of funds to Stine Seed Company

for non-certified seeds could cause plaintiffs to have to spend sums of money well into the

future.  Moreover, the damage to plaintiff's credit and expenses associated with defending them

against the fraudulent collection of debt and/or usurious interest rate will have a lantern effect on

plaintiffs.  Each transmittal alleged by plaintiffs constitutes a separate predicate act.  In addition,

plaintiffs plead, by way of example, the specific predicate acts of wire fraud set out above in

subpart (C).

Moreover, in as much as Stine Seed Company has, here gain, chosen to use salesman in

lieu of using the services the "general store" (sales, storage and delivery) for its certified soybean

seeds the tactics used by sales representatives (wire and mail) constituted Stine's regular way of

operating that business and the nature of the predicate acts themselves implies a treat of

continued criminal activity.

Additionally, Stine indifference, contempt and abrogation of adhering to the Federal Seed

Law (7 U.S. Chapter 37) and its corresponding labeling and shipment and warehousing of

certified seeds denotes an instance of deceit constituting an underling fraudulent scheme is more

relevant to the continuity of criminal activity.  To be sure, Kevin Cooper's creation of B&B Ag

(his own company) for the specific purpose of coating and treating soybean seeds to cover up any otherwise obvious impurities and aging of inferior and "old stock" soybean seeds proves that he intended to repeat his criminal behavior well into the future. The Gin Show with its ability to attract limited resource African American farmers (where Cooper followed them around) gave him ample opportunity to select his victim with total impunity.

After all, Stine's exhibition booth at the Public forum (gin show) an annual activity of the Stine Seed Company would provide for new victims each and every spring. At and absolute minimum, B&B Ag would not have had any customers for which to treat seeds if Stine certified seeds had been stored at a reputable farm supply distributor. Stine's decision (activity of the enterprise) to avoid the use of traditional farm supplier to sell, store and deliver its seeds to farmers provided the perfect storm. Kevin Cooper, Greg Grigler or any other potential defendants has an absolute perfect environment for defrauding these unsuspecting and unrepresented victims. The predicate acts were performed with the requisite intent so as to constitute violations of 18 U.S.C. §§ 1341, 1343.

But for, the filing of this Complaint, Kevin Cooper and those associated with him would have never ceased to prey upon these and other farmers. Moreover, Kevin Cooper never intended to sale Stine Certified (GMO) seed to plaintiffs.

The United States Supreme Court has said that "relatedness" refers to a connection among the Defendants' criminal acts. That is, related acts are those that serve some common purpose, constitute parts of a common plan, are directed at a common victim or involve the same *modus operandi* or the same perpetrators. Cooper's acts satisfy the relatedness test.

Likewise, each transmission had the same purpose— profiting from delivering "inferior" and "old stock" seeds held over from previous years but being susceptible to the application

(herbicides/inoculants and fertilizer) that the old stock seeds were tolerant to (Liberty Link

Seeds). Cooper's acts of fraud in coating and masking the purity and age of the seeds was plainly

designed to prevent discovery of prior misconduct (providing inferior seeds) may project a threat

into the future.

Again, as alleged in the Complaint, the method of fraud was always the same — the

regular and repeated electronic transmissions of demands for advanced rental payments and/or

the ouster of Burrell from all farms.  All of the victims (plaintiffs) were African Americans

farming in several states who were introduced directly or indirectly to Kevin Cooper at the Mid-

South Gin and Farm Show in March of 2017.  All the victims were sold none certified inferior

seeds and other inputs (chemicals/fertilizers) by the same participants (Cooper, Grigler, B&B

Ag, Concept Ag and AgriSelect).  Moreover, all of the plaintiff's experienced the exact same

results — severe yield losses.  One of the first statements made by Stine's Agronomist, Kevin

Ryan when directed by Myron Stine in Adel, Iowa was. "You definitely have a yield problem."

Hereto, as alleged in the Complaint, the method of fraud was always the same — the

regular and repeated electronic transmissions of demands for advanced rental payments and/or

the ouster of Burrell from all farms.

Lastly, all of the victims (plaintiffs) were African Americans farming in several states

who were introduced directly or indirectly to Kevin Cooper at the Mid-South Gin and Farm

Show in March of 2017.  All the victims were sold none certified inferior seeds and other inputs

(chemicals/fertilizers) by the same participants (Cooper, Crigler, B&B Ag, Concept Ag and

AgriSelect).

6.  **Describe in detail the enterprise for each RICO claim. A description of
each enterprise shall include the following information**:

a.  State the names of the individuals, partnerships, corporations, associations, or other

legal entities which allegedly constitute the enterprise

- The enterprise alleged in the Complaint for Title 18, United States Code, Section 1962 (a) is an association-in-fact consisting of Stine Seed Company, B&B Ag, Concept Ag and Agri Select, Inc.

- The enterprise alleged in the Complaint for Title 18, United States Code, Section 1962 (b) is an association-in-fact consisting of Stine Seed Company, B&B Ag, Concept Ag and Agri Select, Inc.

    b.   describe the structure, purpose, function, and course of conduct of the enterprise;

The structure of the enterprise can also be established by analysis the enterprises pattern of racketeering/criminal activities.  In <u>Boyle v. United States</u>, the Supreme Court held that an association-in-fact enterprise must have at least three structural features: [1] purpose, [2] relationships among those associated with the enterprise, and, [3] longevity sufficient to permit these associations to pursue the enterprises propose.  Here, plaintiffs states that purpose of the enterprise was first, to defraud all plaintiff of their property (money) by  engaging in a scheme of (a) convincing plaintiffs that they would be purchasing genetically engineered seed form Stine Seed Company at the industries going price ($55.00 per bushel) for certified soybean seeds and instead delivering none-certified soybean seeds worth ($8.00 per bushel) with the same weed control tolerance (Liberty Link) as the purported Stine certified seed and pocketing to difference ($47.00)  between the price for otherwise certified seeds and the none-certified (feed stock and/or process soybeans).  Secondly, the enterprise would profit from selling additional chemical for the treating or coating (inoculants) the Stine certified seeds for addition yield increased and ground boring insects.  This was accomplished by the creation and relationship of B&B Ag of Byhalia, Mississippi and Concept Ag of Charleston, Missouri. Thirdly, the herbicides (Liberty

