# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN SECTION

---

| | |
|---|---|
| THOMAS BURRELL, | ) |
| TYRONE GRAYER, | ) |
| WALTER JACKSON, | ) |
| MONIQUE JACKSON, | ) |
| DAVID ALLEN HALL, and | ) |
| INTERNATIONAL TRUSTEE GROUP, LLC, | ) |
| | ) |
|    Plaintiffs, | ) |
| | )    No.: 2:18-cv-02265-JTF-tmp |
| v. | ) |
| | ) |
| | ) |
| CONCEPT AG, LLC, *et al.*, | ) |
| | ) |
|    Defendants. | ) |

---

## ORDER TRANSFERRING CASE *SUA SPONTE*
## PURSUANT TO 28 U.S.C. § 1631

---

Before the Court are Motions to Dismiss the Initial Complaint that were filed by Defendants Stine Seed Company, Myron Stine and Kevin Ryan (collectively, "the Stine Defendants") and Defendant Kevin Cooper on July 10, 2018. (ECF Nos. 51 & 52.) Additional Motions to Dismiss Plaintiffs' Amended Complaint, (ECF No. 66), were separately filed by all Defendants on October 9, 2018, to which Plaintiffs filed Responses on November 6, 2018. (ECF Nos. 80, 81, 82, 86, 87, 88 & 89.) Also pending are Plaintiffs' Motions for Joinder of Joe Bryant and Rick Prowell that were filed on November 8, 2018, and December 28, 2018, respectively.[1] (ECF Nos. 90 & 122.) On January 3, 2019, the Court heard arguments from counsel, the Motions were taken under

---

[1] The Court held these Motions in abeyance pending a ruling on the jurisdictional issue. (ECF No. 125.)

advisement and the matter stayed while the parties pursued mediation, which ultimately proved unsuccessful.  (ECF Nos. 125 & 126.)

 For the reasons below, the Court *sua sponte* orders the case transferred to the Northern District of Mississippi pursuant to 28 U.S.C. § 1631, as that district court is the more appropriate forum based on a lack of personal jurisdiction before the undersigned Court.

## I. FACTUAL BACKGROUND

 During the late 1800's, educator, author and former slave Dr. Booker T. Washington encouraged African Americans to develop exceptional farming skills in order to acquire economic security.  In *"Up From Slavery*," Dr. Washington wrote, "No race can prosper till it learns that there is as much dignity in tilling a field as in writing a poem."  Dr. Washington's theory underscores a sensitive issue that has been raised in this case.  It also sheds light on the historic symbolism of slavery, sharecropping and the role black farmers occupied then, and now, in the American South.  It reminds us of the racial disparities and inequities that were prevalent during those times.  Despite that history, the Court has closely examined the filings in this case in an effort to separate fact from fiction.

 Although Plaintiffs Thomas Burrell, Tyrone Grayer and Walter and Monique Jackson assert that they are members of a socially disadvantaged group of African American farmers, the record reflects that Plaintiffs have been successful in the soybean farming industry for over three decades. Plaintiff Thomas Burrell is a resident of Atoka, Tennessee.  (ECF No. 66, 5 ¶ 9, 13 ¶ 38.)  Plaintiff David Allen Hall, Burrell's farming associate, is a resident of Memphis, Tennessee. Together they have managed 2,200 acres of farmland in Sunflower County, Mississippi, and 1,000 acres of farmland in the state of Louisiana. (ECF No. 1, 6 ¶ 9; ECF No. 66, 5 ¶ 9, 13 ¶ 38.)  Plaintiffs Walter and Monique Jackson are a married couple who reside in Darling, Mississippi. The

Jacksons successfully harvested soybeans and soybean seeds for the past eight years. (ECF No. 66, 17 ¶ 54.)  Plaintiff Tyrone Grayer, a resident and farmer in Coahoma County, Mississippi, has managed 2,300 acres of farmland in Sunflower County, Mississippi for over 20 years.  (ECF No. 69, 2 ¶¶ 1–3.)  Plaintiff International Trustee Group, LLC, a company organized under the laws of Tennessee, maintains a principal place of business in Memphis, Tennessee.  Plaintiffs Burrell, Hall and Grayer are "Farm Partners" associated with the company having collectively, more than 2,200 acres of farm land in Rome, Mississippi.  (ECF No. 112, ECF No. 1-2, 19 ¶ 2.)

Regarding Defendants, Stine Seed is a company based in Adel, Iowa, that markets over 200 varieties of seed to large companies worldwide. Stine Seed sells soybeans to farmers/growers in the United States.  (ECF No. 51-1, Exhibit A; ECF No. 66, ¶¶ 10–11.)  Myron Stine, a resident of Iowa, is President of Stine Seed.  (ECF No. 80-2, 2.)  Kevin Ryan, a resident of Hot Springs Village, Arkansas, is the Regional Sales Agronomist for the Stine Seed.  (ECF Nos. 10, 35, 51-3, 80-2 & 80-3.)  Kevin Cooper, the District Sales Manager for Stine Seed and owner of B & B, Inc. was a resident of Olive Branch, Mississippi at the time relevant to this case.  (ECF No. 66, ¶¶ 15 & 24.)  Concept AG, a Missouri company having its principal place of business in Charleston, Missouri, provides seed treatment for products sold in Mississippi, Illinois, Arkansas and Missouri. (ECF No. 54.)  Greg Crigler, a resident of Sledge, Mississippi, is a sales representative for Concept AG. (ECF No. 66,  ¶ 18.)   Finally, Agri Select, LLC, is a North Carolina company that also engages in the production and sale of herbicides and fertilizers.  (*Id*. ¶ 20.)

Plaintiffs commenced this action alleging that all Defendants are severally and collectively liable for their discriminatory treatment and fraudulent acts under federal and state law.  Plaintiffs contend that Defendants, motivated by a racial animus towards black farmers, conspired to commit Racketeer Influenced and Corrupt Organizations ("RICO") violations by selling inferior seeds to

minority farmers causing losses and injuries to their businesses or property.  (ECF No. 66 ¶¶ 81–

107, 146–147 & 206.)  Accordingly, Plaintiffs raise numerous allegations of RICO violations

under 18 U.S.C. §§ 1341, 1343, *et seq.*, and 18 U.S.C. §§1962(a)–(d) in Counts I–VI. (*Id.* ¶¶ 108–

140.)  In Count VII, Plaintiffs raise claims of race discrimination in the making and enforcing of

contracts under 42 U.S.C. § 1981. (*Id.* ¶¶ 185–195.)  Plaintiffs further contend that Defendants

violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §1691, in Count VIII.  (*Id.* ¶¶

196–206.)  In Counts IX and X, Plaintiffs allege  breach of contract and tortious interference with

contract claims.  (*Id.* ¶¶ 207–218.)  Finally, Plaintiffs aver several additional state law claims,

which include intentional misrepresentation, fraud, promissory estoppel, civil conspiracy and

tortious interference with contractual relations.  (*Id.* ¶¶ 219–241.)  These allegations serve as the

basis of Defendants' above-referenced Motions to Dismiss.  (ECF Nos. 51, 52, 54, 79, 80, 81 &

82.) [2]

## LEGAL STANDARDS AND ANALYSES

### A.  *Motion to Dismiss—Rule 12(b)(6)*

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon

which relief can be granted.  "The purpose of Rule 12(b)(6) is to allow a defendant to test whether,

as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint

is true."  *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (citing *Nishiyama v. Dickson

Cnty., Tenn.*, 8l4 F.2d 277, 279 (6th Cir. 1987)).  When evaluating a motion to dismiss under Fed.