Link) necessary for the application of weed control was sold to plaintiffs by Agri Select of

North, Carolina.   All of these entities' relationship (seed, treatments, herbicides and fertilizers)

was a necessary and vital component to making the plaintiff (farmers) "think" that they were

operating a going concern and operating an otherwise competitive soybean operation.  These

inputs (seeds, pesticides, fertilizers and herbicides) comprise the fundament components of what

is commonly referred to as the "operating elements" of a farming operation.  Whereas, tractors,

plows, trucks and harvesting equipment make up the capital expenditure side of the farming

operation.  The enterprise provided all off the operating components of the plaintiff's soybean

operation.

Moreover, this packaging of operating elements of a farming operation would also

make it very appealing and attractive to limited resource farmers and constitute longevity if the

scheme had not been discovered.

Stine Seed Company is one of the largest private seed breeders in the United States.   It

has over 900 U.S Patents and has over 200 varieties of genetically engineered soybean varieties.

B&B Ag is seeds Treatment Company owned by Kevin Cooper.   Concept Ag is a company

primarily selling the ingredients for the treatment of a variety of agricultural seeds (soybeans,

corn and wheat). Agri Select is a chemical (herbicides) manufacture and seller of weed control

for certain "Liberty Linked" soybean tolerant seeds.   It was created in 2017 to treat soybeans

seeds that have been sold to customer otherwise purchasing seed from Stine seed Company.

c.   State whether any defendants are employees, officers or directors of the alleged

enterprise;

- Cooper was at all time relevant an employee of Stine Seeds Company and is the

sole proprietor of B&B Ag.

25

- Kevin Ryan was at all time relevant employed by Stine Seed Company.

- Myron Stine was at all times relevant an employee of Stine Seed Company.

- Greg Crigler was at all times relevant employed by Concept Ag and a soybean

farmer.

d. State whether any defendants are associated with the alleged enterprise;

- Kevin Cooper is associated with the enterprise.

- Greg Crigler is associated with the enterprise.

- Kevin Ryan is associated with the enterprise.

- Myron Stine is associated with the enterprise.

e. Explain how each separate defendant participated in the direction or conduct of the

affairs of the enterprise.

f. State whether you allege (i) that the Defendants are individuals or entities

separate from the enterprise, or (ii) that the Defendants are the enterprise itself, or (iii) are members

of the enterprise.

Plaintiffs alleges that the Defendants are individuals separate from the alleged enterprise.

g. If allege any Defendants are alleged to be the enterprise itself, or members of the

enterprise explain whether such Defendants are perpetrators, passive instruments, or victims of the

racketeering activity.

Defendants, Kevin Cooper and Greg Crigler are the perpetrators and "*insiders*" who

acquired and maintained control over the enterprise and have committed the alleged racketeering

activities. Defendant, Kevin Ryan was an "*outsider*" who primary act of omission was refusing

to test any samples of the fields for which he visited and had previously acknowledged that "you

have a yield problem" allows defendants to further the scheme of fraud against plaintiffs.

7.    **State whether you allege, and describe in detail, how the pattern of racketeering activity/criminal activity and the enterprise are separate or have merged into one entity.**

The Complaint does not allege that the enterprise has merged into the pattern of racketeering activity.   During the relevant time period, Stine Seed Company, engaged in several wholly legitimate activities related to seeds breeding and trait development.   Likewise, B&B Ag engaged in several wholly legitimate activities relating to the coting and treatment of seeds. Hereto, Concept Ag engaged in several wholly legitimate activities relating to the developing and sale of inoculants and other agricultural products.   Also, Agri Select, Inc. was engaged in several wholly legitimate activities relating to the sale of herbicides, pesticides and other agriculturally products.

7.    **Describe the relationship between the activities and the pattern of racketeering/criminal activity. Discuss how the racketeering/criminal activity differs from the usual and daily activities of the enterprise, if at all.**

The predicate acts of wire fraud, mail fraud committed by Kevin Cooper, Greg Crigler and Kevin Ryan constitute the pattern of racketeering activities against Plaintiffs involved establishing credit and approval of user agreements (license) to allow all Plaintiffs to opportunity to obtain access to the seed, chemicals and other commodities that were offered by the enterprise that constituted the criminal acts.   The enterprise, on the other hand is the group of persons associated together for a common purpose of engaging in a course of conduct that allowed defendants to perpetrate the racketeered/criminal activity.   The relationship that this situation created allowed the defendants to charge Plaintiffs for products provided by the enterprise while simultaneously switching inferior products (seeds) to plaintiffs without the enterprises expected income stream being attenuated and realizing any ultimate damage from low yields would have excused by Plaintiffs custom of accepting their lot in farming.    Moreover, to the extent that

27

plaintiffs are limited recourse farmers any real legal challenge from them would have been
dismissed by Defendants.    After all, Stine's financial to the Public forum (gin show) an annual
activity of the Stine Seed Company would provide for new victims each and every spring.    At
and absolute minimum, B&B Ag would not have had any customers for which to treat seeds if
Stine certified seeds had been stored at a reputable farm supply distributor.    Stine's decision
(activity of the enterprise) to avoid the use of traditional farm supplier to sell, store and deliver
its seeds to farmers provided the perfect storm.    Kevin Cooper, Greg Crigler or any other
potential defendants has an absolute perfect environment for defrauding these unsuspecting and
unrepresented victims.    The predicate acts were performed with the requisite intent so as to
constitute violations of 18 U.S.C. §§ 1341, 1343.