R. Civ. P. 12(b)(6), the Court must determine whether the complaint alleges sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*,

---

[2] Notably, the record reflects that Defendants divided themselves into four separate groups of respondents
as follows: (1) "the Stine Defendants," Myron Stine, Stine Seed Co. and Kevin Ryan; (2) Kevin Cooper
and his company, B & B, Inc.; (3) Concept AG and Kevin Crigler and (4) Agri Select, LLC.

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must contain either direct or inferential allegations respecting all of the material elements necessary to sustain recovery under some viable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. However, a Complaint does not need detailed factual allegations to survive dismissal. *Id.*

## B. *Subject Matter Jurisdiction—Rule 12(b)(1)*

Prior to deciding the merits of the Defendants' pending Motions to Dismiss, the Court must first determine if the exercise of jurisdiction over the Defendants in this case violates due process. Federal courts are courts of limited jurisdiction." *Adams v. Adient US, LLC*, No. 1:18-cv-01179, JDB-egb, 2019 WL 1569353, at * 2 (W.D. Tenn. Apr. 11, 2019) (*quoting Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994)). Specifically, federal courts have original jurisdiction over matters which involve (1) cases having complete diversity among the parties, diversity jurisdiction, and (2) civil actions arising under the Constitution, laws or treatises of the United States, federal question jurisdiction. *See* 28 U.S.C. §§ 1331–32. A complaint must include a short and plain statement of the grounds upon which the court's jurisdiction depends. *See* Fed. R. Civ. P. 8 (a)(1).

The plaintiff has the burden of proving subject matter jurisdiction in order to survive a motion to dismiss pursuant to Rule 12(b)(1). *Thomas v. Santore*, No. 2:09-CV-254, 2010 WL 427651, at *1 (E.D. Tenn. Feb. 2, 2010) (*quoting Madison–Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996)). "Because lack of subject matter jurisdiction is a non-waivable, fatal defect, it may be

raised by any party at any time, including being raised *sua sponte* by this Court." *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. A facial attack is a challenge to the sufficiency of the pleading itself. When the motion to dismiss is based on insufficient pleadings on the face of the Complaint, the Court must construe the material allegations of the petition as true and in the light most favorable to the nonmoving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974). A factual attack, on the other hand, is not a challenge to the sufficiency of the allegations in the pleadings, but a challenge to the factual existence of subject matter jurisdiction. In these instances, a presumption of truthfulness does not apply to the factual allegations and the Court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). "The *res judicata* effect of a 12(b)(1) motion is . . . limited to the jurisdictional issue." *See* Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, at 225 (1990). Thus, a Rule 12(b)(1) dismissal is not a decision on the merits and has no *res judicata* effect that would prevent the reinstitution of the action in a court that has subject matter jurisdiction over the controversy. *See Shaw v. Merritt– Chapman & Scott Corp.*, 554 F.2d 786, 789 (6th Cir. 1977). In this matter, Defendants have raised a factual challenge as to whether the Amended Complaint sufficiently establishes jurisdiction before this Court.

There is a presumption against federal jurisdiction, and "[t]he burden of establishing [federal jurisdiction] rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 378 (quoting *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)). The district court is authorized to resolve factual disputes when it is necessary to resolve a challenge on the basis of

subject matter jurisdiction.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1993), *cert. denied*, 513 U.S. 868 (1994).  Moreover, the Court is under a constitutional obligation to dismiss a case whenever it determines that subject matter jurisdiction is lacking.  *See* Fed. R. Civ. Proc. 12(b)(1) & 12(h)(3).

In this case, Plaintiffs assert that Defendants violated RICO, 18 U.S.C. §§ 1962–1964, *et. seq.*; devised a scheme to defraud by wire, 18 U.S.C. §§ 1341, 1343, *et. seq.* and 42 U.S.C. § 1981; exhibited discriminatory lending practices in violation of the Equal Credit Opportunity Act, "ECOA", 15 U.S.C. §§ 1691, *et. seq.*, all federal statutes.  *Brent v. Hyundai Capital Am.*, No. 14-cv-2600-STA-dkv, 2014 WL 7335415, at *3 (W.D. Tenn. Dec. 19, 2014).  The Court finds subject matter jurisdiction exists in this case based on federal question jurisdiction.  Given that Plaintiffs' state law claims arise from the same set of operative facts as the federal claims, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  *See Willis v. Shelby Co.*, Nos. W2008-01487-COA-R3-CV, W2008-01558-CIA-R3-CV, 2009 WL 1579248, at *2 (Tenn. App.  June 8, 2009).

### C.  *Personal Jurisdiction— Fed. Rule 12(b)(2)*

"A Rule 12(b)(2) motion to dismiss requires a court to 'determine whether the plaintiff has alleged sufficient facts to support the exercise of personal jurisdiction over the defendants.'" *Roundtree-Chism v. Dunn*, No. 1:16-cv-387-SKL, 2017 WL 2312900, at *2 (E.D. Tenn. May 26, 2017) (quoting *Destination Designs, LLC v. Glick*, No. 3:08-CV-197, 2008 WL 4559815, at *2 (E.D. Tenn. Oct. 9, 2008)).  Where personal jurisdiction is lacking, courts are to dismiss the matter without prejudice."  *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 520 (6th Cir. 2006).  "The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'"

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting

*Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)).