9.    **Describe what benefits, if any, the enterprise and each defendant received from the pattern of racketeering/criminal activity.**

As a result of the pattern of racketeering activity by Cooper and Grigle several financial
benefits have been realized by the enterprise.  First, Cooper was able to get the plaintiffs to
executed sales agreements for certified soybeans with Stine Seed Company worth $55.00 per
each notwithstanding the fact that the Plaintiffs got old stock soybean worth only more than
$8.00 per bushel.  Secondly, B&B Ag was able to come into existence due solely to treat of
soybean seeds sold to Plaintiffs from its founder, Kevin Cooper.  Lastly, Concept Ag and Agri
Select, Inc. increased its sale as a direct result of the sale of fake and inferior seeds to Plaintiffs.
Only the Plaintiffs lost.

10.    **Describe the effect of the activities of the enterprise's activities on interstate or foreign commerce.**

Stine Seed Company was able to have its certified seeds sold to farmers in Tennessee and
Mississippi without the need or control of user agreements (license).    B&B Ag was able to

28

purchase chemicals from Missouri and sold treated seed in Tennessee and Mississippi. Concept Ag has sold ingredients to companies in Mississippi.  Likewise, Agri Select of North Carolina has been able to sell its products to farmers in Tennessee and Mississippi.

      11.    **If the Complaint alleges a violation of Title 18 U.S.C. § 1962(a), provide the following information:**

      a.    Describe the amount of income/proceeds derived, directly or indirectly, from a pattern of racketeering activity/criminal activity, or through the collection of an unlawful debt.

Plaintiffs maintain that approximately $250,000.00 income was directly obtained by defendants from a pattern of racketeered activity and approximately $100,000.00 indirectly (interest) from plaintiffs as a result of the unlawful criminal acts of defendants.

      b.    State who received the income/proceeds derived from the pattern of racketeering /criminal activity or through the collection of an unlawful debt and the date of that receipt.

- Kevin Cooper received income from a pattern of racketeering activity.   Plaintiffs

aver that Kevin Cooper invested income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate the enterprise while acting with necessary *mens rea.* Kevin Cooper received a sales commission from the sale of inferior seeds to Plaintiff's herein.  Kevin Cooper then invested a portion of that commission into B&B Ag.  See Joint Affidavit of Thomas Burrell and David Hall para wherein Kevin Cooper acknowledged to Thomas Burrell and David Allen Hall that he had just formed a company to perform such "treating" the seeds with an inoculant before planting them.  The investment use itself by defendant Kevin Cooper proximately caused the plaintiff's injuries as B&B Ag did subsequently bill Plaintiff's for inoculants.  That this investment of racketeering income is distinct from any injuries caused by the predicate [racketeering] activity themselves.  This income in sales commission was invested in an enterprise

that bears the necessary nexus to interstate or foreign commerce resulting in injuries to the plaintiff's business or property by reason of the defendant's use or investment of the income in the enterprise.

- Greg Crigler received income from a pattern of racketeering activity. Greg Grigle profited from the sale of inferior and/or old crop soybeans which amounted to roughly FORTY-SEVEN DOLLARS per bushel for each bushel sold with Cooper. Crigler profited from the sale of the seed treatment (inoculants etc.) to B&B Ag. Crigler received sales commission and salary from Concept Ag in Charleston, Missouri. Greg Crigler received his commission from the sale of inoculants "seed treatment" from Concept Ag to B&B. For, Crigler profited by investing income from the sale of inferior seeds and the bushel spread and invested those profits into the Sledge, MS facility and consequently the enterprise. Crigler profited from the sale of certified seeds switched from Hall and others and sold to other Crigler customers and invested these profits into the enterprise.

- B&B Ag received income from a pattern of racketeering activity. B&B invested approximately $20,000 obtained from racketeering activity in the enterprise. See Ex. Hey Mr. Burrell letter. The $20,000 was derived from a charge of inoculants and foliar fertilizer to treat inferior seeds which charge was made to Plaintiff's Burrell and Hall. (Hey Mr. Burrell Letter). Courts have held that for RICO purposes there is no meaningful distinction between income fraudulently acquired and income fraudulently obtained. Both result in funds not otherwise available but for the fraud. See Anza v. Ideal Steel Supply Corp., 547 U. S. 451 (2006).

- Concept Ag received income from a pattern of racketeering activity. Concept Ag received income derived directly from a pattern of racketeering activity…to use or invest in acquisition of an interest in or operation of an enterprise… which is engaged in or affects interstate

or foreign commerce.  That the investments by defendant themselves proximately caused the plaintiff's injuries.  Concept Ag profited from the sale of the seed treatment (inoculants etc.) to B&B Ag.  Concept Ag received profit from the sale of inoculants to B&B Ag. Here again, Courts have held that for RICO purposes there is no meaningful distinction between income fraudulently acquired and income fraudulently obtained.  Both result in funds not otherwise available but for the fraud.

- Agri Select, Inc. received income from a pattern of racketeering activity. Agri Select received income derived directly from a pattern of racketeering activity…to use or invest in acquisition of an interest in or operation of an enterprise… which is engaged in or affects interstate or foreign commerce.  Secondly, Agri Select profited from the sale of the herbicides (weed killer and foliar fertilizer) to plaintiffs herein.  Agri Select received profit from the sale of herbicides (weed killer and foliar fertilizer). Here again, Courts have held that for RICO purposes there is no meaningful distinction between income fraudulently acquired and income fraudulently obtained.  Both result in funds not otherwise available but for the fraud.