"A court's exercise of personal jurisdiction over a non-resident defendant is appropriate only

if it meets the state's long-arm statute and constitutional due process requirements." *Intera Corp.*

*v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).  Tennessee's long-arm statute extends to the

limits of federal due process.[3]  *Jeremy Bauer v. Nortek Glob. HVAC LLC*, No. 3:14-CV-1940,

2016 WL 5724232, at *5 (M.D. Tenn. Sept. 30, 2016). "Thus, . . . the Court here need only

determine whether exercising personal jurisdiction over the defendants is consistent with federal

due process requirements." *Id.*  The exercise of personal jurisdiction over a non-resident defendant

comports with due process only if the defendant has '" certain minimum contacts with the [forum

state] such that the maintenance of the suit does not offend 'traditional notions of fair play and

---

[3] Tennessee's Long Arm Statute provides the following:

   **20-2-214**. Jurisdiction of persons unavailable to personal service in state—Classes of actions to which applicable.—

   (a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

       (1) The transaction of any business within the state;

       (2) Any tortious act or omission within this state;

       (3) The ownership or possession of any interest in property located within this state;

       (4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

       (5) Entering into a contract for services to be rendered or for materials to be furnished in this state;

       (6) Any basis not inconsistent with the constitution of this state or of the United States;

       (7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

   (b) "Person," as used herein, includes corporations and all other entities which would be subject to service of process if present in this state.

   (c) Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative.

*See* Tenn. Code Ann. § 20-2-214.

substantial justice.'" *Bauer*,  2016 WL 5724232 at *5 (quoting *Youn v. Track, Inc*., 324 F.3d 409,

417 (6th Cir. 2003)).

A court may have either general or specific jurisdiction over a non-resident defendant.  *See*

*Fortis Corp. Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006).   The difference between

general and specific jurisdiction is as follows:

> General jurisdiction exists when a defendant has continuous and systematic
> contacts with the forum state sufficient to justify the state's exercise of judicial
> power with respect to any and all claims.   Unlike general jurisdiction, specific
> jurisdiction subjects the defendant to suit in the forum state only on claims that arise
> out of or relate to defendant's contact with the forum.

*Watkins v. Kajima Int'l Corp.*, No. 3:08-0426, 2010 WL 3491172, at *2 (M.D. Tenn. Sept. 1, 2010)

(citation and quotations omitted).

### ***General Jurisdiction***

For  corporations, the forum for the exercise of general jurisdiction is the "place in which the

corporation[s] . . . fairly regard[] as at home," meaning that "corporations are most often subject

to general jurisdiction in both the state of their formal incorporation and the state encompassing

their principal place of business."  *See Bauer*, 2016 WL 5724232 at *6; *First Cmty. Bank, N.A. v.*

*First Tenn. Bank*, 489 S.W.3d 369, 385 (Tenn. 2015).   Regarding individual defendants and the

doctrine of general jurisdiction, "[A]n individual may be subject to any lawsuit in his state of

domicile."  *Kick v. Anctil*, No. 16-cv-2161-SHL-tmp, 2016 WL 9409012, at *2 (W.D. Tenn.  June

2, 2016).  "To establish domicile, 'a person must be physically present in the state and must have

either the intention to make his home there indefinitely or the absence of an intention to make his

home elsewhere.'" *Id.* (quoting *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973)).

Here, the Court does not find that Plaintiffs have met their burden of showing that this Court

has general jurisdiction over Defendants Stine Seed Company, Agri Select, LLC, Concept AG, B

& B, Inc. or the individual Defendants in this matter. As noted above, Plaintiff's Amended Complaint provides the following: (1) the principal place of business for Stine Seed is Adel, Iowa; (2) Agric Select, LLC is a North Carolina based company; (3) Concept AG is a Missouri company having its principal place of business in Charleston, Missouri, and (4) B & B, Inc. is based out of Olive Branch, Mississippi. (ECF No. 66 ¶¶ 9, 10, 11, 15, 18, 20, 24; ECF No. 54.) All of the corporate Defendants have places of incorporation or principal places of business outside of the state of Tennessee.

Yet, Plaintiff's Amended Complaint alleges that the corporate Defendants, through their marketing efforts in Memphis, initiated business contacts with Plaintiffs, fraudulently led Plaintiffs to purchase low-yielding seeds which ultimately, caused Plaintiffs financial harm. (*See Id.* ¶¶ 55 & 70.) Only limited contacts, ties or relations within the state of Tennessee are asserted by Plaintiffs which do not create exceptional circumstances sufficient to render Defendants at home in Tennessee in order to confer jurisdiction. *See Devault-Graves Agency v. Salinger*, No. 2:15-cv-02178-STA-tmp, 2015 WL 6143513 at *3–4 (W.D. Tenn. Oct. 19, 2015) (noting that the place of incorporation and principal place of business are paradigm bases for general jurisdiction over a corporation and that the placement of a product into the stream of commerce does not warrant a determination that, based on those ties, the forum has jurisdiction over a defendant). Merely "doing business" in a forum state is not alone sufficient to subject a non-resident corporation to jurisdiction there. *See Daimler AG v. Bauman*, 134 S.Ct. 746, 757 (2014).

### ***Specific Jurisdiction***

The Court also finds that Plaintiffs have not sufficiently shown that this Court has specific jurisdiction over Defendants. Courts employ a "three-part test for determining whether, consistent with due process, a court may exercise specific personal jurisdiction: (1) 'the defendant must

purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;' (2) 'the cause of action [must] arise from the defendant's activities [with the forum];' and (3) 'the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" *Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003) (citations omitted). "If any element is not present, personal jurisdiction may not be exercised." *NTCH-West Tenn, Inc. v. ZTE Corp*, No. 1:12-cv-1171-JEB-egb, 2017 WL 5196623, at *5 (W.D. Tenn. Nov. 9, 2017), aff'd, *NTCH-West Tenn, Inc. v. ZTE Corp*, 761 F. App'x 485 (6th Cir. Jan. 16, 2019).

As far as business contacts with a forum state, courts have explained that:

> Business is transacted in a state when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state; and the defendant has purposefully availed himself of the opportunity of acting there if he should have reasonably foreseen that the transaction would have consequences in that state.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996.); *So. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 382–83 (6th Cir. 1968). Merely entering into a contract with an out-of-state corporation does not automatically establish sufficient minimum contacts with a forum state for personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, (1985). Similarly, telephone calls and emails into Tennessee may be insufficient to establish sufficient minimum contacts. *Burrell v. Carlisle*, No. 2:17-cv-2290-JTF-dkv (W.D. Tenn. Apr. 6, 2018) (contacts over facsimile during a five-month period were insufficient to establish personal jurisdiction.); *APC, Inc. v. Huseth*, No. 3:10-0444, 2010 WL 3009500, at *5 (M.D. Tenn. July 28, 2010). On the other hand, a Tennessee court may exercise jurisdiction if a tortious act is committed outside the state and the resulting injury is sustained within the state. *See Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir.

2001) ("Even a single act by [a] defendant directed toward Tennessee that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process.").