- Stine received income from a pattern of racketeering activity.  STINE Seeds was a direct beneficiary of the pattern of racketeering activities from its employees, Kevin Cooper RICO violations.  Kevin Cooper's acts were committed within the course and scope of his employment. STINE Seed Company is a direct recipient of funds derived from a pattern of racketeered activity. Plaintiffs aver that Defendant, Stine Seed Co. received income derived directly from a pattern of racketeering activity…to use or invest in acquisition of an interest in or operation of an enterprise… which is engaged in or affects interstate or foreign commerce.  That the investments by defendant themselves proximately caused the plaintiff's injuries.  The sales price of certified soybean seeds (varieties 49LD02, 49LD01 and 50LD02) as referenced in the User Agreement

(breeding seeds) were billed to Plaintiffs were valued at approximately $55.00 per bushel. However, Plaintiffs aver that the seeds delivered to Plaintiffs for planting were not certified and/or of breeding quality and were valued at approximately $8.00 per bushel (feed and process quality). Therefore, STINE realized a profit of approximately $47.00 per bushel for each and every bushel of inferior seed sold to Plaintiffs

c.    Describe how and when such income/proceeds were invested or used in the acquisition of the establishment or operation of the enterprise.

- Cooper was able to maintain his employment, sales Commissions and/or bonus from the sale of Stine Seeds to Hall and others by virtue of his ability to place sales from the orders of seed to plaintiffs. Secondly, Kevin Cooper was the sole owner of B&B Ag and received income directly from Hall and others ($8,000 on July 18th and August 11th, 2017). Thirdly, Kevin Cooper received income from Concept Ag and Agri Select from sales commission from the sale of chemicals (inoculants/herbicides) from Agri Select. Four, Kevin Cooper received income from other farmers who paid him for the certified seeds otherwise purchased by Hall and others from Stine. Lastly, Kevin Cooper received income from the sale of inferior seeds by Greg Crigler and other supplier of un-certified seeds from previous soybean stock. These herein referenced sources were derived from a pattern of racketeering activity to allow Cooper to directly and/or indirectly invest and acquire an interest in, establish and/or operate this enterprise in violation of RICO.

- Grigle profited from the sale of inferior and/or old crop soybeans which amounted to roughly FORTY DOLLARS per bushel for each bushel sold with Cooper. Secondly, Crigler profited from the sale of the seed treatment (inoculants etc.) to B&B Ag. Third, Crigler receive sales commission and salary from Concept Ag in Charleston, Missouri.

Fourth, Crigler profited by investing income from the sale of inferior seeds and the bushel spread and invested those profits into his person farming operation in Mississippi and elsewhere. Lastly, Crigler profited from the sale of certified seeds switched from Hall and others and sold to other Crigler customers.

- B&B Ag was owned by Kevin Cooper who was able to leverage the sale contracts from Stine to plaintiff in order to obtain the necessary credit with Concept Ag for the seed treats (inoculants) otherwise used to coat the inferior seeds obtained from Greg Crigler. B&B Ag was created directly as a result of the sales potential and volume of business from the sale of inferior seeds sold to plaintiffs by Stine.   Again, B&B Ag did not exist at the time its owner, Kevin Cooper meet plaintiffs the gin show in Memphis in March of 2017 nor during the time that Cooper was arranging financing for plaintiff in April of 2017.

      d.    Describe how you were directly injured by the investment or use.

- Thomas Burrell was directly injured by the investment or use of the income and proceeds and acquisition in the enterprise because Thomas Burrell planted approximately 2,000 bushels of inferior soybean seeds obtained from Plaintiff David Allen Hall which were planted on 2,000 acres of farmland as a direct result of the visit and recommendation by Keen Cooper to plant Stine certified variety 49LD02 on May 6, 2017.   Moreover, the fields that Kevin Ryan was standing in when made the declaration to Thomas Burrell and David Hall on November 1st, 2017 that, "You definitely have a yield problem was being farmed by Thomas Burrell.

- David Allen Hall was directly injured.  David Hall is now saddled with over $150,000 indebtedness as a direct result of the use of inferior seeds and unnecessary chemical.

- Walter and Monique Jackson were injured. Walter and Monique Jackson were

directly injured by the investment or use of the income and proceeds and acquisition in the

enterprise because Thomas Burrell planted approximately 2,000 bushels of inferior soybean

seeds obtained from Plaintiff David Allen Hall which were planted on 120 acres of farmland as

a direct result of the visit and recommendation by Keen Cooper to plant Stine certified variety

49LD02.

      e.     State whether the same entity is both the liable "person" and the "enterprise" under

Title 18, United States Code, Section 1962(a)…claim.

      Plaintiffs state that the same entities are both the liable "persons" and the RICO

"enterprise."

      **12.**     **If the Complaint alleges a violation of 18 U.S.C. § 1962(b)…., provide the
following information:**

      a.     Describe in detail the acquisition or maintenance of any interest in or control of the

enterprise.

      •   Kevin Cooper's control over Stine Seed Company was a direct result of a

policy and decision to maximize profits by Stine by avoiding the use of traditional middle man

distributors (farm supply and/or general stores to sale, deliver and store its certified soybeans and

choose instead to use sales representatives to conduct all of its affairs with Stine customers —

farmers.   Consequently, Stine was disposed to having Cooper conduct — literally — all of its

affairs with prospective farmer in Cooper's sales territory.   Effectively, Mr. Cooper was the sole

"manager" for Stine in the area of Tennessee and Mississippi where Plaints operated.   Cooper

arranges the financing between Stine and the farmers.   He conducted all of the discussion

regarding the Use Agreements.   He was the sole decision makers as to which Stine verities were

suitable for the farmer's fields.   Made all of the farm visits after the seeding had started to grow.

34

Sent correspondences regarding invoices and negotiated the plans for delinquent account.  Until

the farmers made a call to Stine headquarters in October of 2017, Cooper was the only employee

or officer of Stine that had any contact with Stine's customers, whatsoever.  The injuries suffered

by Plaintiffs are not only injuries resulting from the predicate acts of racketeering activity (wire

and mail fraud) **but** are directly resulting of Cooper's acquisition and maintenance of control in

the Stine Seed enterprise — through a pattern of racketeering activity.  Moreover, Stine's blatant

disregard for the procedures for tagging, labeling, transporting and re-bagging certified seed as

codified under 7 CFR 201 et seq. made it easy and consequently allowed Cooper to infiltrate and

seize control of and perpetrate crime that would have otherwise been impossible had he not had

the unfettered access, management and control of the entire credit [sales to field] situation.