The Court concludes that Plaintiffs have not alleged sufficient facts to establish purposeful availment in this case. "In analyzing purposeful availment, the Sixth Circuit employs a 'stream of commerce plus' approach that requires more than simply '[t]he placement of a product into the stream of commerce' to prove purposeful availment in the forum state." *Fleming v. Janssen Pharms., Inc.*, 186 F. Supp.3d 826, 831 (W.D. Tenn. 2016) (quoting *per curiam Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 479–80 (6th Cir. 2003) (an agreement permitting national distribution placing goods into the stream of commerce is not the "plus" factor, but an agreement requiring nationwide distribution can be the "plus" factor sufficient for purposeful availment in each state covered by the agreement)). The Court, then, must look to "'additional conduct' of the defendant[s] 'indicat[ing] an intent or purpose to serve the market in the forum state[.]'" *Bissell Homecare, Inc. v. PRC Indus.*, No. 1:13-cv-1182, 2014 WL 3756131, at *14 (W.D. Mich. July 31, 2014) (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987)). "Factors to consider for the 'stream of commerce plus'' test include (1) the defendant's direction or control over the flow of the product into the forum; (2) the quantity of the defendant's particular product regularly flowing into the forum; and (3) the distinctive features of the forum that connect it with the product in question.'" *Fleming*, 186 F. Supp. 3d at 831 (quoting *One Media IP Ltd. v. S.A.A.R. SrL*, 122 F. Supp. 3d 705, 717 (M.D. Tenn. 2015)).

Therefore, the Court shall examine in detail, not only the "quantity" but also the "nature and quality" of these alleged contacts between Plaintiffs and Defendants in order to determine whether these purported contacts are "sufficient" enough to establish personal jurisdiction over the

Defendants in this jurisdiction in accordance with the purposeful availment analysis. *See Fleming*,

186 F. Supp. 3d at 831.

### *Plaintiffs and Defendant Kevin Cooper*

As noted above, Plaintiffs allege that their contact with Kevin Cooper was the precipitating

cause of their losses in this case. Specifically, Plaintiffs allege that "Kevin Cooper was the sole

decision maker as to which Stine varieties were suitable for the farmer's fields . . . Cooper was the

only employee or officer of Stine that had any contact with Stine's customers, whatsoever." (ECF

No. 66, 48 ¶ 140.) Further, Plaintiffs assert that as sole proprietor of B & B, Inc., Cooper was in

a position to defraud the farmers by repeatedly insisting they purchase seed treatment. Moreover,

Plaintiffs assert that Cooper's interest and control over Agri Select, LLC allowed him to manage

all credit approvals, sales and product deliveries. (*Id.* ¶¶ 141–142.) Plaintiffs generally allege that

they received approximately forty (40) telephone messages, calls or texts from Defendant Kevin

Cooper from March through October of 2017, regarding orders for soybeans or chemical

treatments from Stine Seed, B & B, Inc. and Agri Select, LLC. (ECF No. 66, 28 ¶ 95.) The Court

will next consider the factual allegations relative to each Plaintiff individually.

### *Thomas Burrell and Cooper*

Plaintiff Thomas Burrell alleges that his first interaction with Kevin Cooper occurred on

March 3, 2017, at the 67th Mid-South Gin and Farm Show in Memphis, Tennessee. (ECF No. 66,

7 ¶ 13.) Generally, Burrell alleges that Cooper, in his capacity as salesperson for Stine Seed, took

and delivered seed orders, arranged chemical treatments, coordinated seed storage, accepted credit

applications, executed technology agreements, collected unused seeds, mailed invoices to

customers and collected payments via electronic and telephonic communications. (*Id.* ¶¶ 14–15.)

Thomas Burrell avers that at Cooper's direction, he received an electronic application for a User

Agreement from Stine Seed on April 11, 2017. (ECF No. 66, 11 ¶ 28.)  However, it is unclear from

the Amended Complaint whether the application was electronically received in Tennessee or in

Mississippi.  (*Id.*, 12  ¶ 28.)

Burrell alleges that on April 15, 2017, Cooper called and arranged to meet him at the Rome,

Mississippi farm to examine the farm land in order to recommend the appropriate seed variety for

planting.  (ECF No. 66, 13 ¶ 36.)  The Complaint provides that on May 6, 2017, Cooper met

Plaintiff Burrell on the farm in Rome and recommended a certified variety of seed (49LD02)

suitable for Plaintiff's farm.  (*Id.* ¶ 37.)  On May 11, 2017, Burrell called Cooper to place an order

for 12,000 pounds (i.e., "SIX jumbo bags") of the seed.  Again, the Complaint does not specify

whether Burrell's call to Cooper was made from his home or office in Tennessee or from his farm

location in Mississippi.  (*Id.* 14, ¶ 42.)

Burrell and Cooper agreed to have the seeds treated at a "Warehouse Operation" before

delivery to Rome, Mississippi.  Burrell also asserts that Cooper arranged for the 12,000 pounds of

Stine 49LD02 variety seed to be transported from the state of Arkansas and/or Missouri to the

"Warehouse Operation" for immediate planting.  (*Ed.* ECF No. 66, 14 ¶¶ 40, 43 & 44.)

Burrell asserts that Cooper made several visits to the Rome, Mississippi farm during May

and June, wherein he expressed concerns about the seed possibly producing low yield due to

dicamba drift.  (ECF No. 66 ¶ 50.)  Also, on the 3rd day of June 2017, Burrell received a call from

Cooper that advised him of an accident between the trucks during the seed delivery at the Sledge,

Mississippi warehouse and addressed the resulting damages.  (ECF No. 66, 16 ¶ 47 and Exhibit

H.)  Burrell further alleges that on June 8, 2017, he received a text message from Cooper that the

seed treatment would cost $13,000. (ECF No. 66, 29 ¶ 95.)  Burrell contends that on June 10, 2017,

Cooper advised him that payment for the Stine seeds was due and payable by June 30, 2017, and

that penalties, interest and a delinquency report would be generated if Plaintiffs Burrell, Allen and Grayer failed to make payment. (ECF No. 66, 17 ¶ 51, 28 ¶ 95.)

Burrell, along with Hall and Grayer, allege that "during the entire months of July, August, September and October, Cooper made several requests . . . for payments for the benefit of Defendants Stine Seed, Agri Select, B & B, Inc. and Concept AG.  Moreover, Kevin Cooper made a demand of $4,800 towards the repair of Greg Crigler's truck for damages caused by Charlie Jones during a pickup of seed at the Sledge facility.  (ECF No. 66, 17 ¶ 53.)  And lastly, on August 30, 2018, Burrell alleges that he called Cooper regarding Stine's offer for him to become a Stine seed breeder in 2018.  (*Id*. 19 ¶ 60.)  It is unclear where any of these communications were placed or received.