    Moreover, the switching of certified seed with inferior one would not have been possible

if Stine — as an interstate enterprise — had use the traditional and "mature" farm supply systems

(general store) utilized by other seeds breeder and producers.  ***But for***, Stine's efforts to sidestep

— in the interest of maximizing profits — the usage of the farm supply purveyors; Cooper would

not have been able to maintain and interest in Stine enterprise in the first instance.   The

"complained of" switching of seeds and pattern of racketeering activity regarding the switching

— and corresponding injury to plaintiffs' business and property — would have never occurred.

    Cooper was able to acquire and maintain an interest in B&B Ag through a pattern of

racketeering activity because first and foremost he was the sole proprietor of B&B.  As such his

maintenance and control is a direct result of his creating this entity to further his scheme to

defraud Plaintiffs by demanding and promise yield results and insect control by treating the Stine

certified seeds with inoculants — provide by his company — B&B Ag.  Cooper knew that the

seeds for which he would treat and ultimately charge plaintiffs in furtherance of the unlawful

scheme to defraud Plaintiffs would be easy to implement because of the control that he had over

Stine seeds.   Again, this situation would not have been possible if Stine had been using a local

farm supply entity instead of allowing Mr. Cooper to control the situation.

Moreover, Cooper acquired and interest and control over Agri Select as a direct result of

the necessity of needing to provide promised weed control for the Liberty Link tolerant Stine

seeds.   Agri Select allowed Cooper to "manage" and arrange all of the credit approvals, sales

and delivery of its products (herbicides and foliar fertilizer) to Cooper Stine Seed customers.   At

no time, whatsoever, during the ordering and/or delivery and inspecting for weed and insect

control did any representative from Agri Select communicated with Burrell or Hall regarding the

Rome, Mississippi farming operation.   Kevin Cooper was the man — at all time relevant and

material. Plaintiff's suffered injuries from Agri Select as a direct result of Cooper acquiring and

maintaining an interest and/or control of the Agri Select enterprise through a pattern of

racketeering activity.   In fact, Cooper was the collection of debt for Agri Select.

Stine's managerial decision to not use traditional farm suppliers to handle its seeds

provided an opportunity for Kevin Cooper to take control of the Stine seeds and store the same at

Crigler's warehouse and Second, Concept Ag's allowing Crigler to control it treatment products

created the perfect store against the Plaintiffs.   Plaintiff's suffered injuries to their business and

property as a direct result of the control and maintenance in his interest in the Concept Ag

enterprise that Crigler as well as Kevin Cooper exerted.   Losing money from the high cost of

inferior seed is devastating enough for these limited resource farmers and Plaintiffs. Losing

money from the cost of inferior seeds and have to pay for herbicides and seed treat for the

inferior seeds make the losses all the more devastating to these farmers.   These losses to

Plaintiff's business and property are by reason of Ms. Cigler's acquisition and maintenance of an

36

interest and control over the enterprise through a pattern of racketeering activity I violation of 18 U.S. C. 1962(b).

## GREG CRIGLER

- Greg Crigler's acquisition and control over Concept Ag was a direct result of Mr. Crigler's managerial association with the Charleston, Missouri enterprise.  Mr. Crigler managed the warehouse in Sledge, Mississippi where the Stine seeds were stored and treated.   In fact, the seed treatment that was provided to B&B Ag was supplied by Mr. Crigler and Concept Ag. Hereto, Crigler had unfettered managerial control over Concepts Ag credit and distribution of the seed treatment products.

b.      Describe when the acquisition or maintenance of an interest in or control of the enterprise occurred.

- Kevin Cooper acquisition/maintenance of an interest in or control of the enterprise occurred shortly after he was able to obtain credit and user agreement with Thomas Burrell and David Allen Hall.  The sheer size of the Burrell farming operation (2,500) after the farm visit on May 6, 2017 in Sunflower County, Mississippi provided (a) the volume of sales adequate and sufficient for Cooper to realize an additional profit (coating and treating seeds) and a vertical opportunity for B&B Ag and Concept Ag in addition to (b) making a profit from the sale of inferior seeds to Burrell, Hall and Jackson (horizontally) with co-defendant Greg Crigler. The soybean acreage from Walter and Monique Jackson was the icing on the cake.

- Greg Crigler acquired an interest in the enterprise in May of 2017 when he sold chemicals to B&B Ag. and provided the warehouse space to Kevin Cooper at the same time.

c.      Describe how you were directly injured by this acquisition or maintenance of an interest in or control of the enterprise.

- Here, plaintiff's injuries have gone from bad to worse. Defendants acquisition or maintenance of an interest or control of the enterprise.

      d.     State whether the same entity is both the liable person and the enterprise under Title 18, United States Code, Section 1962(b).

Plaintiffs state that the same entities are both the liable "persons" and the RICO "enterprise."

      13.   **If the Complaint alleges a violation of Title 18, United States Code, Section 1962(c), provide the following information:**

      a.     State who is employed by or associated with the enterprise.

- Kevin Cooper was employed by Stine Seed Company, B&B Ag and/or associated with Agri Select and Greg Crigler was employed and/or associated with by Concept Ag during the time Cooper and Crigler (insiders) committed the predicate acts of wire fraud that constitutes the pattern of racketeering —while acting with the necessary *mens rea*. It is unknown at this time if either Cooper and/or Crigler are still employed by the enterprise as of the date of this RICO filing.

- Kevin Ryan was employed by an associated with Stine Seed Company.

associated with the enterprise because he became a will participant after his visit to the fields on November 1st, 2017 and directed David Hall and Thomas Burrell to send samples to MSU. Moreover, Ryan's refusal to test any soybean plants belonging to the Stine varieties was in furtherance of covering for Kevin Cooper's scam. Ryan knew that any testing of the Stine plants would patently reveal that those plants were not a progeny of a certified Stine variety. Therefore, Ryan as an outsider has now participated with an insider (Cooper) and satisfies the operation-and-management requirement of the statute.