### Plaintiff David Allen Hall and Kevin Cooper

On April 11, 2017, Plaintiff David Allen Hall, a Tennessee resident, alleges that he received from Cooper or was caused to be sent by Cooper an emailed transmission of an application for credit from Stine Seed. (ECF No. 66, 12 ¶ 33.)  On April 18, 2017, Hall also asserts that he received by email a User Agreement from Kevin Cooper for the 2017 farming season.  (*Id.* ¶ 34.)  Again, it is unclear from the record where this User Agreement was sent.  Hall asserts that on July 18, 2017, and in August 2017, he sent checks to Kevin Cooper in the amount $3,000 and $5,000 for payment to B & B, Inc. for seed treatment in response to a request from Cooper.  (*Id*. 16 ¶ 48.)

### Plaintiff Tyrone Grayer and Kevin Cooper

Plaintiff Tyrone Grayer, a resident of Tutwiler, Coahoma County, Mississippi, asserts that he also first met Cooper, the District Sales Manager for Stine Seed Company, at the trade show in Memphis on March 3, 2017, where Cooper indicated that Stine seed had good yield potential in the state of Mississippi.  (ECF No. 1-2, 19 ¶¶ 4–6.)  Grayer contends that on May 11, 2017, Cooper

visited his Tibbs Road, Tunica County, Mississippi farm while he was planting soybeans.  (ECF No. 1-2, 19–20 ¶ 7.)  Grayer also asserts that Cooper had soybean seeds available for pickup by the "Farming Partners" (Burrell, Hall and himself) at Cooper's Sledge, Mississippi warehouse. (*Id*. 20 ¶ 7.)

  *Plaintiffs Walter and Monique Jackson and Kevin Cooper*

  Plaintiff Walter Jackson first met Kevin Cooper at the March 3, 2017, trade show in Memphis, at which time he introduced himself as the District Sales Manager for Stine Seed Company.  (ECF No. 66, ¶¶ 22 & 24; ECF No. 68, 1 ¶¶ 3–4.)  The Jacksons aver that Cooper stated that Stine Seed Company had certain varieties of "Liberty Link" that would be suitable for growing conditions in the state of Mississippi with good yield potential and that he would like to sell the seed to Jackson for the upcoming 2017 growing season.  (ECF No. 68, 1 ¶ 5.)  On March 28, 2017, Plaintiffs Walter and Monique Jackson aver "that they received an electronic credit application" that was sent or caused to be sent to them from Kevin Cooper for the purposes of obtaining credit from Stine Seed Company.  (ECF No. 66, 11 ¶ 26.)  On March 31st, Walter and Monique Jackson assert that they also received an electronic Application for  User Agreement from Stine Seed.  (*Id*. ¶ 27.) Again, the Complaint does not indicate where the credit application or User Agreements were mailed, but the Jacksons are both residents of Mississippi with farmland in Mississippi, not Tennessee. On April 3, 2017, Walter Jackson called Cooper on the number listed on the business card, (901) 833-5599, to discuss prices per bushel and the finance terms, to which Cooper responded that he was willing to visit the farm to determine the best variety of Stine seed for Jackson's fields.  (ECF No. 68, 1 ¶ 7.)  On April 6, 2017, Cooper met with Walter Jackson at his farm on Mathaney Road in Quitman County, Mississippi, and after "walk[ing] over the field, Cooper recommended 49LD02 seed.  (ECF No. 68, 2 ¶ 8.)

On April 15, 2017, Jackson placed an order with Cooper for 115 bushels of 49LD02 seed to be planted on 115 of his 425 acres of farmland in Darling, Mississippi.  (ECF No. 66, 11 ¶ 30; ECF No. 68, 2 ¶ 9.)  On April 25, 2017, and again, on two subsequent occasions, Cooper asked Jackson if he would allow Cooper to treat the seeds with inoculants, to which Jackson declined. (ECF No. 66, 12 ¶ 31; ECF No. 68, 2 ¶ 9.)  Jackson avers that Cooper arranged for the seed to be delivered and placed in a warehouse in Sledge, Mississippi, that belonged to Crigler.  On May 12, 2017, some four (4) weeks later, Cooper arranged for the seeds to be delivered to Jackson's Mathaney farm.  (ECF No. 68, 2 ¶¶ 9–10.)

After the seeds were planted, Jackson asserts that he contacted Cooper on or about July 11, 2017, regarding his concerns about the "bubbling of the leaf development" once the plants started to emerge.  (ECF No. 68, 2 ¶13.)  On July 15th, Jackson asserts that Cooper contacted him to pick up any Stine seeds and labels that were not planted or used in order to sell them at a local grain elevator.  (*Id*. ¶ 15; ECF No. 66, 29 ¶ 97.)  Jackson also avers that on October 16, 2017, Cooper contacted him to inquire about how the seeds were harvesting to which he expressed his displeasure.  (ECF No. 68, 3 ¶ 17.)  And last, Walter and Monique Jackson allege that on January 24, 2018, Cooper left a voice message that if they did not cooperate, presumably with making payments on their account, they would end up on some type of dishonorable list.  (ECF No. 66, 24, ¶ 79, Exhibit P.)  All of the Plaintiffs aver that Cooper received sales commissions and/or bonuses from Stine Seed Company based on the sales of the seed.

## ***Plaintiffs and Defendant Stine Seed Company***

### *Thomas Burrell and Stine Seed Company*

In the Amended Complaint, Burrell contends that on May 9, 2017, Stine sent Burrell an electronic license agreement.  (ECF No. 66, 29 ¶ 95.)  Burrell also alleges that in August 2017, he

received a letter from Stine employee Chuck Hansen that offered him and Hall the opportunity to become Stine Seed breeders during 2018. The Complaint does not indicate where the letter was received but merely that the letter confirmed an earlier conversation between the parties regarding the same business offer. (ECF No. 66, 19 ¶¶ 58–59, Exhibit J.) In response to the letter, Burrell telephoned Hanson at Stine headquarters asking if the company would send someone down to inspect the fields. (*Id.* ¶ 59.)

### *Walter and Monique Jackson and Stine Seed Company*

On March 28, 2017, Stine Seed Company sent an electronic wire credit application to the Jacksons and an electronically issued User Agreement on March 31, 2017. (ECF No. 66, 28–29, ¶ 95.) On May 9, 2017, Burrell allegedly received from Stine an email regarding licenses. (*Id.* 29 ¶ 25.) Walter and Monique Jackson assert that Stine Seed Company sent them electronically transmitted invoices on May 11th, June 20th and September 24, 2018. (*Id.* 24 ¶ 78.)

### *David Allen Hall and Stine Seed Company*

Within the Amended Complaint, the Plaintiffs allege that on April 11, 2017, Stine Seed electronically sent a credit application to Hall for the purchase of soybean seed. (ECF No. 66, 12 ¶ 33.) Hall also asserts that he received collection notices from Stine on or about February 12, 2017. (*Id*., 56 ¶ 159.)