- Greg Crigler was employed by Concept Ag.

- Myron Stine was employed by Stine and was associated with the enterprise.

b.    Describe what each person did to conduct or participate in the enterprise's affairs.

- Kevin Cooper was clearly the "quarterback" the main "driver" and or the "rim" to the hub and spokes comprising the RICO enterprise.   As such, he was the day to day coordinator of information from the farmers, seeds breeder, chemical and herbicides manufactures and warehouse operations.   He was also the person who was expected by all other persons and or defendants to be the main agent between these defendants, associations, corporations and entities and the farmers.  Every order for seeds was orchestrated and conducted between Stine and the farmers was done by Kevin Cooper.   Every order placed for any and all chemicals (herbicides and fertilizers) was placed by Kevin cooper.   Every invoice for collection by all purveyors was maintained by Kevin Cooper. Kevin Cooper had unfettered access to all the farmers and all the employees and or persons associated and defendants of the enterprise.  Kevin Cooper was the man.

- Greg Crigler was Kevin Cooper number one helper with respect to maintain the flow chemicals and ingredients need for the treatment and coating of the seeds.  Moreover, Crigler was the primary person overseeing the warehousing and storage of all seeds in Sledge, Mississippi.

- Kevin Ryan became a will participant in the enterprise when he visited the soybean field and acknowledged that the there was a yield problem but declined to have any plants and or harvested seeds text to the determine the progeny of being a Stine seeds.   Kevin Ryan was the chief agronomist for Stine's Region 19.  As such he had his disposal all of the necessary tools and analytical equipment for testing for purity, germination and most importantly genetic finger printing.  He further the unlawful scheme of duping the plaintiff by omitting and

39

refusing to make a "positive" determination as whether the seeds so referenced by him in the field in October having the yield prole was a Stine offspring of the know varieties sold to plaintiffs by Kevin Cooper.   In point of fact, Burrell had an earlier conversation with Stine Seed representative Chuck Hansen in August of 2017 regarding, among other things, Stine customer being able to resale soybeans seeds back to Stine for the next seasons certifies stock.   In this conversation Hansen assured Burrell that Stine had the absolute capability of testing any of it products to determine the genetic traits and varieties.   However, Kevin Ryan did make it his mission to collect invoice payments from David Allen Hall.

- Myron Stine.   In fact, it was Myron STINE that "directed" Defendant, Kevin Ryan to come and evaluate the situation pursuant to the request from Burrell in the first instance. Ryan's act of omission of testing the varieties to determine progeny was a direct result of Myron STINE directives and Ryan's subsequent act of sending an electronic transmission for debt collection to Hall and Jackson make it plausible that both Ryan and Myron STINE have now associated themselves with Defendant, Kevin Cooper's scheme to further the enterprise's objectives.

c.    Describe how you were directly injured by such person's conducting or participating in the enterprise's affairs.

- Thomas Burrell was directly injured in his property and business by Kevin Cooper because he relied upon the misrepresentations of Kevin Cooper as made to him on the visit from Cooper on May 6th, 2017 throughout the planting season as to the purity and certification of the Stine seeds varieties 49LD02, etc.

d.    State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).

The entity is not the liable persons and is distinct from Kevin Cooper, Greg Crigler, Myron Stine and Kevin Ryan who otherwise conducted or participated in the enterprise.

The liable "persons" are Kevin Cooper, Kevin Ryan, Myron Stine and Greg Crigler.  The "enterprise" is Stine Seeds, B&B Ag, Concept Ag and Agri Select, Inc.  The liable "persons" and the "enterprise" are entirely distinct.

14.    **If the Complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the conspiracy; including the identity of the co-conspirators, the object of the conspiracy, and the date and substance of the conspiratorial agreement.**

Defendants Kevin Cooper and Greg Crigler—*as insiders*—conspired to obtain money and property by means of false pretenses and the concealment of material facts through a pattern of racketeering activity.  First, in or around March of 2017 through November of 2017, Kevin Cooper and Greg Crigler agreed that they and/or various John Does would regularly and repeatedly electronically transmit and/or mail or cause to be mailed sales orders for certified soybeans, herbicides and chemical to either, Burrell, Hall and Jackson, via electronic transmissions.  The misrepresentations and unlawful schemes and conspiracy by Kevin Cooper, Greg Crigler, Myron Stine and Kevin Ryan the primary object of the RICO persons and induce Hall, Burrell and Jackson to pay $55.00 per bushel for certified seed from Stine when it was known that the seeds that Hall, Burrell and Jackson planted were not certifies seeds that would have sold for feed stock and processing at approximately $8.00 per bushel.  Secondly, Kevin Cooper and Greg Crigler and Agri Select representatives conspired by requiring Burrell, Hall and Jackson to use and pay for herbicides and chemicals necessary to control weeds in the planted fields of soybeans that were unique (tolerant) to the Stine soybean varieties (Liberty Link).  Plaintiffs were then disposed, necessarily to purchasing these chemicals as a direct result of being sold the purported Liberty Link soybean traits whether certified and/or old crop soybeans.

41

Thirdly, Kevin Cooper, Greg Crigler, Kevin Ryan (Agri Select) sought to collect on payments, via electronic and mailing of invoices to Burrell, Hall and Jackson.  Kevin Cooper sought to charge Hall for soybeans and chemicals otherwise ordered by Keith White and Walter Jackson (Miller).

Therefore, the object of the conspiracy to defraud plaintiffs of their money and property — conspiring to participate in "a pattern of racketeering activity — has not been abandoned and is in direct violation of § 1962(a), (b), (c), thereby contravening § 1962(d).

15.  **Describe the injury to business or property**.