### *Plaintiffs and Myron Stine*

Thomas Burrell asserts that he and David Allen Hall placed a call to Stine Company in Iowa in October of 2017 and spoke with President and CEO Myron Stine. Plaintiffs assert that based on this call, Stine and Kevin Ryan sent Agronomist Kevin Ryan to Mississippi to inspect the crop, but otherwise disregarded and dismissed their complaints about the poor yield. (ECF

No. 66, 53–54 ¶¶ 155–157, 67 ¶ 191.)  They also aver that in March and April of 2018, several calls were placed to Myron Stine to which they received no response.  (*Id*. ¶ 157.)

### *Plaintiffs and Defendant Greg Crigler*

Plaintiffs collectively assert that Greg Crigler was at all times employed by Concept AG, a company based in Charleston, Missouri, that manufactured and sold inoculants and seed treatment products.  (ECF No. 66, 9 ¶¶ 18–19.)  They also all allege that the inferior seed came from Crigler's "stock pile of soybeans" from Charleston, Missouri, or from his farming enterprise in Sledge, Mississippi.  (*Id.* 21 ¶ 67 & 24 ¶ 81.)  In addition, Plaintiffs all allege that Kevin Cooper and Greg Crigler were both responsible for the scheme to swap out the inferior seed and ultimately defraud the Plaintiffs of the certified Stine variety seed.  (*Id.* 22 ¶ 71, 24 ¶ 81, 25 ¶ 85, 27 ¶ 92.)

#### *Thomas Burrell and Greg Crigler*

Burrell alleges that Kevin Cooper of Stine left a text message on his phone regarding Greg Crigler's address and payment instructions on June 14, 2017.  (ECF No. 66, 28–29 ¶ 95.)

#### *Tyrone Grayer and Greg Crigler*

Plaintiff Tyrone Grayer avers that on May 13, 2017, he met Defendant Greg Crigler, an employee of Concept AG of Charleston, Missouri at the Sledge, Mississippi warehouse facility, where Crigler assisted Plaintiff with placing seed from six jumbo bags into his seed tender.  (ECF No. 66, 15 ¶ 45; ECF No. 68, 2 ¶ 9, 10 ¶ 9 & ECF No. 1-2, 20 ¶ 8.)  The Complaint also references a June 3, 2017 collision involving Charlie Jones, an employee of Burrell, Hall and Thayer, who backed Plaintiffs' Ford F-350 into a Ford F-250 owned by Crigler and Concept AG while Jones was picking up additional Stine seeds at the "Warehouse Operation."  (ECF No. 66, 15 ¶ 46, 17 ¶ 53.)  Grayer also asserts that after the seed was planted, Cooper made several visits to the Rome,

Mississippi operation where he expressed concern that the farmers might suffer yield loss. (ECF No. 1-2, 20 ¶ 12; ECF No. 68, 10 ¶ 12.)

### *Plaintiffs and Defendant Kevin Ryan*

#### *Thomas Burrell and Kevin Ryan*

Burrell asserts that his telephone call to Stine Seed Co. regarding the low performing seeds led Stine to send its Regional Agronomist Kevin Ryan to the Burrell-Hall farm in Rome, Mississippi to inspect the soybean crops. (ECF No. 66, 21, ¶ 70.) On or about November 1, 2017, Ryan along with Cooper, met with Burrell and Hall, and purportedly concluded that the farmers did in fact have a yield problem. (*Id.*) Ryan allegedly indicated to Burrell that Stine could identify and trace all of its soybeans lots and from where and to these soybeans were shipped. (*Id.*) Ryan recommended that Burrell and Hall have samples of the seed variety sent to Mississippi State University for purity and progeny or genetic testing. (*Id.* ¶¶ 71–72.) All of the Plaintiffs contend that Kevin Ryan submitted a demand letter for payment on the outstanding invoices. (*Id.* ¶ 107.)

#### *David Allen Hall and Kevin Ryan*

Within the Amended Complaint, Plaintiffs assert that Kevin Ryan sent via the internet an invoice to Hall from Stine Seed Company on February 12, 2018. (ECF No. 66, 23 ¶ 77, 67 ¶ 193.) In general, Plaintiffs assert that Hall was subjected to "constant hounding and harassment" by Defendant Kevin Ryan via electronic attempts to collect debts on behalf of Stine Seed and the other defendants. (*Id.*, 32 ¶ 106.)

#### *Walter Jackson and Kevin Ryan*

Similar to Hall's assertions, Plaintiffs assert that Kevin Ryan has subjected Walter Jackson to hounding and harassing collection efforts. (ECF No. 66, 32 ¶ 106.)

*Plaintiffs and Agri Select, LLC*

Plaintiffs allege that the Defendants conspired to sell Liberty Link herbicides provided by Agri Select, LLC which is designed to protect soybeans from weeds. (ECF No. 66, 27 ¶ 90.) As such, Agri Select, LLC sold chemicals and other inputs that caused them to receive inferior seed products in furtherance of the unlawful RICO enterprise. (*Id*. 25 ¶ 84.) Accordingly, all of the Plaintiffs allege that Agri Select, LLC along with Stine Seed caused Plaintiffs to sustain losses to their business and property. (*Id*. 35 ¶ 114.)

*Thomas Burrell and Agri Select, LLC*

Regarding Agri Select, LLC, Burrell alleges, along with the other Plaintiffs, that Agri Select used the mail for purposes of executing a scheme or artifice to defraud them. (ECF No. 66, 34 ¶ 111).

*Walter and Monique Jackson and Agri Select, LLC*

Plaintiffs assert that between March 2017 and January 2018, Walter and Monique Jackson received two mailings from Agri Select, LLC as part of the scheme to defraud them by mail in furtherance of the underlying RICO enterprise. (ECF No. 66, 34 ¶¶ 110, 111, & 113.) They also allege that Agri Select, LLC mailed them four items via the U.S. Postal Service regarding outstanding invoices. (*Id*. ¶ 96.)

*David Allen Hall and Agri Select, LLC*

Similar to Walter and Monique Jackson, David Hall alleges that between March of 2017 and January of 2018, he received multiple mailings from Agri Select, LLC in furtherance of Defendants' scheme to defraud them. (*Id*. 34 ¶ 113, 35 ¶ 116.)

### *Plaintiffs and B & B, Inc.*

Plaintiffs assert in the Amended Complaint, only that Kevin Cooper is the sole proprietor of B & B AG ("B & B, Inc.") and, as such, is vicariously liable for Cooper's fraudulent conduct. They also assert that all profits realized by Cooper from the sales of the inferior seeds resulted from the alleged RICO enterprise.  (ECF No. 66, 40 ¶ 126,  51–52 ¶¶ 151, & 53 ¶ 154.)