- Thomas Burrell's loses and injuries to his business and property are concrete and actual by reason of the violation of the RICO criminal prohibitions.  The losses to plaintiff, resulting from the sale of inferior seeds by defendants was the proximate cause of his injuries and was reasonably foreseeable or anticipated as a natural consequence of defendant's behavior. Moreover, Plaintiff, Burrell states that the person perpetrating the unlawful criminal scheme possessed the appropriate men res and that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension.   Plaintiffs detrimentally relied on the accuracy and completeness of the User Agreement and its corresponding promising regarding labeling and representation of purity and germination of the seeds being certified Stine soybean seeds.

- David Allen Hall, Sr.'s loses and injuries to his business and property are concrete And actual by reason of the violation of the RICO criminal prohibitions.  The losses to plaintiff, resulting from the sale of inferior seeds by defendants was the proximate cause of his injuries and was reasonably foreseeable or anticipated as a natural consequence of defendant's behavior. Moreover, Plaintiff, Hall states that the persons perpetrating the unlawful criminal scheme

possessed the appropriate men res and that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension.   Plaintiff's detrimentally relied on the accuracy and completeness of the User Agreement and its corresponding promises regarding labeling and representation of purity and germination of the seeds being certified Stine soybean seeds.

- Walter and Monique Jackson losses and injuries to his business and property are concrete and actual by reason of the violation of the RICO criminal prohibitions.  The losses to plaintiff, resulting from the sale of inferior seeds by defendants was the proximate cause of his injuries and was reasonably foreseeable or anticipated as a natural consequence of defendant's behavior.  Moreover, Plaintiffs Jacksons states that the persons perpetrating the unlawful criminal scheme possessed the appropriate men res and that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension.  Plaintiff's detrimentally relied on the accuracy and completeness of the User Agreement and its corresponding promises regarding labeling and representation of purity and germination of the seeds being certified Stine soybean seeds.

16.    **Describe the nature and extent of the relationship between the injury and each separate RICO violation.**

Defendants, Kevin Cooper, Greg Crigler, STINE Seed Company, Myron Stine, Kevin Ryan, B&B Ag, Concept Ag and Agri Select, Inc. did, from a period of March 2017 through January, 2018 commit predicates and overt acts (taken in further of the conspiracy) by agreements to commit predicate acts with knowledge that the predicate acts were part of a pattern of racketeering activity conducted in such a way as to violate Section 1962 (d).  Moreover, these overt predicate acts and conspiracy caused foreseeable and concrete injuries to plaintiffs' businesses and property by reason of the violations of the RICO act's criminal prohibitions.

Defendants Kevin Cooper and Greg Crigler "never" intended to deliver STINE certified soybean seeds to plaintiffs. That Defendant, Kevin Cooper's arranging to meet with Burrell on May 6, 2017 in Rome, Mississippi to inspect his fields and subsequently determine which STINE varieties was best suited for planting on the same was a scam and pretext for giving the appearance and imprimatur of determining the best varieties for planting.

Keven Cooper's predicate acts of (a) sending credit application and (b) an e-mailing of plaintiffs application and subsequent User Agreement "licenses" was an indispensable and necessary parts of the scheme for ultimately making plaintiffs pay for purported STINE certified seeds when in fact he knew that the plaintiffs would never receive but would instead be given old stock (inferior) "liberty Link Tolerant" seeds of low germination and purity.

Defendant, Greg Crigler's access and providing (overt act taken in furtherance) to old stock soybeans provided the perfect opportunity for literally killing two birds with one stone. STINE would be able to get paid for the seeds ordered ($55.00 per bushel) as being certified and sold to plaintiffs. defendants would be able to able to get ($55.00 per bushel) for old stock soybean left over from previous years ($8.00 per bushel) and otherwise provided by Defendant, Greg Crigler. Cooper and Crigler would be able to deliver the original STINE certified seeds ($55.00 per bushel) to other soybean farmers. Therefore, (1) STINE would be made whole by receiving ($55.00 per bushel) for its certified seeds (2) whoever actually received the certified seeds would be made whole receiving STINE certified soybean seeds and (3) plaintiffs received "coated" inferior seeds. This was a zero sum game for plaintiffs. Every dollar of STINE certified seed sold to plaintiff produced a dollar of inferior seeds to plaintiffs. Plaintiffs were the only ones that lost.

Moreover, the acts of going through what would otherwise seem to be an elaborate and legitimate certification process with a major seed breeder (STINE) gave the imprimatur of a "top

44

notch" legitimate business transaction.  Kevin Cooper and Greg Crigler were intent on infiltrating legitimate business to perpetrate crimes that they would not have been able to commit on their own.

17.    **For each claim under a subsection of Title 18, United States Code, Section 1962…, list the damages sustained by reason of each violation, indicating the amount for which each defendant is liable.**

The misrepresentations and unlawful schemes and conspiracy by Kevin Cooper, Greg Crigler, Myron STINE and Kevin Ryan had as its primary object to induce Hall, Burrell and Jackson to pay $55.00 per bushel for certified seed from STINE when it was known that the seeds that Hall, Burrell and Jackson planted were not certified seeds but were the seed that would have sold for feed stock and processing at approximately $8.00 per bushel.  Kevin Cooper and Greg Crigler and Agri Select representatives conspired by requiring Burrell, Hall and Jackson to use and pay for herbicides and chemicals necessary to control weeds in the planted fields of soybeans that were unique (tolerant) to the STINE soybean varieties (Liberty Link).  Plaintiffs were then disposed, necessarily to purchasing these chemicals as a direct result of being sold the purported Liberty Link soybean traits whether certified and/or old crop soybeans.   Kevin Cooper, Greg Crigler, Kevin Ryan and Myron STINE sought to collect on payments, via electronic and mailing of invoices to Burrell, Hall and Jackson.