### *Plaintiffs and Concept AG and Greg Crigler*

In support of its Motion to Dismiss, Concept AG confirmed that it is a Missouri limited liability company that chemically treats seeds that are typically sold in Missouri, Arkansas, Mississippi and Illinois in its Charleston, Missouri facility.   (ECF No. 79-1, 2, 6–10 & ECF No. 79-2, 1–2, ¶¶ 3–5, 8–9.)   Kevin Cooper, Stine Seed's sales district manager, hired Concept AG to treat and ship the seed to the plaintiff farmers in this case.  (ECF No. 79-2, 2–3, ¶ 10, 3 ¶¶ 18–20, 5 ¶ 36.)  Once the seeds were obtained from Riverbend Rice Seed Company in Cairo, Illinois, and treated by Concept AG in Charleston, Missouri, they were shipped by Concept AG to Tyrone Grayer and David Hall in Sledge, Mississippi.  (*Id.*, 3–5 ¶¶ 23–25, 30.)  Concept AG maintains that it never had any representatives at the Mid-South Farm and Gin show, any contacts, contracts or agreements with any of the Plaintiffs, never sold any products or services to any of the Plaintiffs and that the only equipment present at the farm in Mississippi was the pickup truck driven to and from the shed for meeting Grayer for the seed delivery.  (*Id.* 4–5, ¶¶ 28–29, 32–35.)

In his affidavit, Crigler confirms that he lives in Sledge, Mississippi and works for Concept AG and that he never sold seed treatment for seed that would be planted in Tennessee.  (ECF No. 79-3, 1–2, ¶¶ 2, 9–10.)  He also avers that the only Plaintiff he met was Tyrone Grayer and that he knows none of the other named Defendants in this case other than Kevin Cooper who placed the order with Concept AG for seed treatment.  (*Id.* 38, ¶ 41.) He also maintains that he did not attend

the Mid-South Farm and Gin Show in Memphis on March 3–4, 2017.  (ECF No. 79-3, 2–3, ¶¶ 14–15 17, 19, 21, 5 ¶¶ 38–41.)

As enumerated above, the telephone calls and communications between all of the Plaintiffs and Defendants for the sale and treatment of soybean seed are insufficient to establish minimum contacts necessary for personal jurisdiction over Defendants in this case.  Furthermore, the alleged resulting injuries do not appear to have occurred in Tennessee.  The Court concludes that these communications, coupled with Cooper and Crigler's delivery of the seeds to locations in Mississippi do not establish "sufficient" and "substantial" minimum contacts with the State of Tennessee to establish jurisdiction over the Defendants.  It is undisputed that Stine Seed Company had a sales representative at the Mid-South Farm and Gin show for purposes of soliciting buyers of their products.  However, when considering the record as a whole, Defendants did not knowingly enter into contracts for soybean sales or herbicide treatment with Tennessee farmers; nor did they deliver the seed to any of the currently-named Plaintiffs in Tennessee. As such, the Court concludes that Defendants' actions are of insufficient quantity and quality to constitute "minimum contacts" with the State of Tennessee.

### *Racketeer Influenced and Corrupt Organizations*

A violation of the RICO statutes involves (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Heinrich v. Waiting Angels Adoption Services, Inc.,* 688 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R. L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  Racketeering activity consists of acts which are prohibited under a number of federal statutes that are listed in 18 U.S.C. §§ 1961 (1)(A) & (B), *et seq.*  These indictable offenses include underlying predicate acts of mail and wire fraud, or violations of 18 U.S.C. §§ 1341 and 1343.  To establish a violation of 18 U.S.C. § 1962(c), a plaintiff must prove (1) the existence of an enterprise that

affects interstate or foreign commerce, (2) that the defendants were "employed by" or "associated with" the enterprise, (3) that the defendants participated in the conduct of the enterprise's affairs, and (4) that the participation was through "a pattern of racketeering activity." *United States v. Posada–Rios*, 158 F.3d 832, 855 (5th Cir.1998); *United States v. Erwin*, 793 F.2d 656, 670 (5th Cir.1986).    A plaintiff can initiate a RICO proceeding in the court of any district in which a defendant resides, is found, has an agent, or transacts his affairs. *See* 18 U.S.C. § 1965 (a).    A complaint alleging RICO violations may also be brought in the judicial district in which a substantial part of the events occurred. *See* 28 U.S.C. § 1391(b)(2).    Pursuant to 18 U.S.C. § 1965(b), the RICO venue statute allows nationwide service if it is shown that the "ends of justice" require such a result.    *See Brent v. Hyundai Capital America*, No.14-2600-STA-dkv, 2014 WL 7335415 at *3 (W.D. Tenn.  Dec. 19, 2014).

Plaintiffs allege that Defendants conspired to commit wide-ranging acts of mail and wire fraud in furtherance of a nationwide racketeering enterprise. The substantive RICO claims in Counts I–VI of the Complaint assert that all Defendants in this case, both insiders and outsiders, knowingly conspired with and through their agents and representatives to engage in racketeering activities, through mail and wire transmissions, to defraud Plaintiffs relative to the seed sales. Plaintiffs assert that, because of these alleged acts, they lost profits.   (ECF No. 66, ¶¶ 108–184.) Plaintiffs contend that nationwide service of process of Defendants would be appropriate to collectively bring all members of the RICO enterprise before a single court.  Therefore, Plaintiffs assert the "ends of justice" RICO exception applies in this case.  *See Dale v. Frankel,* 131 F. Supp.2d 852 (S.D. Miss. 2001).  In response, Defendants concede that the underlying Court may have personal jurisdiction over Defendant Kevin Cooper based on his contacts with the state of Tennessee; however, none of the Defendants concede that the "ends of justice" provision pursuant

to Section 1965(b) authorizes personal jurisdiction over the remaining Co-Defendants in this case. As such, Defendants contend that Plaintiffs' factual allegations are insufficient to support viable RICO claims and, therefore, justifies a Rule 12(b)(6) dismissal.

Noting that little guidance exists in the Sixth Circuit regarding when the "ends of justice" exception should be exercised in civil RICO cases, Defendants Concept AG and Greg Crigler assert that the exercise of said extraordinary personal jurisdiction should occur only if there is no other jurisdiction in which all Defendants could be joined and personal jurisdiction over them is proper. *Brent*, 2014 WL 7335415 at *5.  (ECF Nos. 51, 52, 54, 79, 79-1, 15, 80-1, 24–25, 82-1, 5–9 & 83.)  All Defendants argue that Plaintiffs have failed (1) to state a private cause of action for any civil RICO claims that could establish personal jurisdiction over them in this forum under 18 U.S.C. §§ 1341 & 1343, or (2) demonstrated that another jurisdiction in which every named Defendant in this case would be subject to personal jurisdiction does not exist.  (ECF Nos. 79, 79-1, 15–17; 80, 80-1, 8–16; 97, 3–6.)  The Court agrees.