The function of the enterprise was to fraudulently induce Plaintiffs into executing a contract for certified seeds (FIFTY-FIVE DOLLARS per bushel) and delivering — instead — an altered and inferior seed (approximately EIGHT DOLLARS per bushel) to Plaintiffs.  Creating a profit of approximately **FORTY-SEVEN DOLLARS** per bushel for each and every bushel sold to Plaintiffs.  Plaintiffs purchased approximately 2,000 bushels of purported STINE certified seed

45

and in addiction other corresponding Liberty Link herbicides from other Defendants as a direct result of the criminal activities herein complained of.

18.    **Provide any additional information that you feel would be helpful to the Court in considering your RICO claim.**

Kevin Ryan had visited the fields on November 1st, 2017 wherein the STINE seeds had been planted and stated to Burrell and Hall, that, among other things, "you have a yield problem." Defendant Ryan summarily declined the offer by Burrell and Hall to cut and take samples of the soybean plants (mature seeds) back with him for testing.  As an agronomist for STINE seeds Ryan could have easily determined whether the harvested seeds were the progeny of a certified STINE — genetically engineered seed matching any of STINE's patented varieties.  As an ergonomist — that is what he does.  Plaintiffs avers that Defendant Ryan knew or should have known that that soybean field wherein he made the statement regarding the yield problems were not STINE of the elements of substantive criminal offenses Kevin Ryan could easily have determined the origin and germination of the plantings in the Burrell field.  However Ryan chose to disregard the opportunity to get to the bottom of the problem.  His knowledge as Stine's agronomist of the soybeans in the fields on November 1, 2017 was such that he knew that the soybeans sold to plaintiffs by Kevin Cooper were not the product and/or progeny of any Stine variety.  That any testing by his office would positivity reveal the scam that Cooper perpetrated on plaintiffs.

Defendant's Ryan involvement in the racketeering conspiracy does not depend on his operation and/or management in that he was aware of the general nature of the conspiracy and that the conspiracy extended beyond his individual role.

In fact, Plaintiff's allegations of fraud by all Defendants have been pled with heightened particularity and have shown that all Defendants did indeed conspire with one another and with full knowledge of one another to have committed the RICO conduct herein complained of.

All Defendants did manifest willingness directly or indirectly to participate in "a pattern of racketeering activity" alleged and conspired together to do so with full knowledge that Plaintiff could suffer grievous loss in his property and business by Defendants' conduct and by reason of the RICO violation.

Plaintiff have adequately alleged an association-in-fact enterprise and has described the "interrelationships between each set of Defendants and their respective roles in the scheme," and demonstrated how the enterprise functioned with "sufficient" longevity to permit its members to pursue the illicit purpose of the enterprise through a pattern of racketeering activity. That each Defendant knowingly carried out his part of the activities of the alleged scheme.

Plaintiffs aver that RICO persons, Kevin Cooper, Greg Crigler, Kevin Ryan, Myron STINE, B&B Ag, Concept Ag and Agri Select, Inc. conspired to violate Section 1962(a), (b) and or (c) during the period of March 3, 2017 through February 2018.  That the objective of the conspiracy was to have plaintiffs pay for seeds that were not STINE certified seeds and for payment of other farm inputs (inoculants, fertilizers and/or herbicides) from other entities of the enterprise for the benefit of the inferior seeds.   That overt acts were taken in furtherance of the conspiracy and that there were agreements to commit predicate acts and that knowledge that the acts were part of a pattern of racketeering activity conducted in such a way as to violate Section 1962(a), (b), or (c).  Moreover, plaintiffs aver that injury to their business and/or property occurred by reason of the act's criminal prohibitions and that the overt acts were also predicate acts.  In

sum, in addition to defendant's operation and management in the enterprise, all defendants knew

the general nature of the conspiracy and that the conspiracy extended beyond their individual role.

RESPECTFULLY SUBMITTED, this the  25th day of   September , 2018.

FOR THE PLAINTIFFS,

THOMAS BURRELL, DAVID ALLEN HALL, YRONE GRAYER, WALTER JACKSON and, MONIQUE JACKSON.

BY:     /S//Paul A. Robinson, Jr., ESQ

PAUL A. ROBINSON JR., ESQ.

Paul A. Robinson Jr., Esq., (014464))
THE LAW OFFICES OF PAUL ROBINSON, PLLC
3749 Marty Street
Memphis, Tennessee 38109
Tel: (901) 649-4053
Fax: (901) 649-4053
Email: problaw937@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all parties on the court's matrix as set forth below via the court's   electronic   notification   system.

/s/ Paul A. Robinson Jr.

Paul A. Robinson Jr.

Annie Christoff
Michael Kappellas
Bass Berry & Sims, PLC
100 Peabody Place, Ste.
1300 Memphis, TN 38103
901-543-5939 (T)
901-543-5999 (F)
acristoff@bassberry.com
Attorneys for Defendants
B&B, Inc. and Kevin Cooper

Daniel Van Horn
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
901-680-7200 (T)
901-680-7201 (F)
danny_vanhorn@butlersnow.com
Attorneys for Defendants Concept AG and Greg Crigler
Paul C. Peel
Farris Bobango Branan, PLC
999 South Shady Grove, Suite 500
Memphis, TN 38129
901-259-7100 (T)
901-259-7150 (F)
ppeel@farris-law.com Attorneys for Defendant AgriSelect, LLC

Joseph Koury
Allen Summers Simpson Lillie & Gresham
80 Monroe Ave., Ste. 650
Memphis, TN 38103
901-763-4200 (T)
901-684-1768 (F)
jkoury@allensummers.com
Attorney for Defendants Stine Seed, Myron Stine and Kevin Ryan

Jack A. Simms
Katherine P. Chiarelo
Maria Amelia Calaf
Wittliff Cutter Austin, PLLC
1803 West Avenue Austin, TX 78701
512-960-4865 (T)
512-960-4869 (F)
jack@wittliffcutter.com
Katherine@wittliffcutter.com

mac@wittleffcutter.com
Attorney for Defendants Stine Seed, Myron Stine and Kevin Ryan