Cooper's presence at the trade show and his meeting with Plaintiffs to promote sales of the soybean seed was the first incident attributing to this long saga of events.  However, the vast majority of events in this case, as described at length above, occurred in the Northern District of Mississippi.  Therefore, the Court finds the overwhelming facts of this case indicate that the Defendants' connection with Tennessee is almost totally nonexistent, and there is no reason to force them to defend themselves here in West Tennessee, even under the generous provisions of § 1965.

Plaintiffs' Amended Complaint merely provides the conclusory assertions that Stine Seed solicited business from the minority farmers during the Annual Mid-South Farm and Gin show in Memphis for the purpose of defrauding them.  (ECF No. 66, ¶¶ 50, 55 70-71, 155, 177.)  The

Amended Complaint infers that Defendants lured the minority farmers into purchasing Stine seed
in furtherance of their RICO conspiracy. Plaintiffs' bare assertions of a long-term scheme to
defraud minority farmers based on their race for personal gain, without more, does little to support
a finding of purposeful availment in this state. *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480
U.S. 102, 112 (1987); *Bissell Homecare, Inc.*, 2014 WL 375631, at *13.

Upon failing to satisfy the first prong, "Plaintiff[s] cannot meet the requisite showing for
specific jurisdiction regardless of whether the other prongs of the test are met." *Bissell Homecare,
Inc.*, 2014 WL 375631, at *15. Accordingly, the Court concludes that personal jurisdiction over
the Defendants is lacking in this case.

### ***Transfer of Case***

Finding that personal jurisdiction does not exist in Tennessee, the Court will next consider
whether this action should be transferred or otherwise dismissed in accordance with 28 U.S.C. §
1631. *See Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003). Section 1631 provides the
following:

> Whenever a civil action is filed in a [district] court [of the United States] . . . and
> that court finds that there is a want of jurisdiction, the court shall, if it is in the
> interest of justice, transfer such action . . . to any other such court . . . in which the
> action . . . could have been brought at the time it was filed or noticed, and the action
> . . . shall proceed as if it had been filed in or noticed for the court to which it is
> transferred on the date upon which it was actually filed in or noticed for the court
> from which it is transferred.

*See* 28 U.S.C. § 1631; *Roman*, 340 F.3d at 328.

"Although Plaintiffs have not filed a motion to transfer, a court may *sua sponte* cure
jurisdictional defects by transferring a suit under § 1631." *See Jones v. Herbert Kannegiesser
GmbH*, No. 5:06-cv-39, 2006 WL 3240710, at *2 (W.D. Mich. Nov. 7, 2006). "'The decision
whether to transfer 'in the interest of justice' or to dismiss the case rests within the discretion of

the trial court.'"  *LGT Enters., LLC v. Hoffman*, 614 F.Supp.2d 825, 842 (W.D. Mich. 2009)

(quoting *Roberts v. Paulin*, No. 07-CV-13207, 2007 WL 3202969, at *7 (E.D. Mich. Oct. 31,

2007)).  Generally, the transfer of a case is favored over dismissal because a transfer facilitates an

adjudication on the merits of the dispute at issue.  *Hoffman*, 614 F. Supp. 2d at 842.  "A court may

decide to dismiss an action rather than transferring it under § 1631 either because (1) no

permissible federal court would have jurisdiction over the action, or because (2) a 'transfer would

not be in the interest of justice.'"  *Roman*, 340 F.3d at 328 (quoting Jeffrey W. Tayon, *The Federal

Transfer Statute*:  28 U.S.C. § 1631, 29 S. Tex. L. Rev. 189, 214 (1987)).  For example, a district

court may dismiss, rather than transfer, a case where "there is evidence that the plaintiff brought

the case in this district in bad faith or to harass the defendant."  *Hoffman*, 614 F. Supp.2d at 842.

        As an initial matter, Defendants do not assert, and the Court does not find evidence that

Plaintiffs strategically filed their action in this district in bad faith or to harass Defendants, *i.e.*, that

is with knowledge or belief that Defendants were not subject to this Court's jurisdiction.

        In deciding whether a transfer is appropriate, the Court must first consider whether Plaintiffs'

action could originally have been brought in the Mississippi district courts.[4]  *NTCH-West Tenn,

Inc. v. ZTE Corp.*, No. 1:12-cv-1172-JDB-egb, 2017 WL 5196623, at *5 (W.D. Tenn. Nov. 9,

2017).  As is apparent above, this action could have originally been brought in the United States

District Court for the Northern District of Mississippi. Defendants purposefully availed themselves

---

[4]  Courts employ a "three-part test for determining whether, consistent with due process, a court may
exercise specific personal jurisdiction: (1) 'the defendant must purposefully avail himself of the privilege
of acting in the forum state or causing a consequence in the forum state;' (2) 'the cause of action [must]
arise from the defendant's activities [with the forum];' and (3) 'the acts of the defendant or consequences
caused by the defendant must have a substantial enough connection with the forum state to make the
exercise of jurisdiction over the defendant reasonable.'" "If any element is not present, personal jurisdiction
may not be exercised." *Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003) (citations omitted). Again,
the Court initially considers the jurisdiction of the Mississippi district court because the factual record
reflects a comparatively high number of contacts in that district.

of the privilege of acting in Mississippi, *e.g.* soliciting business from Mississippi farmers, visiting Mississippi farmland and delivering the seed to Mississippi farms. Moreover, as alleged, Defendants affected crop yields on Mississippi farmland. Such acts/consequences are sufficiently substantial to render that state's exercise of jurisdiction over Defendants reasonable. In addition, the undersigned Court has fully examined the lack of jurisdiction over Defendants in this forum.

Second, the Court must ask whether transferring this action would be in the interest of justice. As noted above, there is little proof that Defendants purposefully availed themselves of this forum, and the cause of the injuries did not arise from activities in the Western District of Tennessee. Thus, it would be in the interests of justice to transfer the action because a dismissal of the action would only cause Plaintiffs to incur the additional expense of filing the same petition in the Northern District of Mississippi. *Roman v. Aschroft*, 340 F.3d 314, 329 (6th Cir. 2003); *see also* 17 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4104, at 406 (2d ed. 1986).

## CONCLUSION

For want of jurisdiction in this Court, and the fact that both personal and subject matter jurisdiction would exist over the parties in the state of Mississippi, the interests of justice would be served by transferring the matter to the Northern District of Mississippi pursuant to 28 U.S.C. § 1631. *Stanifer v. Brannan*, 564 F.3d 455, 456–57 (6th Cir. 2009). Upon transfer, the Defendants' Motions to Dismiss will be addressed by the Northern District of Mississippi.

**IT IS SO ORDERED** on this 23rd day of August, 2019.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE

28